# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## DEFENDANTS OPPOSED MOTION TO
## SEVER AND STAY PENDING FINAL RESOLUTION OF SUPPLIER LAWSUITS

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND .......................................................................... 2

    A.    The Nature of Dali's Allegations ................................................ 2

    B.    The Defendants and the Accused Products ............................... 4

III.    LEGAL STANDARD ................................................................................... 5

    A.    Misjoinder and Severance .......................................................... 5

    B.    Customer Suit Exception Stays ................................................... 6

IV.    ARGUMENT ................................................................................................. 7

    A.    Severance of the Supplier Defendants Is Required To Remedy Misjoinder ......... 8

    B.    The Court Should Sever and Stay the Case Against Verizon ................................ 9

        1.    Verizon Is a Mere End-User of the Accused Instrumentalities Whereas the Supplier Defendants Are the "True Defendants" ................. 9

        2.    Verizon Agrees To Be Bound by Infringement and Validity Decisions in the Supplier Defendant Cases as Applicable. ...................... 12

        3.    The Supplier Defendants Are the Only Suppliers to Verizon of the Accused Instrumentalities ........................................................ 13

    C.    The Traditional Stay Factors Also Warrant A Stay Of Dali's Claims ................. 14

        1.    Dali Will Not Be Harmed or Unduly Prejudiced by a Stay ...................... 14

        2.    A Stay Will Simplify the Issues in this Case and Promote Judicial Economy ............................................................................... 15

3.      Discovery Has Not Yet Begun and a Trial Date Is Over a Year Away

.............................................................................................................. 16

V.     CONCLUSION ............................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*,
   600 F.3d 516 (5th Cir. 2010) (*per curiam*) .............................................................5

*Collaborative Agreements, LLC. v. Adobe Sys., Inc.*,
   No. 1-14-CV-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ................................10, 12

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
   No. A-13-CA-1025-SS, 2015 WL 3773014 (W.D. Tex. June 16, 2015) ................................14

*CyWee Grp. Ltd. v. Huawei Device Co.*,
   No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018).............10, 11, 15, 16

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012)........................................................................5, 9

*Fractus, S.A. v. AT&T Mobility LLC*,
   Case No. 2:18-cv-00135-JRG, 2019 WL 3253639 (E.D. Tex. July 19, 2019)......................13

*Glenayre Electronics, Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006)................................................................................14

*In re Google*,
   588 F. App'x 988 (Fed. Cir. 2014) .............................................................................6, 7

*GreatGigz Solutions, LLC v. Christus Health*,
   6:21-cv-01310-ADA, Dkt. No. 34 (W.D. Tex. Sept. 12, 2022) ................................6, 7, 10, 14

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990)......................................................................6, 8, 11

*Kirsch Rsch. & Dev. v. Bluelinx Corp.*,
   Case No. 6:20-cv-00316-ADA, Dkt. No. 82 (W.D. Tex. Oct. 4, 2021) (Order) .......6, 7, 12, 14

*LG Electronics Inc. v. Asustek Computers et al.*,
   126 F. Supp. 2d. 414 (E.D. Va. 2000) ................................................................16

*In re Nintendo*,
   544 F. App'x 934 (Fed. Cir. 2013) ..............................................................................11

*In re Nintendo*,
   756 F.3d 1363 (Fed. Cir. 2014)............................................................................6, 7, 10

*In re Papst Licensing GmbH & Co. KG Litig.*,
    767 F. Supp. 2d 1 (D.D.C. 2011) ..................................................................10, 15

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U. S. 617 (2008) ..................................................................................14

*Richmond v. Forever Gifts, Inc.*,
    Case No. 3:15-cv-0583, 2015 WL 11120883 (N.D. Tex. Mar. 18, 2015) .............................11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ..................................................................15

*SyncView Techs. v. Grande Commc'ns Networks*,
    Case No. 18-cv-00412, 2019 WL 7758916 (W.D. Tex. Sept. 23, 2019) ...............................12

*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*,
    287 F. Supp. 3d 651 (E.D. Tex. 2018) ..................................................................8

*Wapp Tech Ltd. P'ship v. Hewlett-Packard Enters.*,
    No. 4:18-CV-468-ALM, 2019 WL 3818761 (E.D. Tex. Aug. 14, 2019)
    (referring to *CyWee*, 2018 WL 4002776, at *4) ..................................................12

**Statutes**

35 U.S.C. § 299 ..........................................................................................1, 5, 8

## I.    INTRODUCTION

Verizon[1] and its suppliers CommScope[2], Ericsson[3], and Corning[4] (collectively, "Defendants") move this Court for two independent, but related, forms of relief.

First, Defendants request that the Court sever this case into three separate cases, because CommScope, Ericsson, and Corning (collectively, the "Supplier Defendants") are misjoined in violation of 35 U.S.C. § 299. To resolve this misjoinder, this case must be severed into three cases: (1) CommScope and Verizon,[5] (2) Ericsson and Verizon, and (3) Corning and Verizon.

Second, the case(s) against Verizon should be stayed pursuant to the customer suit doctrine. The Supplier Defendants provide Verizon with 100% of the accused products in this case, and Verizon's alleged infringement is tied exclusively to its use of the Supplier Defendants' products. Resolution of Dali Wireless, Inc.'s ("Dali") claims against the Supplier Defendants has an overwhelmingly high likelihood of resolving all claims against Verizon and is appropriate in view of this Court's jurisprudence and prior practice. Accordingly, the Court should exercise its discretion to stay the cases against Verizon pending final resolution of all claims against the Supplier Defendants.

---

[1] "Verizon" is defined herein as Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., and Verizon Online LLC, collectively.

[2] "Commscope" is defined herein as Defendants CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC, collectively.

[3] "Ericsson" is defined herein as Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson, collectively.

[4] "Corning" is defined herein as Defendants Corning, Inc. and Corning Optical Communications LLC, collectively.

[5] CommScope also has a co-pending motion to dismiss or transfer Dali's claims against CommScope to the Eastern District of Texas where Dali asserts the same patents against the same accused CommScope products. *See* Dkt. No. 64 (explaining *inter alia* that venue in W.D. Texas is improper).

## II.    FACTUAL BACKGROUND

### A.    The Nature of Dali's Allegations

This is a four-patent case. Dali asserts all four patents against Verizon and Ericsson, three against Verizon and Corning, and two against Verizon and CommScope. All four patents relate to Distributed Antenna System ("DAS") technology. The four patents are U.S. Patent No. 11,026,232 ("the'232 patent"), U.S. Patent No. 10,334,499 ("the '499 patent"), U.S. Patent No. 11,006,343 ("the '343 patent"), and U.S. Patent No. 8,682,338 ("the '338 patent"), collectively referred to as the "Patents-in-Suit." Dali's assertions are shown below:

| Parties and Patents | 8,682,338 | 10,334,499 | 11,006,343 | 11,026,232 |
|---|---|---|---|---|
| Verizon | X | X | X | X |
| Corning Products | | X | X | X |
| Ericsson Products | X | X | X | X |
| CommScope Products | | X | | X |

Dali's Complaint contains thirteen causes of action. Each is summarized below, color coded by asserted patent:

| Count Number | Accused Party | Patent | Accused Equipment |
|---|---|---|---|
| 1 | Verizon | '232 | CommScope's Ion®-E/ERA Platform |
| 2 | CommScope | '232 | CommScope's Ion®-E/ERA Platform |
| 3 | Verizon | '232 | Ericsson's Radio Dot System |
| 4 | Ericsson | '232 | Ericsson's Radio Dot System |
| 5 | Verizon | '232 | Corning's Everon™ 6000 Das Solution |
| 6 | Corning | '232 | Corning's Everon™ 6000 Das Solution |
| 7 | Verizon & | '343 | Ericsson's Radio Dot System |

| | Ericsson | | |
|---|---|---|---|
| 8 | Verizon & Corning | '343 | Corning's Everon™ 6000 Das Solution |
| 9 | Verizon | '338 | Ericsson's Radio Dot System |
| 10 | Ericsson | '338 | Ericsson's Radio Dot System |
| 11 | Verizon & Ericsson | '499 | Ericsson's Radio Dot System |
| 12 | Verizon & Corning | '499 | Corning's Everon™ 6000 Das Solution |
| 13 | CommScope | '499 | CommScope's Ion®-E/ERA Platform |

*See generally* Dkt. No. 1. Dali's Infringement Contentions contain the same allegations and are commensurate in scope with the counts identified in Dali's Complaint. *See* Barton Decl., Ex. A, Dali's Infringement Contentions.

In each case, Dali predicates Verizon's alleged infringement on Verizon's use of the accused equipment provided by the respective Supplier Defendants. As Dali explained in its Infringement Contentions: "the attached Contentions include claim charts that show that Verizon's deployment, operation, maintenance, testing, and use of Ericsson's Radio Dot System, Corning's Everon 6000 DAS solutions, and CommScope's ION®-E/ERA products infringe one or more claims of the Asserted Patents either literally or under the doctrine of equivalents." Barton Decl., Ex. A at 2. The Complaint does not contain any allegation that any of the Supplier Defendants are jointly or severally liable for any act of infringement with each other, nor is there any allegation across the three Supplier Defendants that they committed an act of infringement arising out of the same accused product or process.

There are no allegations that are unique to Verizon. First, for each asserted patent, each asserted claim is also asserted against a Supplier Defendant. Second, all products that Dali

identifies as an accused product with respect to Verizon are provided by a Supplier Defendant. There are no additional DAS suppliers, additional patents, or additional claims that are implicated by Dali's allegations against Verizon beyond the patents and claims asserted against the Supplier Defendants. *See* Case Readiness Status Report, Dkt. No. 52, at 4 ("Plaintiff Dali's assertions as to the Verizon Defendants represent the maximum scope of this case. i.e., All patents and claims asserted against Verizon are duplicatively asserted against one or more of CommScope, Ericsson, and Corning.").

**B.    The Defendants and the Accused Products**

Verizon, Ericsson, Corning, and CommScope are each independent companies. *See* Dkt. Nos. 31, 35, 37, and 45. *See generally* Declaration of David Wolff in Support of Motion to Sever and Stay ("Verizon Decl."); Declaration of Luigi Tarlazzi in Support of Motion to Sever and Stay ("CommScope Decl."); Declaration of Paul Walker in Support of Motion to Sever and Stay ("Ericsson Decl."); Declaration of Jyotin Basrur in Support of Motion to Sever and Stay ("Corning Decl."). Ericsson, Corning, and CommScope are direct competitors and each design, develop, and manufacture (or otherwise procure) their own distinct subset of accused products. Ericsson Decl. ¶¶3-8; CommScope Decl. ¶3; Corning Decl. ¶¶3-8. In other words, each of the accused products is proprietary to the Supplier Defendants and not sourced from a common manufacturer. *Id.* Verizon does not design, develop, or manufacture any of the accused products. Verizon Decl. ¶3. There are no joint development agreements between Ericsson, Corning, or CommScope relating to the accused products. Ericsson Decl. ¶9; CommScope Decl. ¶3; Corning Decl. ¶9.

Each of the Accused Products supplied by the Supplier Defendants is different, and there is no allegation by Dali that they are the same. *See generally* Dkt. No. 1. Dali does not make a "representative product" argument in its Infringement Contentions, but instead charts each of the patents against each Accused Product separately. *See generally* Barton Decl., Ex. A at 2.

## III.    LEGAL STANDARD

### A.    Misjoinder and Severance

Federal Rules of Civil Procedure 20 and 21 apply to questions of misjoinder. *See, e.g.*,

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (*per curiam*).

Pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure, Defendants may be permissively

joined in a single action if: (A) any right to relief is asserted against them jointly, severally, or in

the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action. The patent statute, 35 U.S.C. § 299(a), uses very similar language to FRCP

20(a)(2)(A), and then adds patent-specific qualifiers:

> parties that are accused infringers may be joined in one action as defendants or
> counterclaim defendants, or have their actions consolidated for trial, only if—(1)
> any right to relief is asserted against the parties jointly, severally, or in the
> alternative with respect to or arising out of the same transaction, occurrence, or
> series of transactions or occurrences relating to the making, using, importing into
> the United States, offering for sale, or selling of the same accused product or
> process; and (2) questions of fact common to all defendants or counterclaim
> defendants will arise in the action.

"[M]otions to sever are governed by Federal Circuit law because joinder in patent cases is

based on an analysis of the accused acts of infringement, and this issue involves substantive issues

unique to patent law." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). In addition, "joinder

is not appropriate where different products or processes are involved." *Id.* Section 299(b) further

clarifies that "accused infringers may not be joined in one action as defendants or counterclaim

defendants, or have their actions consolidated for trial, based solely on allegations that they each

have infringed the patent or patents in suit." Where a party has been misjoined, Fed. R. Civ. P. 21

provides that "[on] motion or on its own, the court may at any time, on just terms, add or drop a

party."

B.    **Customer Suit Exception Stays**

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Kirsch Rsch. & Dev. v. Bluelinx Corp.*, Case No. 6:20-cv-00316-ADA, Dkt. No. 82 (W.D. Tex. Oct. 4, 2021) (Order) at 3 (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)). And, as here, "[w]here suit is brought against a manufacturer and its customers, the action against the customers should be stayed pending resolution of the case against the manufacturer to promote judicial economy." *Kirsch*, Dkt. No. 82 at 3 (citing *In re Nintendo*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014); *see also GreatGigz Solutions, LLC v. Christus Health*, 6:21-cv-01310-ADA, Dkt. No. 34, at 2 (W.D. Tex. Sept. 12, 2022) (same). This is because "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Kirsch*, Dkt. No. 82 at 3 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). The precedence of the manufacturer litigation over the customer litigation arises from judicial aversion to "imposing the burdens of trial on the customer" (*In re Nintendo*, 756 F.3d at 1365); the manufacturer's greater interest in resisting "an adverse ruling against its products" (*Katz*, 909 F.2d at 1464); and the substantial efficiencies gained by streamlining piecemeal customer litigation into a single manufacturer case. *In re Google*, 588 F. App'x 988, 990 (Fed. Cir. 2014).

The standard for staying a customer case is not high: "the case involving the manufacturer 'need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue.'" *Kirsch*, Dkt. No. 82 at 4 (citing *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011)); *see also GreatGigz*, Dkt. No. 34, at 3 (same). The Federal Circuit's decision in *In re Google* emphasized that the plaintiff served "nearly identical infringement contentions to all defendants" relying on functionalities in code provided by Google and noted that the overlap "strongly suggests there will be substantial similarity

involving the infringement and invalidity issues in all the suits." *In re Google*, 588 F. App'x at 990; *see also GreatGigz*, Dkt. No. 34, at 3 (citing *In re Google* for proposition that courts should use a "'flexible approach' to avoid wasteful expenditure of resources, and therefore 'stay proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected.'"). Where there is such a substantial overlap of issues, "[s]ince [the manufacturer's] liability is predicate to recovery from any of the defendants, the case against [the manufacturer] ***must*** proceed first." *In re Nintendo*, 756 F.3d at 1366 (emphasis added).

This court has analyzed three factors to determine whether a customer suit should be stayed: (1) whether the customer is merely a reseller; (2) whether the customer agrees to be bound by a decision in the manufacturer case; and (3) whether the manufacturer is the only source of the accused infringing products. *Kirsch,* Dkt. No. 82 at 4; *GreatGigz*, Dkt. No. 34, at 3.

## IV.    ARGUMENT

Dali's claims against the Supplier Defendants are misjoined. The infringement allegations involve different products and do not arise as part of the same transaction or occurrence. As a result, the Court must sever the claims against these parties with each proceeding in their own case with separate jury trials. To provide for as many efficiencies as possible, the Supplier Defendants do not oppose consolidation of the severed cases for pre-trial purposes, consistent with this Court's practice for related cases.

Irrespective of whether the Court severs the cases, the case(s) against Verizon should be stayed. Deferring Dali's duplicative claims against Verizon until after the Court resolves Dali's infringement claims against the Supplier Defendants would "facilitate [the] just, convenient, efficient, and less expensive determination." *In re Nintendo*, 756 F.3d at 1365-66. A stay would further eliminate an unnecessary burden on the Court and, at a minimum, would significantly streamline any issues that might remain against Verizon. Dali's duplicative claims against Verizon,

therefore, should be stayed. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.").

### A.    Severance of the Supplier Defendants Is Required To Remedy Misjoinder

The Supplier Defendants in this case are misjoined. Joinder is appropriate under Section 299 "only if- (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process." 35 U.S.C. § 299.[6] Dali's infringement allegations against the Supplier Defendants are indisputably not based on the "same accused product or process."

There can be no dispute that the Supplier Defendants—Corning, CommScope, and Ericsson—do not cooperate ***with one another*** in "planning, developing, testing, operating, and maintaining" the accused products in Verizon's networks. Ericsson Decl. ¶10; CommScope Decl. ¶3; Corning Decl. ¶10. The Accused Products made and sold by the Supplier Defendants are different. Ericsson Decl. ¶8; CommScope Decl. ¶3; Corning Decl. ¶8. The Supplier Defendants are direct competitors with one another and go to great lengths to keep the proprietary technical details of their products from one another. Ericsson Decl. ¶¶3-8; CommScope Decl. ¶3; Corning Decl. ¶¶3-8. The Supplier Defendants independently developed the accused products. *Id.* When the accused products from one Supplier Defendant are deployed in Verizon's network, they are not connected to and do not directly interact with the accused products from another Supplier

---

[6] No Supplier Defendant intervened in this case, meaning that Section 299 applies. *See Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 654-57 (E.D. Tex. 2018).

Defendant. Verizon Decl. ¶4. None of the Supplier Defendants planned, developed, tested, operate, or maintain the Accused Products with or in coordination with another of the Supplier Defendants. Ericsson Decl. ¶11; CommScope Decl. ¶3; Corning Decl. ¶11. Accordingly, joinder is improper. *In re EMC*, 677 F.3d at 1359 ("We agree that joinder is not appropriate where different products or processes are involved.").

Because Corning, CommScope, and Ericsson are misjoined, they should be severed into separate cases, with separate trials. Nevertheless, to ensure that convenience and economy in administration is furthered, the Supplier Defendants do not object to their cases being consolidated for pretrial matters and, indeed, expect them to be, consistent with the Court's practice.

### B.    The Court Should Sever and Stay the Case Against Verizon

Regardless of whether the Court severs all four defendants into three separate cases (*e.g.*, a Verizon/CommScope case, a Verizon/Ericsson case, and a Verizon/Corning case), the Court should stay the case(s) against Verizon until final disposition of the claims against the Supplier Defendants pursuant to the customer-suit doctrine.

### 1.    Verizon Is a Mere End-User of the Accused Instrumentalities Whereas the Supplier Defendants Are the "True Defendants"

Dali's Infringement Contentions further prove that resolution of the claims against the Supplier Defendants will resolve most if not all of the claims against Verizon. All claims and all patents asserted against Verizon are also asserted against the Supplier Defendants. And despite the fact that Dali alleges 13 separate counts in its Complaint, there are only eight claim charts. Each one of those claims charts is directed to Verizon *and* one of the Supplier Defendants. For example, Dali's claim chart Exhibits A and B are titled "Verizon/CommScope's Infringement," Exhibits C-F are titled "Verizon/Ericsson's Infringement," and Exhibits G-I are titled "Verizon/Corning's Infringement." This pattern continues throughout the body of Dali's infringement charts:  in the

236 pages of claim charts, there is not a single allegation particularized to Verizon. Every single allegation of infringement—for both method and apparatus/system claims—is directed to "Verizon/CommScope Accused Instrumentalities," "Verizon/Ericsson Accused Instrumentalities," and "Verizon/Corning Accused Instrumentalities." Verizon is only accused of infringing through the use of the Supplier Defendants' equipment, and there is not a single allegation that Verizon does something to the equipment (*i.e.*, alters, modifies, etc.) to make it infringe.

Because the Complaint and the infringement contentions are "predicated entirely on [Verizon's] use of the supplier's products," this factor favors a stay. *GreatGigz*, Dkt. No. 34, at 4-5. Dali's *identical* allegations and claim charts make clear that "[t]he infringement case against all [Verizon] will rise and fall with the question of whether [the Supplier Defendants' equipment is] found to infringe the claims of the patent," justifying a stay. *Collaborative Agreements, LLC. v. Adobe Sys., Inc.*, No. 1-14-CV-356, 2015 WL10818739, at *2 (W.D. Tex. Aug. 21, 2015). The exclusive focus of Plaintiff's allegations in every case is the Supplier Defendants' equipment, "without which the alleged infringement by [Verizon] would not be possible." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *6 (E.D. Tex. Aug. 22, 2018).

Because resolution of the allegations against the Supplier Defendants would necessarily "also resolve whether the customer infringes," manufacturer liability is a "predicate" and a stay is appropriate. *In re Nintendo*, 756 F.3d at 1366; *Mantissa*, 2018 WL 3059604, at *5; *see also In re Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011) ("Underlying the customer suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant, the party that controls the product's design, rather than suits involving secondary parties such as customers of the manufacturer.").

Moreover, the Supplier Defendants have possession, custody, and control of the factual information in the form of witnesses and related documentation that shows the design, manufacture and operation of the accused products. Ericsson Decl. ¶13; CommScope Decl. ¶4; Verizon Decl. ¶¶5-6. Verizon thus has "no involvement in and no essential knowledge about the alleged infringement, which begins at the design and manufacture phases." *Richmond v. Forever Gifts, Inc.*, Case No. 3:15-cv-0583, 2015 WL 11120883, at *1 (N.D. Tex. Mar. 18, 2015). Verizon does not have the ability to modify the source code of the accused products. Ericsson Decl. ¶14; Corning Decl. ¶12; Verizon Decl. ¶7. As a result, Verizon "will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case." *In re Nintendo*, 544 F. App'x 934, 941 (Fed. Cir. 2013); *see also CyWee*, 2018 WL 4002776, at *3-4 (granting stay when customer "does not have the information necessary to defend against the infringement claims" and a stay "would obviate the need for non-party discovery from [manufacturers].").

While Verizon does not believe that it possesses relevant, non-cumulative information, Verizon agrees to cooperate in providing limited discovery in the Supplier Defendant case(s) should such discovery be relevant and non-cumulative. Under the proposed process, the Supplier Defendants would intermediate any discovery Plaintiff seeks to serve on Verizon to avoid burdening Verizon with information the Supplier Defendants can provide instead, consistent with the judicially-recognized need for manufacturers to "protect [their] customers" "as a matter of . . . good business." *Katz*, 909 F.2d at 1464. This type of stipulation was approved in *RPost Holdings, Inc. v. DocuSign, Inc.* as a basis to sever and stay with respect to customer defendants. Case No. 12-cv-00683, 2019 WL 1982531, at *1 (E.D. Tex. May 3, 2019).

11

**2.    Verizon Agrees To Be Bound by Infringement and Validity Decisions in the Supplier Defendant Cases as Applicable.**

To the extent there are any remaining issues to be decided following the conclusion of Dali's cases against the Supplier Defendants, Verizon agrees to be bound by a Court's findings as to infringement applicable to the products at issue in each of the Supplier Defendant case(s). Likewise, Verizon agrees to be bound by any invalidity determination actually adjudicated by a Court in the severed Supplier Defendant case(s).

Even where a customer does not agree to be bound by invalidity determination, an "agreement to be bound by an infringement determination in a separate suit, that will leave little left for the court to adjudicate in the current suit, weighs heavily in favor of staying the current suit." *Wapp Tech Ltd. P'ship v. Hewlett-Packard Enters.*, No. 4:18-CV-468-ALM, 2019 WL 3818761, at *4 (E.D. Tex. Aug. 14, 2019) (referring to *CyWee*, 2018 WL 4002776, at *4); *id.* at *6 (finding stay appropriate when the customer "formally agreed to be bound" only by an "infringement determination"). Indeed, as this Court has noted, "courts have found that, even where a customer does not 'agree[] to be bound by the result' in the manufacturer suit, stay may still be appropriate because 'resolution of the major issues' in the manufacturer action will likely 'resolve these issues as to their customers.'" *Kirsch,* Dkt. No. 82 at 6 (citing *Katz*, 909 F.2d at 1464).

Decisions in this district have granted stays based on stipulations to be bound, including infringement-only stipulations. *SMIC,* 6:19-cv-719, Dkt. No. 197 ("[S]everance and stay are warranted here with the understanding that Customer Defendants will be bound by the outcome of the litigation."); *Collaborative Agreements*, 2015 WL 10818739, at *2 (stay based on "the Customer Defendants' stipulation to be bound by any infringement rulings"); *SyncView Techs. v. Grande Commc'ns Networks*, Case No. 18-cv-00412, 2019 WL 7758916, at *3 (W.D. Tex. Sept. 23, 2019) (staying clams against defendant who "agrees to be bound by any final infringement determination").

Because Verizon's agreement to be bound will avoid relitigation of matters resolved by the Court—to the extent there is even anything left to resolve following resolution of the Supplier Defendants' cases—this factor weighs heavily in favor of a stay.

### 3. The Supplier Defendants Are the Only Suppliers to Verizon of the Accused Instrumentalities

Dali expressly defined the accused instrumentalities to be the specific accused products found in Verizon's network and provided only by Corning, CommScope, and Ericsson. *See* Dkt. No. 1 (Complaint); Ex. A to Barton Decl. (Infringement Contentions). In other words, this is not a case where other manufacturers are alleged to supply Verizon with any portion of the accused instrumentalities. *Compare with Fractus, S.A. v. AT&T Mobility LLC*, Case No. 2:18-cv-00135-JRG (lead case), 2019 WL 3253639 (E.D. Tex. July 19, 2019) (denying motion to sever and stay claims against customer because customer was sued for infringement based upon accused products purchased from multiple unrelated manufacturers and many of those manufacturers were not involved in the case). Dali confirmed this in the Case Readiness Status Report, (Dkt. No. 52, at 4) by stating that "Plaintiff Dali's assertions as to the Verizon Defendants represent the ***maximum scope of this case***. i.e., All patents and claims asserted against Verizon are duplicatively asserted against one or more of CommScope, Ericsson, and Corning." (emphasis added).

Thus, resolution of Dali's claims against the Supplier Defendants will resolve all of Dali's claims against Verizon. This factor, too, weighs heavily in favor of staying the case against Verizon.

Because each of the factors weighs in favor of a stay, Defendants respectfully request that the Court stay the case against Verizon in favor of Dali's case against the true defendants, Verizon's Suppliers.

### C.    The Traditional Stay Factors Also Warrant A Stay Of Dali's Claims

Because each of the factors related to the customer-suit exception weigh heavily in favor of a stay, the Court need not address the traditional factors, but to the extent it chooses to do so, for the sake of completeness, each of these factors also weigh in favor of a stay. *See GreatGigz*, Dkt. No. 34, at 6. The factors that courts traditionally consider in deciding stays also favor granting it here. Those factors are: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015) (citation omitted); *Kirsch,* Dkt. No. 82 at 6-10.

### 1.    Dali Will Not Be Harmed or Unduly Prejudiced by a Stay

Dali will not suffer any prejudice by a stay. Dali's claims against Verizon will be resolved by resolution of the same claims against Supplier Defendants.

Dali cannot seek to recover twice—that is, Dali cannot collect once from the Supplier Defendants and again from their customers downstream (*i.e.*, Verizon). *See, e.g., Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product."). Accordingly, any recovery Dali may obtain from the Supplier Defendants will exhaust the claims as to the downstream customer such as Verizon. *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U. S. 617, 629-631 (2008) (holding that "method patents were exhausted by the sale of an item that embodied the method" and that patentees cannot "extend their rights through each downstream purchaser all the way to the end user.").

14

Alternatively, if one of the Supplier Defendants prevails on any of its defenses, then Dali cannot recover damages from Verizon for that portion of wireless network, because all of Dali's infringement claims are tied to the same set of accused products that are being or will be fully litigated in the cases against Verizon's suppliers. *See Shifferaw*, 2010 WL 1064380, *3 ("If [the manufacturer] is not found liable, then [the plaintiff] has no claims against the [resellers]. If [the manufacturer] is found liable and [the plaintiff] collects damages from [the manufacturer], then the plaintiff cannot then in turn collect damages from the [resellers], because [the plaintiff] cannot receive a double recovery for the same sales.").

To be sure, Dali has an inherent interest in the expeditious resolution of the case, "but the interest in timely enforcement is 'present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.'" *CyWee*, 2018 WL 4002776, at *3 (quoting *NVC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 106911, at *2 (E.D. Tex. Mar. 11, 2015).

As shown above, the claims against Verizon are secondary to those against the Supplier Defendants and, therefore, Dali will not suffer any undue harm or prejudice if they are stayed pending the outcome of the cases against the Supplier Defendants. This factor weighs in favor of granting a stay to Verizon.

## 2.    A Stay Will Simplify the Issues in this Case and Promote Judicial Economy

It is indisputable that a stay will simplify the issues in this case. Courts universally acknowledge that staying claims against customers achieves "efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357. Staying Dali's claims against Verizon would allow the court to focus on parties with a greater understanding of "the product's design, rather than … secondary parties such as customers … ." *In re Papst Licensing*, 767 F. Supp. 2d at 10. There will be no need

15

for the parties to conduct duplicative discovery of Verizon or for the Court to resolve unnecessary discovery disputes with Verizon that may never arise depending on the outcome of Dali's claims against the Supplier Defendants.

If, as discussed above, Dali cannot obtain a ruling of infringement against one or both of the Supplier Defendants, or if the Supplier Defendants are successful in establishing the asserted patents are invalid, Dali's claims against Verizon will be moot. If Dali's does obtain a ruling of infringement against one or more of the Supplier Defendants, any damages it receives from the Supplier Defendants' as they relate to sales to Verizon will obviate the need for further infringement proceedings against Verizon. *See LG Electronics Inc. v. Asustek Computers et al.*, 126 F. Supp. 2d. 414, 423 (E.D. Va. 2000) ("If the court does find [the manufacturers] liable, and allows [plaintiff] to collect royalties from [the manufacturers], [the [plaintiff] cannot then in turn collect royalties from the entity to whom the infringer sells the product.") (citing *Intel Corp. v. ULSI Sys. Tech. Inc.*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993)). Thus, resolution of the claims against the Supplier Defendants should resolve Dali's claims against Verizon.

Accordingly, there is no compelling reason for Dali's duplicative and derivative claims against Verizon to proceed, and this factor weighs heavily in favor of a stay. *CyWee*, 2018 WL 4002776, at *4 ("Importantly, Huawei has agreed to be bound by the infringement determination in the Delaware action. … Huawei has thus shown that granting the motion to stay would simplify the issues in this case … . This factor thus weighs heavily in Huawei's favor.").

### 3. Discovery Has Not Yet Begun and a Trial Date Is Over a Year Away

Discovery in this case has not yet begun; the Markman hearing that triggers discovery is not scheduled to occur until December 12, 2022. Jury selection and trial are set for December 8, 2023. Accordingly, discovery will not begin for several months, and a trial is more than a year away. This case is in its infancy, which weighs heavily in Verizon's favor.

16

## V.    CONCLUSION

Severance of this case to resolve the misjoinder is warranted. In addition, staying the case against Verizon is warranted based on the customer suit exception stay considerations as well as the traditional factors.

Dated: October 12, 2022

/s/ Deron R. Dacus
Deron R. Dacus (Bar No. 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel.: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Matthew S. Yungwirth
Email: msyungwirth@duanemorris.com
John R. Gibson
Email: jrgibson@duanemorris.com
Glenn D. Richeson
Email: gdricheson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Telephone: (404) 253-6900

Joseph A. Powers
Email: japowers@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1842

Christopher J. Tyson
Email: cjtyson@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851

/s/ Michael J. Newton
Michael J. Newton (TX Bar No. 24003844)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: mike.newton@alston.com

Ross R. Barton (NC Bar No. 37179)
**ALSTON & BIRD LLP**
101 South Tyron Street, Suite 4000
Charlotte, North Carolina 28280
Phone: (704) 444-1000
Fax: (704) 444-1111
Email: ross.barton@alston.com

Yuri Mikulka (CA Bar No. 185926)
Caleb J. Bean (CA Bar No. 299751)
Katherine G. Rubschlager (CA Bar No. 328100)
**ALSTON & BIRD LLP**
333 South Hope St, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
Email: yuri.mikulka@alston.com
Email: caleb.bean@alston.com
Email: katherine.rubschlager@alston.com

*Attorneys for the Verizon Defendants and the Corning Defendants*

*Attorneys for Defendants*
*Ericsson Inc. and Telefonaktiebolaget LM*
*Ericsson*

*/s/ Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

*Attorneys for CommScope Defendants*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), counsel for Defendant has conferred with counsel for Dali in a good-faith effort to resolve the matter presented herein. Counsel for Dali opposes the instant Motion.

/s/ Ross R. Barton
Ross R. Barton

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2022, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ Ross R. Barton
Ross R. Barton

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## DECLARATION OF ROSS R. BARTON IN SUPPORT OF DEFENDANTS' OPPOSED MOTION TO SEVER AND STAY PENDING FINAL RESOLUTION OF SUPPLER LAWSUITS

I, Ross R. Barton, make the following declaration under the pains and penalties of perjury:

1.      I am an attorney licensed to practice law in the State of North Carolina and the Commonwealth of Virginia. I am a Partner in the law firm of Alston & Bird LLP and counsel for Defendants Verizon Wireless, Corning, Inc., and Corning Optical Communications LLC. I am over 18 years of age and am competent to testify as to the matters set forth herein. I make the following statements based on my personal knowledge, unless expressly stated otherwise.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the June 10, 2022 Infringement Contentions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2022, in Charlotte, North Carolina.

_/s/ Ross R. Barton_
Ross R. Barton

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| DALI WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:22-CV-00104-ADA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CELLCO PARTNERSHIP D/B/A VERIZON | ) | |
| WIRELESS, VERIZON CORPORATE | ) | |
| SERVICES GROUP INC., VERIZON | ) | |
| ONLINE LLC, COMMSCOPE HOLDING | ) | |
| COMPANY, INC., COMMSCOPE, INC., | ) | |
| COMMSCOPE TECHNOLOGIES LLC, | ) | |
| ERICSSON INC., | ) | |
| TELEFONAKTIEBOLAGET LM | ) | |
| ERICSSON, CORNING INC., and CORNING | ) | |
| OPTICAL COMMUNICATIONS LLC, | ) | |
| | ) | |
| Defendants. | | |

<u>**PLAINTIFF'S PRELIMINARY INFRINGEMENT CONTENTIONS TO DEFENDANTS
CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE
SERVICES GROUP INC., AND VERIZON ONLINE LLC**</u>

Plaintiff Dali Wireless, Inc. ("Dali") hereby provides its Preliminary Infringement

Contentions to Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services

Group Inc., and Verizon Online LLC (collectively, "Verizon") as to U.S. Patent Nos. 11,026,232

(the "'232 Patent"), 11,006,343 (the "'343 patent"), 8,682,338 (the "'338 patent"), and 10,334,499

(the "'499 Patent") (collectively, "the Asserted Patents"). This disclosure is without any

concession, agreement, admission or waiver of any ultimate determination of relevance,

admissibility or discoverability of particular information for any purpose, and without waiver of

any attorney-client, work product or other privilege or immunity. Dali makes this disclosure based

on its present information, without the benefit of discovery. Moreover, to the extent the Court

construes the claims of any of the asserted patents, additional arguments and/or information may be relevant in light of any such construction.  Dali, therefore, reserves the right to supplement and/or amend this disclosure at any time in view of the Court's construction, in view of any new information learned during fact and expert discovery, or for any other reason permissible under the Federal and Local Rules.

The Preliminary Infringement Contentions attached as Exhibits A-I hereto are based on information presently available to Dali.  Based upon that information, the attached Contentions include claim charts that show that Verizon's deployment, operation, maintenance, testing, and use of Ericsson's Radio Dot System, Corning's Everon 6000 DAS solutions, and CommScope's ION®-E/ERA products infringe one or more claims of the Asserted Patents either literally or under the doctrine of equivalents.

Dali presently asserts that the priority dates for all asserted claims of the '232 Patent, the '338 Patent, the '343 Patent and the '499 Patent are those reflected on the face of the patents—*i.e.*, September 14, 2010 ('232 Patent, '338 Patent), and February 7, 2011 ('499 Patent, '343 Patent). To the extent that the dates of Dali's conception and reduction to practice becomes a relevant disputed issue, Dali reserves the right to supplement and/or amend this disclosure at any time in view of the Court's construction, in view of any new information learned during fact and expert discovery, or for any other reason permissible under the Federal and Local Rules.

Pursuant to the Court's Order Governing Proceedings, Dali will produce today copies of any non-privileged documents relating to Dali's conception and reduction to practice of the inventions claimed in the Asserted Patents of which Dali is presently aware, including copies of the Asserted Patents' file histories.

Date: June 10, 2022                    Respectfully submitted,

                                       /s/ Cristofer Leffler
                                       Cristofer I. Leffler, WA Bar No. 35020
                                       David Schumann, CA Bar No. 223936
                                       Cliff Win, Jr., CA Bar No. 270517
                                       Steven Skelley, WA Bar No. 53017
                                       Stefan Szpajda, WA Bar No. 50106
                                       Folio Law Group PLLC
                                       1200 Westlake Ave. N., Suite 809
                                       Seattle, WA 98109
                                       Tel: (206) 880-1802
                                       Email: cris.leffler@foliolaw.com
                                              david.schumann@foliolaw.com
                                              cliff.win@foliolaw.com
                                              steve.skelley@foliolaw.com
                                              stefan@foliolaw.com

                                       Joseph M. Abraham, TX Bar No. 24088879
                                       Timothy F. Dewberry, TX Bar No. 24090074
                                       Folio Law Group PLLC
                                       13492 Research Blvd., Suite 120, No. 177
                                       Austin, TX 78750
                                       Tel: (737) 234-0201
                                       Email: joseph.abraham@foliolaw.com
                                              timothy.dewberry@foliolaw.com

                                       *Attorneys for Dali Wireless, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 10, 2022, a true and correct copy of the foregoing was served on all counsel of record via email.

                                       s/*Cristofer Leffler*
                                       Cristofer Leffler

**Exhibit A**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership D/B/A Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC (collectively, "CommScope") (altogether "Verizon / CommScope") infringe the below-identified claims of Dali's U.S. Patent No. 11,026,232 (the '232 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to solutions for in-building wireless coverage, such as CommScope's ION-E/ERA platform (including but not limited to Wide-Area Integration Node (WIN), Central Area Nodes (CAN), Transport Extension Nodes (TEN), Carrier Access Points (CAP), Universal Access Points (UAP), cabling and switches, antennas, various interface modules and donor cards, and any software running thereon) (collectively, "Verizon / CommScope Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / CommScope produces documents and source code and/or the Court construes any terms from the claims of the '232 Patent. Claims 1-3, 6-8, 12-14, 16-18, and 20 are infringed under 35 U.S.C. § 271(a) when Verizon / CommScope uses the Verizon / CommScope Accused Instrumentalities.

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| **[PREAMBLE]**<br>A wireless system comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 1 by providing a wireless system as detailed here. |
| **[ELEMENT 1-A]**<br>one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that provides the plurality of | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that provides the plurality of radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol; and | For example, CommScope's ION-E/ERA platform includes a Central Area Node ("CAN") "located at the campus or building head-end. It digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000429.<br><br>For example, CommScope's ION-E/ERA platform includes a "CPRI digital donor (CDD)" that "receives CPRI digital signals from compatible operator baseband units (BBU)." *See, e.g.*, *Id*.<br><br>CommScope's ION-E/ERA platform also includes a "RF donor card (RFD) [that] receives analog RF signals from operator base transceiver stations (BTS)." *Id*.<br><br>CommScope's ION-E/ERA platform's CAN receives radio resources from an operator hub:<br><br>**ERA and ION-E**<br>ERA is an extension of the hardware and software architecture that CommScope originally introduced as ION-E. Going forward, all new systems are ERA. Since ION-E and ERA share the same hardware modules, system software and management systems, existing ION-E systems can be updated and expanded using ERA components.<br><br><br><br>DALIVZN-000428. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
|  |  DALIVZN-000423.<br><br>Further, CommScope's ION-E/ERA platform includes a central node (CAN) that can send digital representations of a first set of downlink radio resources to a first remote radio unit (CAP or UAP) at a first point in time, including through the TEN for transmission at an antenna of the first remote radio unit (CAP or UAP).<br><br>Specifically, CommScope's ION-E/ERA platform comprises software that allows for the creation of signal sets that are customized sets of radio resources. Multiple signal sets from different base stations can be created and assigned to either a remote access point (CAP or UAP) or a TEN. According to a webinar introduction to ION-E:<br><br>"[W]e can send any signals to any of the UAPs. … The UAP can have only one assigned signal set. So we create signal sets from Zone 3, Zone 2 and Zone 1, and the signals that … comprise[ ] the signal sets are different based on these operators.  So this would be the way we do that. We, for example, create a new signal set called Zone 1 and then select which channels go to … that signal set. |

3

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
|  | And we do Zone 2 and Zone 3. So we can have the same sectors, same signals in multiple signal sets but only one signal set can go to any of the UAPs. You can either send the Zone 1, Zone 2, Zone 3 signal set … directly to a TEN, then it will be automatically be distributed to all of the UAPs that are connected to that TEN. This is probably how you would do that in most cases where you have a zone driven by a TEN." *See, e.g.*, Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:00-22:49, last accessed June 8, 2022.  *Id*. CommScope's ION-E/ERA platform's CAN includes a CPRI interface: |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | · **The consolidated head-end requires less equipment.** Since its Common Public Radio Interface (CPRI) baseband interface eliminates the need for radio-freqency (RF) hardware and interfaces—taking up less space and less operational budget.<br><br>DALIVZN-000635. |
| **[ELEMENT 1-B]** a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at least a first access point and a second access point, | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at least a first access point and a second access point.<br><br>For example, CommScope's ION-E/ERA platform includes "[a] range of remote access points that convert the digital signal back to radio frequency (RF) for over-the-air transmission." These wireless access points include "the carrier access point (CAP)" and "the universal access point (UAP)." *See, e.g.*, DALIVZN-000429.<br><br>The central nodes distribute wireless signals to the wireless access points. For example, CommScope's ION-E/ERA platform includes a Central Area Node ("CAN") "located at the campus or building head-end. It digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000429. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **ERA and ION-E**<br>ERA is an extension of the hardware and software architecture that CommScope originally introduced as ION-E. Going forward, all new systems are ERA. Since ION-E and ERA share the same hardware modules, system software and management systems, existing ION-E systems can be updated and expanded using ERA components.<br><br><br>DALIVZN-000428. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| |  DALIVZN-000428. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | DALIVZN-000423. |
| **[ELEMENT 1-C]** wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the second access point, the first subset including more radio resources than the second subset, and | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes the one or more central nodes recited in claim **Element 1-A**, wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the second access point, the first subset including more radio resources than the second subset.

For example, CommScope's ION-E/ERA platform includes a baseband unit (CAN) that can assign assigns a first subset of the number of the plurality of radio resources to a first access point (CAP or UAP) and a second subset of the number of the plurality of radio resources to a second access point (CAP or UAP). The first subset of radio resources can include more radio resources than the second subset. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | According to a CommScope webinar, "[w]e have a full control over each channel, we can turn channels on and off…and we can distribute the channels to any UAP with extreme flexibility, so any signal can go to any UAP… We create signal sets and then those signal sets can be sent via software or software command to them, to any UAP." Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:21-22:48, last accessed June 8, 2022.<br><br>In addition, multiple signal sets from different base stations can be created and assigned to remote access points:<br><br>**Assign Signal Sets (Direct signal traffic to TENs and UAPs)**<br><br>Signal Sets, which are a user-defined set of channels, can be quickly assigned to CANs and all UAPs assigned to them, TENs and all UAPs assigned to them, or to individual UAPs on the *Signal Distribution* page.<br><br>1.  Click on the *Signal Distribution* tab to open the page.<br>2.  Assign a signal set by:<br>   o  Clicking on a signal set and dragging it onto the a TEN or UAP (set icons adjacent to the device name indicate the sets assigned to a TEN or UAP)<br>   o  Clicking on a signal set to select it (green highlight) and then clicking on each TEN or UAP to which you wish to assign the signal set.<br><br><br><br>3.  Click the *Save* button after you've assigned each signal set<br><br>DALIVZN-000465. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **5.5.  Signal Distribution**<br><br>The ION-E uses signal sets to group the detected signals to simplify signal routing to the radiating elements throughout the system. First the user must create and define the signal sets by assigning channels to the sets. The signal sets are then assigned as needed using drag and drop functionality to route the signals to the TENs and UAPs.<br><br>**Create and Edit Signal Sets**<br><br>    1.   Click on the *Signal Distribution* tab to open the page.<br>    2.   Select a set from the *Signal Sets* list and click the *Edit* button to edit an existing set.<br>    3.   Click on the *Add a New Signal Set* link to open the Add *Signal Set* page to create a new set.<br><br><br><br>    4.   Enter a Name for the signal set in the *Signal Set Name* field.<br>    5.   Click to select a channel from the *Available Channels* list or shift click to select multiple channels and drag them onto the *Assigned Channels* list. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | <br><br>DALIVZN-000464-465.<br><br>Further, CommScope's Era System "is an extension of the hardware and software architecture that CommScope originally introduced as ION-E" such that "ION-E and Era share the same hardware modules, system software and management systems" and "existing ION-E systems can be updated and expanded using Era components." See, e.g., DALIVZN-000428. |
| **[ELEMENT 1-D]** wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes the one or more central nodes recited in claim **Element 1-A**, wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, the one or more central nodes assign additional radio resources of the plurality of radio resources to the second access point. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| beyond a threshold, the one or more central nodes assign additional radio resources of the plurality of radio resources to the second access point. | The Era System further provides for dynamic "capacity routing" which, on information and belief, dynamically changes the amount of radio resources between the first set of radio resources and a second set of radio resources.<br><br>· **Capacity can be dynamically shared across many buildings.** The solution adjusts levels to meet variable demand, thanks to its capacity routing capabilities.<br><br>DALIVZN-000635.<br><br>Further, CommScope's ION-E/ERA platform is described as "Flexible . . . Shift capacity to where and when you need it, all in software." *See, e.g.*, DALIVZN-000421.<br><br>CommScope's Era System "is an extension of the hardware and software architecture that CommScope originally introduced as ION-E" such that "ION-E and Era share the same hardware modules, system software and management systems" and "existing ION-E systems can be updated and expanded using Era components." See, e.g., DALIVZN-000428.<br><br>An Era C-RAN antenna system product marketing video published by CommScope further explains that:<br><br>"The system adapts to user movements. For example, between university classrooms in the daytime and residences at night. Any RF input can go into any port, so there is no need for cumbersome source-to-port mapping and remapping. When sectorization changes are needed, sectors can be remapped to different coverage areas remotely through a drag-and-drop web interface, without site visits or manual rewiring." *See* CommScope Era C-RAN Antenna System, CommScope, published February 12, 2018, available at https://youtu.be/uBRDL7a8_8g ("Era C-RAN Marketing Video") at 1:27-1:54, last accessed June 8, 2022. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
|  | CommScope's ION-E/ERA platform also allows the system to "[a]djust capacity across the network by sector or channel through a web-based drag-and-drop interface." *See, e.g.*, DALIVZN-000428.<br><br>CommScope also states that "as usage patterns change, capacity can be re-allocated through a web-based drag and drop software GUI rather than physical re-wiring." *See, e.g.*, DALIVZN-000429. |

| Claim 2 | Verizon / CommScope's Infringement |
|---|---|
| The wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point.<br><br>*See* **Claim Element 1-C** and **Element 1-D**. |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| The wireless system of claim 1, wherein the additional resources are included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes assign | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the wireless system of claim 1, wherein the additional resources are included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes assign the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point.<br><br>*See* **Claim Element 1-C** and **Element 1-D**. |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point. | |

| Claim 6 | Verizon / CommScope's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim Element 1-C**; *see also, e.g.*, DALIVZN-000428 ("Adjust capacity across the network by sector or channel through a web-based drag-and-drop interface"). |

| Claim 7 | Verizon / CommScope's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building. |

| Claim 7 | Verizon / CommScope's Infringement |
|---------|-----------------------------------|
| | **ERA and ION-E**<br>ERA is an extension of the hardware and software architecture that CommScope originally introduced as ION-E. Going forward, all new systems are ERA. Since ION-E and ERA share the same hardware modules, system software and management systems, existing ION-E systems can be updated and expanded using ERA components.<br><br><br><br>DALIVZN-000428. |

| Claim 8- Element | Verizon / CommScope's Infringement |
|------------------|-----------------------------------|
| The wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes.<br><br>*See* **Claim Element 1-B**. |

| Claim 12 – Element | Verizon / CommScope's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 12 by performing the method of claim 12 as detailed here.<br><br>*See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |
| **[ELEMENT 12-A]**<br>receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A**. |
| **[ELEMENT 12-B]**<br>assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

| Claim 12 – Element | Verizon / CommScope's Infringement |
|---|---|
| first subset including more radio resources than the second subset; and | |
| **[ELEMENT 12-C]** in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point. *See* **Claim Element 1-D**. |

| Claim 13 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. *See* **Claim Element 1-D**. Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 14 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point.<br><br>*See* **Claim Element 1-C**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 16 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* Claim 6; *see also, e.g.*, DALIVZN-000428 ("Adjust capacity across the network by sector or channel through a web-based drag-and-drop interface").<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 17 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim 7**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 18 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes.<br><br>*See* **Claim Element 1-B**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 20 - Element | Verizon / CommScope's Infringement |
|---|---|
| **[PREAMBLE]**<br>One or more non-transitory computer readable storage media storing instructions that, when executed by one or more processors, cause | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 20 by including one or more non-transitory computer readable storage media storing instructions that, when executed by one or more processors, cause the one or more processors to perform the steps of claim 20. |

19

| Claim 20 - Element | Verizon / CommScope's Infringement |
|---|---|
| the one or more processors to perform the steps of: | *See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |
| **[ELEMENT 20-A]** receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A**. |
| **[ELEMENT 20-B]** assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

| Claim 20 - Element | Verizon / CommScope's Infringement |
|---|---|
| radio resources than the second subset; and | |
| **[ELEMENT 20-C]** in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point.<br><br>*See* **Claim Element 1-D**. |

**Exhibit B**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership D/B/A Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC (collectively, "CommScope") (altogether, "Verizon / CommScope") infringe the below-identified claims of Dali's U.S. Patent No. 10,334,499 (the '499 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to solutions for in-building wireless coverage, such as CommScope's ION-E/ERA platform (including but not limited to Wide-Area Integration Node (WIN), Central Area Nodes (CAN), Transport Extension Nodes (TEN), Carrier Access Points (CAP), Universal Access Points (UAP), cabling and switches, antennas, various interface modules and donor cards, and any software running thereon) (collectively, "Verizon / CommScope Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / CommScope produces documents and source code and/or the Court construes any terms from the claims of the '499 Patent. Claims 1-4, 8-11, 13, 14-16, and 18-19 are infringed under 35 U.S.C. § 271(a) when Verizon / CommScope uses the Verizon / CommScope Accused Instrumentalities.

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| **[PREAMBLE]** A system for transporting wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble. On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 1 by providing system for transporting wireless communications. For example, CommScope states that an "all-digital ERA distributed antenna system makes in-building wireless simpler and more economical. Operating on standard IT infrastructure—Category 6A and fiber—these solutions allow operators, neutral hosts and enterprises to provide high capacity with 'five bars' of in-building coverage." *See, e.g.*, DALIVZN-000427. |
| **[ELEMENT 1-A]** a baseband unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. The ION-E/ERA platform includes a baseband unit. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
|  | For example, CommScope's ION-E/ERA platform includes a Central Area Node ("CAN") "located at the campus or building head-end. It digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000429.<br><br><br><br>DALIVZN-000428. |
| **[ELEMENT 1-B]** a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>For example, CommScope explains that the ION-E/ERA platform "[t]ake[s] advantage of an all-digital CPRI baseband interface that eliminates the need for analog-to-digital conversions, further reducing head-end size and power requirements" and that the ION E/ERA platform includes a "central area node (CAN)," which "digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000428-429. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| **[ELEMENT 1-C]**<br>a plurality of remote units, including at least a first remote unit and a second remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a plurality of remote units, including at least a first remote unit and a second remote unit.<br><br>For example, CommScope's ION-E/ERA platform includes "[a] range of remote access points that convert the digital signal back to radio frequency (RF) for over-the-air transmission." These remote units include "the carrier access point (CAP)" and "the universal access point (UAP)." *See, e.g.*, DALIVZN-000429.<br><br><br><br>DALIVZN-000428. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | <br>DALIVZN-000423. |
| **[ELEMENT 1-D]** wherein the baseband unit comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources.<br><br>For example, CommScope's ION-E/ERA platform includes a "CPRI digital donor (CDD)" module. This module "receives CPRI digital signals from compatible operator baseband units (BBU)." *See, e.g.*, DALIVZN-000429.<br><br>CommScope's ION-E/ERA platform also includes a "RF donor card (RFD) [that] receives analog RF signals from operator base transceiver stations (BTS)." *Id.*<br><br>Further, CommScope explains that the ION-E/ERA platform "[t]ake[s] advantage of an all-digital CPRI baseband interface that eliminates the need for analog-to-digital conversions, further reducing head-end size and power requirements" and that the ION E/ERA platform includes a "central area node |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | (CAN)," which "digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000428-429.<br><br>CommScope also explains that the ION E/ERA platform includes a "central area node (CAN)," which "digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, DALIVZN-000429.<br><br><br>DALIVZN-000423. |
| **[ELEMENT 1-E]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>For example, CommScope's ION-E/ERA platform includes a Central Area Node ("CAN") "located at the campus or building head-end. It digitizes baseband RF signals, combines signals from different operators and distributes them throughout a building or campus." *See, e.g.*, *Id*. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | For example, CommScope's ION-E/ERA platform includes a "CPRI digital donor (CDD)" that "receives CPRI digital signals from compatible operator baseband units (BBU)." *See, e.g.*, DALIVZN-000429.<br><br>CommScope's ION-E/ERA platform also includes a "RF donor card (RFD) [that] receives analog RF signals from operator base transceiver stations (BTS)." *Id.* |
| **[ELEMENT 1-F]** wherein the baseband unit is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>For example, CommScope's ION-E/ERA platform includes a baseband unit (CAN) that can send digital representations of a first set of downlink radio resources to a first remote unit (CAP or UAP) at a first point in time, including through the TEN for transmission at an antenna of the first remote unit (CAP or UAP).<br><br>Specifically, CommScope's ION-E/ERA platform comprises software that allows for the creation of signal sets that are customized sets of radio resources. Multiple signal sets from different base stations can be created and assigned to either a remote unit (CAP or UAP) or a TEN. According to a webinar introduction to ION-E:<br><br>"[W]e can send any signals to any of the UAPs. … The UAP can have only one assigned signal set. So we create signal sets from Zone 3, Zone 2 and Zone 1, and the signals that … comprise[ ] the signal sets are different based on these operators.  So this would be the way we do that. We, for example, create a new signal set called Zone 1 and then select which channels go to … that signal set. And we do Zone 2 and Zone 3. So we can have the same sectors, same signals in multiple signal sets but only one signal set can go to any of the UAPs. You can either send the Zone 1, Zone 2, Zone 3 signal set … directly to a TEN, then it will be automatically be distributed to all of the UAPs that are connected to that TEN. This is probably how you would do that in most cases where you have a zone driven by a TEN." *See, e.g.*, Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:00-22:49, last accessed June 8, 2022.<br><br><br><br>*Id.* |
| **[ELEMENT 1-G]** wherein the baseband unit is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>For example, CommScope's ION-E/ERA platform includes a baseband unit (CAN) that can send digital representations of a second set of radio resources to the first remote unit (CAP or UAP) at a second point in time for transmission through the antenna of the remote unit. CommScope's ION- |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| set of radio resources for transmission at the antenna of the first remote unit; | E/ERA platform allows for the creation of different signal sets from base stations that comprise different radio resources. A second set of radio resources may be sent to a first remote unit (CAP or UAP) at a different point in time from the first set.<br><br>According to a CommScope webinar, "[w]e have a full control over each channel, we can turn channels on and off…and we can distribute the channels to any UAP with extreme flexibility, so any signal can go to any UAP… We create signal sets and then those signal sets can be sent via software or software command to them, to any UAP." Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:21-22:48, last accessed June 8, 2022.<br><br>In addition, multiple signal sets from different base stations can be created and assigned to remote units: |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **Assign Signal Sets (Direct signal traffic to TENs and UAPs)**<br><br>Signal Sets, which are a user-defined set of channels, can be quickly assigned to CANs and all UAPs assigned to them, TENs and all UAPs assigned to them, or to individual UAPs on the *Signal Distribution* page.<br><br>  1.  Click on the *Signal Distribution* tab to open the page.<br>  2.  Assign a signal set by:<br>     o  Clicking on a signal set and dragging it onto the a TEN or UAP (set icons adjacent to the device name indicate the sets assigned to a TEN or UAP)<br>     o  Clicking on a signal set to select it (green highlight) and then clicking on each TEN or UAP to which you wish to assign the signal set.<br><br><br><br>  3.  Click the *Save* button after you've assigned each signal set<br><br>DALIVZN-000465. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **5.5.  Signal Distribution**<br><br>The ION-E uses signal sets to group the detected signals to simplify signal routing to the radiating elements throughout the system. First the user must create and define the signal sets by assigning channels to the sets. The signal sets are then assigned as needed using drag and drop functionality to route the signals to the TENs and UAPs.<br><br>**Create and Edit Signal Sets**<br><br>1. Click on the *Signal Distribution* tab to open the page.<br>2. Select a set from the *Signal Sets* list and click the *Edit* button to edit an existing set.<br>3. Click on the *Add a New Signal Set* link to open the Add *Signal Set* page to create a new set.<br><br><br><br>4. Enter a Name for the signal set in the *Signal Set Name* field.<br>5. Click to select a channel from the *Available Channels* list or shift click to select multiple channels and drag them onto the *Assigned Channels* list. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | <br><br>6. Click the *Save* button to save the Signal Set.<br><br>DALIVZN-000464-465.<br><br>Further, CommScope's Era System "is an extension of the hardware and software architecture that CommScope originally introduced as ION-E" such that "ION-E and Era share the same hardware modules, system software and management systems" and "existing ION-E systems can be updated and expanded using Era components." See, e.g., DALIVZN-000428.<br><br>The Era System further provides for dynamic "capacity routing" which, on information and belief, dynamically changes the amount of radio resources between the first set of radio resources and a second set of radio resources. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | · **Capacity can be dynamically shared across many buildings.** The solution adjusts levels to meet variable demand, thanks to its capacity routing capabilities.<br><br>DALIVZN-000635.<br><br>Further, CommScope's ION-E/ERA platform is described as "Flexible . . . Shift capacity to where and when you need it, all in software." *See, e.g.*, DALIVZN-000421. |
| **[ELEMENT 1-H]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources; and | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to send digital representations of a first and second set of radio resources, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>CommScope's ION-E/ERA platform comprises a baseband unit (CAN) that allows the number of radio resources between the first set of radio resources to be different from the radio resources in the second set of radio resources. CommScope's ION-E/ERA allows for customizable signal sets with different numbers of radio resources per signal set:<br><br>Specifically, CommScope's ION-E/ERA platform comprises software that allows for the creation of signal sets that are customized sets of radio resources. Multiple signal sets from different base stations can be created and assigned to either a remote unit (CAP or UAP) or a TEN. According to a webinar introduction to ION-E:<br><br>"[W]e can send any signals to any of the UAPs. … The UAP can have only one assigned signal set. So we create signal sets from Zone 3, Zone 2 and Zone 1, and the signals that … comprise[ ] the signal sets are different based on these operators.  So this would be the way we do that. We, for example, create a new signal set called Zone 1 and then select which channels go to … that signal set. And we do Zone 2 and Zone 3. So we can have the same sectors, same signals in multiple signal sets but only one signal set can go to any of the UAPs. You can either send the Zone 1, Zone 2, Zone 3 signal set … directly to a TEN, then it will be automatically be distributed to all of the UAPs that are connected to |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | that TEN. This is probably how you would do that in most cases where you have a zone driven by a TEN." *See* Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 23:32-24:52, last accessed June 8, 2022.<br><br><br><br>*Id*.<br><br>Further, CommScope's ION-E/ERA platform's baseband unit (CAN) can send digital representations of a second set of radio resources to the first remote unit (CAP or UAP) at a second point in time for transmission through the antenna of the remote unit. CommScope's ION-E/ERA platform allows for the creation of different signal sets from base stations that comprise different radio resources. A second |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | set of radio resources may be sent to a first remote unit (CAP or UAP) at a different point in time from the first set.<br><br>According to a CommScope webinar, "[w]e have a full control over each channel, we can turn channels on and off…and we can distribute the channels to any UAP with extreme flexibility, so any signal can go to any UAP… We create signal sets and then those signal sets can be sent via software or software command to them, to any UAP." Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:21-22:48, last accessed June 8, 2022.<br><br>In addition, multiple signal sets from different base stations can be created and assigned to remote units: |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **Assign Signal Sets (Direct signal traffic to TENs and UAPs)**<br><br>Signal Sets, which are a user-defined set of channels, can be quickly assigned to CANs and all UAPs assigned to them, TENs and all UAPs assigned to them, or to individual UAPs on the *Signal Distribution* page.<br><br>1. Click on the *Signal Distribution* tab to open the page.<br>2. Assign a signal set by:<br>    ○ Clicking on a signal set and dragging it onto the a TEN or UAP (set icons adjacent to the device name indicate the sets assigned to a TEN or UAP)<br>    ○ Clicking on a signal set to select it (green highlight) and then clicking on each TEN or UAP to which you wish to assign the signal set.<br><br><br><br>3. Click the *Save* button after you've assigned each signal set<br>DALIVZN-000465. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | **5.5.  Signal Distribution**<br><br>The ION-E uses signal sets to group the detected signals to simplify signal routing to the radiating elements throughout the system. First the user must create and define the signal sets by assigning channels to the sets. The signal sets are then assigned as needed using drag and drop functionality to route the signals to the TENs and UAPs.<br><br>**Create and Edit Signal Sets**<br><br>1.  Click on the *Signal Distribution* tab to open the page.<br>2.  Select a set from the *Signal Sets* list and click the *Edit* button to edit an existing set.<br>3.  Click on the *Add a New Signal Set* link to open the Add *Signal Set* page to create a new set.<br><br><br><br>4.  Enter a Name for the signal set in the *Signal Set Name* field.<br>5.  Click to select a channel from the *Available Channels* list or shift click to select multiple channels and drag them onto the *Assigned Channels* list. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | <br><br>6. Click the *Save* button to save the Signal Set.<br><br>DALIVZN-000464-465.<br><br>Further, CommScope's Era System "is an extension of the hardware and software architecture that CommScope originally introduced as ION-E" such that "ION-E and Era share the same hardware modules, system software and management systems" and "existing ION-E systems can be updated and expanded using Era components." See, e.g., DALIVZN-000428.<br><br>The Era System further provides for dynamic "capacity routing" which, on information and belief, dynamically changes the amount of radio resources between the first set of radio resources and a second set of radio resources. |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | · **Capacity can be dynamically shared across many buildings.** The solution adjusts levels to meet variable demand, thanks to its capacity routing capabilities.<br><br>DALIVZN-000635.<br><br>Further, CommScope's ION-E/ERA platform is described as "Flexible . . . Shift capacity to where and when you need it, all in software." *See, e.g.*, DALIVZN-000421. |
| **[ELEMENT 1-I]** wherein the baseband unit is configured to receive digital signals from each of the plurality of remote units. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to receive digital signals from each of the plurality of remote units.<br><br>CommScope's ION-E/ERA platform includes baseband units (CAN) that can both send and receive digital signals to and from the remote units.<br><br> |

| Claim 1 – Element | Verizon / CommScope's Infringement |
|---|---|
| | DALIVZN-000428.<br><br><br><br>DALIVZN-000423. |

| Claim 2 | Verizon / CommScope's Infringement |
|---|---|
| The system of claim 1 wherein the baseband unit is configured to packetize each digital representation of a radio resource. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform's baseband unit is configured to packetize each digital representation of a radio resource.<br><br>An Era and ION-E Software Guide explains that the CANs packetize the digital representations received from the signal source. |

| Claim 2 | Verizon / CommScope's Infringement |
|---|---|
| | A 2018 CommScope document titled "Era C-RAN antenna system: In-building wireless capacity without constraints" discloses that in the Era system the host unit communicates using "Common Public Radio Interface (CPRI)." DALIVZN-000635-36<br><br>CPRI is a digital communications protocol that requires the formation of frames or packets and therefore packetizes digital representations of the radio resource signals. Common Public Radio Interface Specification V6.0 (2013).<br><br>The CommScope webinar on the ION-E system architecture further explains:<br><br>"On a high level we have [an] eNode B or the LTE base station connecting to a component called e-POI, or enhanced point of interface, which receives the signal and then has in the front QMA ports with a DIN connector in the back and a QMA connector in the front which then connects to our RF donor card which is part of our CAN, or central area node, and after that we convert the signals to software domain and do all the routing in the software domain." *See* Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 13:45-14:25, last accessed June 8, 2022.<br><br>"The CAN - where the RF signals are coming from the base station, received at the RF donor card, and then we manage the distribution of those signals to the UAPs, or to the TENs and to their UAPs in software domain. … CAN is the base station interface and that is where we manage the central signal distribution. We send any of the incoming signals to any of the UAPs." *Id.* |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| The system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. | CommScope's ION-E/ERA platform, the digital representations of the radio resources are directed to specific individual remote access points (i.e., location information):<br><br>For example, CommScope's ION-E/ERA platform comprises a base band unit (CAN) that allows for the creation of different signal sets from base stations that comprise different downlink channel signals. Within the software, a set of downlink channel signals may be sent to specific remote unit (CAP or UAP). According to a CommScope webinar, "[w]e have a full control over each channel, we can turn channels on and off…and we can distribute the channels to any UAP with extreme flexibility, so any signal can go to any UAP… We create signal sets and then those signal sets can be sent via software or software command to them, to any UAP." See Webinar Introduction to ION-E, Telecom Knowledge Share, Published July 22, 2016, available at https://www.youtube.com/watch?v=Kmw2qMlgLrU ("Webinar Introduction to ION E") at 22:21-22:48, last accessed June 8, 2022.<br><br>An ION-E user manual further explains how digital signal sets ("digital representations") can be assigned and distributed to specific UAPs: |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| | **Assign Signal Sets (Direct signal traffic to TENs and UAPs)**<br><br>Signal Sets, which are a user-defined set of channels, can be quickly assigned to CANs and all UAPs assigned to them, TENs and all UAPs assigned to them, or to individual UAPs on the *Signal Distribution* page.<br><br>1. Click on the *Signal Distribution* tab to open the page.<br>2. Assign a signal set by:<br>  o Clicking on a signal set and dragging it onto the a TEN or UAP (set icons adjacent to the device name indicate the sets assigned to a TEN or UAP)<br>  o Clicking on a signal set to select it (green highlight) and then clicking on each TEN or UAP to which you wish to assign the signal set.<br><br><br><br>3. Click the *Save* button after you've assigned each signal set<br><br>DALIVZN-000465. |

| Claim 3 | Verizon / CommScope's Infringement |
|---------|-----------------------------------|
| | **5.5.  Signal Distribution**<br><br>The ION-E uses signal sets to group the detected signals to simplify signal routing to the radiating elements throughout the system. First the user must create and define the signal sets by assigning channels to the sets. The signal sets are then assigned as needed using drag and drop functionality to route the signals to the TENs and UAPs.<br><br>**Create and Edit Signal Sets**<br><br>1. Click on the *Signal Distribution* tab to open the page.<br>2. Select a set from the *Signal Sets* list and click the *Edit* button to edit an existing set.<br>3. Click on the *Add a New Signal Set* link to open the Add *Signal Set* page to create a new set.<br><br><br><br>4. Enter a Name for the signal set in the *Signal Set Name* field.<br>5. Click to select a channel from the *Available Channels* list or shift click to select multiple channels and drag them onto the *Assigned Channels* list. |

| Claim 3 | Verizon / CommScope's Infringement |
|---|---|
| | <br><br>6.  Click the *Save* button to save the Signal Set.<br>DALIVZN-000464-465.<br><br>Further, CommScope's ION-E/ERA platform "[o]perates on standard IT cabling." *See, e.g.*, DALIVZN-000421. CommScope's ION-E/ERA platform also provides for dynamic "capacity routing" which, on information and belief, provides means for the radio resources directed to specific remote access points to be changed. *See, e.g.*, DALIVZN-000635.<br><br>CommScope's ION-E/ERA's Central Area Node (CAN) sends digital transmissions via CPRI and standard IT cabling. CPRI involves the use of packetized data including Control & Management Channel maps and encodes ethernet packets for transmission with destination information identifying the remote units. Further, both ethernet and IP protocols have destination information. For example, ethernet has Destination Mac Address (see e.g., Ethernet 802.3 frame protocol standard) while IPv4 and IPv6 have destination IP address (see e.g., Internet Protocol version 4 and Internet Protocol version 6 protocol standards). |

| Claim 4 | Verizon / CommScope's Infringement |
| --- | --- |
| The system of claim 1 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the system of claim 1 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 8 - Element | Verizon / CommScope's Infringement |
| --- | --- |
| **[PREAMBLE]**<br>A baseband controller for use in the transport of wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 8 by providing a baseband controller for use in the transport of wireless communications.<br><br>*See* **Claim 1**. |
| **[ELEMENT 8-A]**<br>a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>*See* **Claim Element 1-D**. |

| Claim 8 - Element | Verizon / CommScope's Infringement |
|---|---|
| **[ELEMENT 8-B]** at least one interface to communicatively couple the baseband unit to a plurality of remote units, including at least a first remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes at least one interface to communicatively couple the baseband unit to a plurality of remote units, including at least a first remote unit.<br><br>*See* **Claim Elements 1-C**, **1-F**, **1-G**, and **1-I**. |
| **[ELEMENT 8-C]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>*See* **Claim Element 1-E**. |
| **[ELEMENT 8-D]** wherein the baseband unit is configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |
| **[ELEMENT 8-E]** wherein the baseband unit is configured to send digital representations of a second set of radio resources to the first remote unit at a second | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit configured to send digital representations of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |

| Claim 8 - Element | Verizon / CommScope's Infringement |
|---|---|
| point in time, the second set of radio resources for transmission at the antenna of the first remote unit; and | |
| **[ELEMENT 8-F]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform includes a baseband unit that is configured to send digital representations of a first and second set of radio resources, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. *See* **Claim Element 1-H**. |

| Claim 9 | Verizon / CommScope's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource. *See* **Claim 2**. |

| Claim 10 | Verizon / CommScope's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the baseband controller of claim 8 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit.<br><br>*See* **Claim 3**. |

| Claim 11 | Verizon / CommScope's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 13 | Verizon / CommScope's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform meets the baseband controller of claim 8 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 14 - Element | Verizon / CommScope's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for providing digital signals in a Distributed Antenna System (DAS), comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / CommScope Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / CommScope Accused Instrumentalities satisfy each and every limitation of claim 14 by performing a method for providing digital signals in a Distributed Antenna System (DAS).<br><br>*See* **Claim Element 1**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 14 - Element | Verizon / CommScope's Infringement |
|---|---|
| **[ELEMENT 14-A]** receiving at a baseband unit, from a plurality of signal sources including at least a first signal source and a second signal source, a plurality of radio resources; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform receives at a baseband unit, from a plurality of signal sources including at least a first signal source and a second signal source, a plurality of radio resources.<br><br>*See* **Claim Element 1-E**. |
| **[ELEMENT 14-B]** transmitting from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform transmits from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |
| **[ELEMENT 14-C]** transmitting from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit; | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform transmits from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |

| Claim 14 - Element | Verizon / CommScope's Infringement |
| --- | --- |
| **[ELEMENT 14-D]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 14, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. *See* **Claim Element 1-H**. |

| Claim 15 | Verizon / CommScope's Infringement |
| --- | --- |
| The method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the second remote unit. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the second remote unit. *See* **Claim 3**. |

| Claim 16 | Verizon / CommScope's Infringement |
| --- | --- |
| The method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. *See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 16 | Verizon / CommScope's Infringement |
|---|---|
| from the first signal source and at least some radio resources from the second signal source. | Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 18 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**.<br><br>Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

| Claim 19 | Verizon / CommScope's Infringement |
|---|---|
| The method of claim 14 further comprising packetizing, at the baseband unit, at least a | The Verizon / CommScope Accused Instrumentalities satisfy this claim element. CommScope's ION-E/ERA platform performs the method of claim 14 further comprising packetizing, at the baseband unit, at least a subset of the plurality of radio resources.<br><br>*See* **Claim 2**. |

| Claim 19 | Verizon / CommScope's Infringement |
|---|---|
| subset of the plurality of radio resources. | Further, this method is infringed by Verizon / CommScope when the Verizon / CommScope Accused Instrumentalities are tested and/or used by Verizon / CommScope. |

**Exhibit C**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Ericsson Inc, and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") (altogether, "Verizon / Ericsson") infringe the below-identified claims of Dali's U.S. Patent No. 8682338 (the "'338 Patent") by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Ericsson's Radio Dot System (including, but not limited to, the Digital Unit (DU), Indoor Radio Units (IRU) and Radio Dots (RD)), cabling and switches, and any software running thereon) (collectively, "Verizon / CommScope Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Ericsson produces documents and source code and/or the Court construes any terms from the claims of the '338 Patent. Claims 1 and 2 are infringed under 35 U.S.C. § 271(a) at least when Verizon / Ericsson uses the Verizon / Ericsson wireless solutions.

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for routing and switching RF signals comprising: | To the extent that the Court deems the preamble of Claim 1 to be limiting, Verizon / Ericsson's wireless solutions meets this claim element.<br><br>For example, Ericsson's Radio Dot System "combines centralized baseband and radio units with visually low-impact antennas. Ericsson innovations enable RF signal, power and control over standard shielded LAN cables for cost-effective deployment with minimal business disruption. DALIVZN-0002085-292. Moreover, Ericsson's Radio Dot System includes "centralized radios [which] provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." *Id.*<br><br>Further, the wireless solution routes and switches RF signals in the downlink, from the operator's network to the user equipment (UE) using the Ericsson's Radio Dot System and in the uplink from the user equipment (UE) to the operator's network.<br><br>Further, this method is infringed by Verizon / Ericsson when the small cell wireless solutions are tested and/or used by Verizon / Ericsson. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-A]** <br> providing one or more remote radio units, each remote radio unit configured to transmit one or more downlink RF signals and to receive one or more uplink RF signals; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System provides one or more remote radio units, each remote radio unit configured to transmit one or more downlink RF signals and to receive one or more uplink RF signals. <br><br> For example, in the Verizon / Ericsson's Radio Dot System, the system includes one or more remote radio units, such as Radio Dots with Indoor Radio Units (IRUs) as shown below: <br><br>  <br><br>  <br><br> DALIVZN-000001-10. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | Remote radio units also include Radio Dots that do not require an IRU, such as the CBRS Micro Radio as shown below or the Micro Radio (mRRU):<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a digital access unit configured to communicates with the IRU, Radio Dots, and/or CBRS Micro Radios:<br><br><br><br>DALIVZN-000295. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | 

DALIVZN-000285-292.

Further, each remote radio unit is configured to transmit one or more downlink RF signals and to receive one or more uplink RF signals.  For example, Ericsson's Single Band Radio Dot includes RF hardware that provides "2x2 MIMO, Tx/Rx diversity" and Ericsson's Dual Band Radio Dot includes RF hardware that provides "2x2 MIMO, Tx/Rx diversity (per band".  As shown above, the functionality of Verizon / Ericsson's Radio Dots RF hardware include transmitting RF signals (shown as "TX") and receiving uplink RF signals (shown as "RX"). *See e.g.,* DALIVZN-000001-10. |
| **[ELEMENT 1-B]** providing at least one digital access unit configured to communicate with the one or more remote radio units; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System provides at least one digital access unit configured to communicate with the one or more remote radio units. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | For example, in the Verizon / Ericsson's Radio Dot System, the DU is the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-0002085-292.<br><br>Further, the DU is configured to communicate via CPRI with remote radio units, including Radio Dots and IRUs as shown below:<br><br><br><br><br><br>DALIVZN-000001-10. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a digital access unit configured to communicate with the IRU, Radio Dots, and/or CBRS Micro Radios:<br><br><br><br>DALIVZN-000295.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a digital access unit configured to communicate with the IRU and Radio Dots. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | **MULTI OPERATOR RADIO DOT SYSTEM**<br><br>› One system, 4 operators, non-DAS solution<br>› Enables additional operators to "plug-in" to Radio Dot Solution<br>› Gain multi-operator benefits with the coverage and capacity of the Radio Dot System<br><br>**NEW RF-ACCESS UNIT (RAU)**<br><br>› 3x RF inputs 2x2MIMO<br>› Connection to 4 IRUs<br>› 19" building practice -48V or AC<br>› Integrated part of Ericsson Radio System HW and SW. Managed, installed and handled like other components in Ericsson Radio System<br><br>› Ensure operator independence<br>› Deliver superior coverage and capacity<br>› Guaranteed minimal footprint and delivered with cost efficiencies in mind<br><br>DALIVZN-000609-632. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-C]**<br>translating the uplink and downlink signals between RF and base band as appropriate; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System translates the uplink and downlink signals between RF and base band as appropriate.<br><br>For example, the Verizon / Ericsson wireless solution consists of Radio Dots, Baseband Units (DU) and Indoor Radio Units (IRU) and these components translate the uplink and downlink signals between RF and base band as appropriate.  As shown in the Figure below, for example, the Indoor Radio unit contains "ADC" and "DAC" and "Radio Processing" for converting signals as appropriate and the Digital Unit contains "BB processing" for converting signals as appropriate.<br><br>Further, the Radio Dot System is configured to translate uplink and downlink signals between RF and base band as appropriate as shown below:<br><br><br>FIGURE 4 Main-remote RBS block diagram |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000001-10.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" as part of the Radio Dot System and is configured to translate uplink and downlink signals between RF and base band as appropriate: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |   DALIVZN-000609-632. |
| **[ELEMENT 1-D]** packetizing the uplink and downlink base band signals, wherein the packetized signals correspond to a plurality of carriers; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System packetizes the uplink and downlink base band signals, wherein the packetized signals correspond to a plurality of carriers.  For example, upon information and belief, the Digital Unit (DU) and/or Baseband unit and/or RF-Access Unit (RAU) and Indoor Radio Unit (IRU) and/or Radio Points (e.g., CBRS Micro Radio) can be connected via electrical or fiber and communicate via Digital CPRI and digital CPRI is a packetized communications standard. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | **Indoor Radio Unit**<br><br>The Indoor Radio Unit (IRU) is a component in the Radio Dot System (RDS). The IRU must be used together with Dots to have full radio functionality.<br><br>The IRU has three purposes:<br>• Provides an interface to the Digital Unit (DU) or Baseband unit through a CPRI cable.<br>• Provides signaling and power interface to the Dot over the Radio Dot Interface (RDI).<br>• Collects external alarms and transmits them to the Digital Unit.<br>Depending on the type of IRU, up to 8 or 16 Dots can be connected to a single IRU.<br><br>DALIVZW-000599-600<br><br>**»» Digital unit**<br>The DU provides pooled baseband processing for the system. To manage the connected radios, the DU uses the CPRI standard for the DU-IRU interface to transfer synchronization, radio signals and O&M signals. When collocated with the IRU, an electrical CPRI interface is used, and for remote connection with the IRU, a CPRI fiber interface is used.<br><br>DALIVZN-000001-10. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | The Digital Down Converters present in each of RRU**1**, RRU**2**, RRU**3** and RRU**4** are dynamically software-config-ured as described previously so that uplink signals of the appropriate desired signal format(s) present at the receive antenna ports of the respective RRU**1**, RRU**2**, RRU**3** and RRU**4** are selected based on the desired uplink band(s) to be processed and filtered, converted and transported to the appropriate uplink output port of either DAU**1** or DAU**2**. The DAUs and RRUs frame the individual data packets corre-sponding to their respective radio signature using the Com-mon Public Interface Standard (CPRI). Other Interface stan-dards are applicable provided they uniquely identify data packets with respective RRUs. Header information is trans-mitted along with the data packet which indentifies the RRU and DAU that corresponds to the individual data packet.<br><br>'338 Patent at 8:48-62<br><br>Specifically in the downlink, upon information and belief, the Digital Unit (DU) and/or Baseband unit and/or RF-Access Unit packetizes base band signals, and those packetized signals correspond to a plurality of carriers.  For example, the carriers correspond as part of a resource block mapping or as part of carrier aggregation.<br><br>Specifically in the uplink, upon information and belief, the Indoor Radio Unit (IRU) and/or Radio Dot (RD) packetizes base band signals, and those packetized signals correspond to a plurality of carriers.  For example, the carriers correspond as part of a resource block mapping or as part of carrier aggregation. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |   DALIVZN-000609-632. |
| **[ELEMENT 1-E]** configuring each remote radio unit to receive or transmit a respective subset of the plurality of carriers, each respective subset of the plurality of carriers including a number of carriers; | Verizon / Ericsson's wireless solutions meet this claim element.  Ericsson's Radio Dot System configures each remote radio unit to receive or transmit a respective subset of the plurality of carriers, each respective subset of the plurality of carriers including a number of carriers.<br><br>For example, Verizon / Ericsson's wireless solution "has addressed the 5G mid-band and high-band coverage limitations by developing a flexible 5G Carrier Aggregation solution which supports control and data traffic on the uplink using lower frequency band which increases coverage, and on the downlink with a mid or high-frequency band which increases capacity and data throughput." DALIVZW-000472-488. As a result, Ericsson's Radio Dot System can be configured to receive or transmit a respective subset of the plurality of carriers, with each respective subset of the plurality of carriers including a number of carriers. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | As shown below, the Verizon / Ericsson system is designed and used for "flexible capacity" which enables configuring and reconfiguring remote radio units to "provide capacity in a more flexible way – by shifting available capacity from one place to another on demand." <br><br>  <br><br> DALIVZN-000001-10. <br><br> As explained in the Ericsson Review, the digital access unit "provides pooled baseband processing for the system.  To *manage* the connected radios, the DU uses the CPRI standard for the DU-IRU interface to transfer synchronization, radio signals, and O&M signals." DALIVZN-000001-10. |
| **[ELEMENT 1-F]** reconfiguring each remote radio unit by: determining a load percentage for each remote radio unit; and increasing or decreasing the number of carriers in the respective subset of | Verizon / Ericsson's wireless solutions meet this claim element.  On information and belief, Verizon / Ericsson's wireless solutions reconfigure each remote radio unit by: determining a load percentage for each remote radio unit; and increasing or decreasing the number of carriers in the respective subset of the plurality of carriers based on the load percentage. <br><br> For example, Verizon / Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| the plurality of carriers based on the load percentage; and | meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-0002085-292.<br><br>Moreover, Verizon / Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293-294.<br><br>Verizon / Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells.  Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-0002085-292.<br><br>As another example, Ericsson's U.S. Pat. No. 9,591,590, which describes the Accused Radio Dot System, describes load balancing between cells.  U.S. Pat. No. 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system, and upon information and belief, this is done based on load percentage: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | *Evolution to flexible capacity*<br><br>Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | <br>DALIVZN-000001-10. |
| **[ELEMENT 1-G]**<br>routing and switching the packetized signals among the one or more remote radio units via the at least one digital access unit according to a result of the reconfiguring. | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot system routes and switches the packetized signals among the one or more remote radio units via the at least one digital access unit according to a result of the reconfiguring.<br><br>For example, Verizon / Ericsson's Radio Dot System provides pooled capacity that is managed by the digital access unit and which can be reassigned based on network requirements: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-0002085-292. Moreover, the digital access unit "is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." *Id.* This allows for reconfiguring the routing and switching of packetized signals among the one or more remote radio units.<br><br>As explained in the Ericsson Review, the digital access unit "provides pooled baseband processing for the system.  To *manage* the connected radios, the DU *uses the CPRI* |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | *standard* for the DU-IRU interface to *transfer synchronization, radio signals, and O&M signals.*" *See* DALIVZN-000001-10. |

| Claim 2 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 1 wherein each carrier corresponds to a respective RF band. | Verizon / Ericsson's wireless solutions meets this claim element. *See* **Claim 1**, *supra.* As described above, infringement occurs when reconfiguring based on load.  The adjustment of carriers occurs altering the resource block mapping as part of load balancing, flexible capacity, and/or carrier aggregation.  RBUs are resource block units which are associated with carriers in LTE systems with a group of resource blocks being part of a RF band. *See, e.g.,* TS 36.211 9.1.0 at 13: |

### 5.2.3    Resource blocks

A physical resource block is defined as $N_{symb}^{UL}$ consecutive SC-FDMA symbols in the time domain and $N_{sc}^{RB}$ consecutive subcarriers in the frequency domain, where $N_{symb}^{UL}$ and $N_{sc}^{RB}$ are given by Table 5.2.3-1. A physical resource block in the uplink thus consists of $N_{symb}^{UL} \times N_{sc}^{RB}$ resource elements, corresponding to one slot in the time domain and 180 kHz in the frequency domain.

**Table 5.2.3-1: Resource block parameters.**

| Configuration | $N_{sc}^{RB}$ | $N_{symb}^{UL}$ |
|---|---|---|
| Normal cyclic prefix | 12 | 7 |
| Extended cyclic prefix | 12 | 6 |

The relation between the physical resource block number $n_{PRB}$ in the frequency domain and resource elements $(k,l)$ in a slot is given by

$$n_{PRB} = \left\lfloor \frac{k}{N_{sc}^{RB}} \right\rfloor$$

**Exhibit D**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Ericsson Inc, and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") (altogether, "Verizon / Ericsson") infringe the below-identified claims of Dali's U.S. Patent No. 10,334,499 (the '499 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Ericsson's Radio Dot System (including, but not limited to, the Digital Unit (DU), Indoor Radio Units (IRU) and Radio Dots (RD), CBRS Micro Radios, and mRRUs), cabling and switches, and any software running thereon) (collectively, the "Verizon / Ericsson Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Ericsson produces documents and source code and/or the Court construes any terms from the claims of the '499 Patent. Claims 1-4, 8, 9, 10, 11, 13-15, 16, and 18-19 are infringed under 35 U.S.C. § 271(a) when Verizon / Ericsson uses the Verizon / Ericsson Accused Instrumentalities.

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A system for transporting wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 1 by providing system for transporting wireless communications.<br><br>For example, Ericsson's Radio Dot System "combines centralized baseband and radio units with visually low-impact antennas. Ericsson innovations enable RF signal, power and control over standard shielded LAN cables for cost-effective deployment with minimal business disruption. *See, e.g.,* DALIVZN-0002085-292. Moreover, Ericsson's Radio Dot System includes "centralized radios [which] provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." *Id.*<br><br>Ericsson's multiband Radio Dot System for CBRS "combine carriers to over improved network speeds, including support for 4G and 5G on a single cable. Service providers can leverage pre-existing fiber to make stable networks." DALIVZN-000295. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | |
| **[ELEMENT 1-A]**<br>a baseband unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit.<br><br>For example, in the Verizon / Ericsson's Radio Dot System, the system includes one or more base band units, such as Digital Units (DUs) as shown below. Ericsson describes its Radio Dot System as a "complete end-to-end solution including the RF signal source. RDS consists of the Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU). The DU and IRU can be connected by fiber or co-located and connected through Digital CPRI cable" and that "[t]he Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area."<br><br><br><br>*See, e.g.*, DALIVZN-000288. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  *See, e.g.*, DALIVZN-000290. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a baseband unit configured to communicate with the IRU and Radio Dots. |

4

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>DALIVZN-000609-632.<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a baseband unit configured to communicates with the IRU, Radio Dots, or CBRS Micro Radios: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000295. |
| **[ELEMENT 1-B]** a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>For example, Ericsson's "Dual Band Dot enables multi-operator deployments." DALIVZN-000239. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | First – parallel deployments with each operator using its own dedicated baseband, IRU and Dots. These Dots can be housed in the same enclosures (the new enclosures known as the multi-dot bracket) to tidy things up a bit.<br><br><br><br>Secondly – a multi-operator deployment using a shared baseband and IRU, over the same network of distributed radio heads, using MORAN (Multi Operator Radio Access Network) or MOCN (Multi Operator Core Network) network sharing capabilities.<br><br>Thirdly, a multi-operator Dot solution where operators provide multiple RF sources to the same Dot system. They do this by feeding baseband capacity to a new access unit from Ericsson, the RF Access Unit (RAU). This new RAU can support three 2×2 MIMO RF inputs, and can be connected on the other side to four IRUs, which then feed the shared Dot remote radioheads. |
| | DALIVZN-000559-60. |
| **[ELEMENT 1-C]**<br>a plurality of remote units, including at least a first | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a plurality of remote units, including at least a first remote unit and a second remote unit. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| remote unit and a second remote unit; | For example, in the Verizon / Ericsson's Radio Dot System, the system includes one or more remote radio units, such as Radio Dots with Indoor Radio Units (IRUs) as shown below:<br><br><br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5.<br><br>Remote radio units also include Radio Dots that do not require an IRU, such as the CBRS Micro Radio as shown below or the Micro Radio (mRRU). |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a baseband unit configured to communicates with the IRU, Radio Dots, or CBRS Micro Radios:<br><br><br><br>DALIVZN-000295. |
| **[ELEMENT 1-D]** wherein the baseband unit comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources.<br><br>*See* **Claim Element 1-B**. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-E]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>For example, Ericsson's Radio DOT includes a baseband unit as described in **Claim Element 1-A** above. Ericsson's baseband unit is also configured to receive a plurality of radio resources from the signal sources described in **Claim Elements 1-B** and **1-D** above.<br><br>For example, in the Verizon / Ericsson's Radio Dot System, the DU is the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-0002085-292.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a baseband unit configured to communicate with the IRU and Radio Dots.<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>DALIVZN-000609-632.<br><br>As a further example, Verizon / Ericsson's wireless solution "has addressed the 5G mid-band and high-band coverage limitations by developing a flexible 5G Carrier Aggregation solution which supports control and data traffic on the uplink using lower frequency band which increases coverage, and on the downlink with a mid or high-frequency band which increases capacity and data throughput." *See* DALIVZW-000472-488. As a result, the Verizon / Ericsson Radio Dot System can be configured to receive or send a plurality of radio resources for multiple signal sources.<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which receives radio resources from the signal sources. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000295. |
| **[ELEMENT 1-F]** wherein the baseband unit is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit. Ericsson's baseband unit (DU, RF Access Unit, etc.) sends digital representations of the radio resources to the remote units. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | For example, in the Verizon / Ericsson's Radio Dot System, the DU is the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-0002085-292.<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a baseband unit configured to communicate with the IRU and Radio Dots.<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | 

DALIVZN-000609-632.

As a further example, Verizon / Ericsson's wireless solution "has addressed the 5G mid-band and high-band coverage limitations by developing a flexible 5G Carrier Aggregation solution which supports control and data traffic on the uplink using lower frequency band which increases coverage, and on the downlink with a mid or high-frequency band which increases capacity and data throughput." *See* DALIVZW-000472-488. As a result, the Verizon / Ericsson Radio Dot System can be configured to send or receive a plurality of radio resources for multiple signal sources.

As shown below, the Verizon / Ericsson system is designed and used for "flexible capacity" which enables configuring and reconfiguring remote radio units to "provide capacity in a more flexible way – by shifting available capacity from one place to another on demand." |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | 

*See* DALIVZN-000001-10 at Fig. 7.

As explained in the Ericsson Review, the baseband unit "provides pooled baseband processing for the system. To *manage* the connected radios, the DU uses the CPRI standard for the DU-IRU interface to transfer synchronization, radio signals, and O&M signals." *See* DALIVZN-000001-10. |
| **[ELEMENT 1-G]** wherein the baseband unit is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.

Ericsson's baseband unit (DU, RF Access Unit, etc.) sends digital representations of the radio resources to the remote units.

For example, Verizon / Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-0002085-292. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | Moreover, Verizon / Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293-DALIVZN-000294.<br><br>Verizon / Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells.  Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-0002085-292.<br><br>As another example, Ericsson's U.S. Pat. No. 9,591,590 describing the Accused Radio Dot System describes load balancing between cells.  U.S. Pat. No. 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | *Evolution to flexible capacity* <br><br> Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity.   As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy.<br><br><br><br>*See* DALIVZN-000001-10. |
| **[ELEMENT 1-H]** wherein a number of radio resources in the first set of radio resources is different | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to send digital representations of a first and second set of radio resources as recited in claim **Element 1-G**, wherein a number of radio resources in the |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| from a number of radio resources in the second set of radio resources; and | first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>Ericsson's Radio Dot System dynamic adjustment of radio resources results in a number of radio resources for one set to be different from another set. For example, Verizon / Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-0002085-292.<br><br>Moreover, Verizon / Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293-DALIVZN-000294.<br><br>Verizon / Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells. Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-0002085-292.<br><br>As another example, Ericsson's US959150 describing the Accused Radio Dot System describes load balancing between cells. US 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | *Evolution to flexible capacity* Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity.    As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy.  **FIGURE 7** Illustration of flexible capacity *See* DALIVZN-000001-10. |
| **[ELEMENT 1-I]** wherein the baseband unit is configured to receive digital signals from each | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to receive digital signals from each of the plurality of remote units. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| of the plurality of remote units. | For example, in the Verizon / Ericsson's Radio Dot System, the system includes one or more remote radio units, such as Radio Dots with Indoor Radio Units (IRUs) in bi-directional communication over with the baseband unit via a CPRI data path as shown below.<br><br><br><br><br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5. |

| Claim 2 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1 wherein the baseband unit | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System baseband unit is configured to packetize each digital representation of a radio resource. |

| Claim 2 | Verizon / Ericsson's Infringement |
|---|---|
| is configured to packetize each digital representation of a radio resource. | For example, the baseband unit DU is configured to communicate via CPRI with remote radio units, including Radio Dots and IRUs.<br><br>As a further example and upon information and belief, the Digital Unit (DU) and/or Baseband unit and/or RF-Access Unit (RAU) and Indoor Radio Unit (IRU) and/or Radio Points (e.g., CBRS Micro Radio) can be connected via electrical or fiber and communicate via Digital CPRI and digital CPRI is a packetized communications standard.<br><br>Indoor Radio Unit<br><br>The Indoor Radio Unit (IRU) is a component in the Radio Dot System (RDS). The IRU must be used together with Dots to have full radio functionality.<br><br>The IRU has three purposes:<br>• Provides an interface to the Digital Unit (DU) or Baseband unit through a CPRI cable.<br>• Provides signaling and power interface to the Dot over the Radio Dot Interface (RDI).<br>• Collects external alarms and transmits them to the Digital Unit.<br>Depending on the type of IRU, up to 8 or 16 Dots can be connected to a single IRU.<br><br>*See* DALIVZW-000599-600.<br><br>❯❯ *Digital unit*<br>The DU provides pooled baseband processing for the system. To manage the connected radios, the DU uses the CPRI standard for the DU-IRU interface to transfer synchronization, radio signals and O&M signals. When collocated with the IRU, an electrical CPRI interface is used, and for remote connection with the IRU, a CPRI fiber interface is used. |

23

| Claim 2 | Verizon / Ericsson's Infringement |
|---|---|
| | DALIVZN-000001-10.<br><br>Specifically in the downlink, upon information and belief, the Digital Unit (DU) and/or Baseband unit and/or RF-Access Unit packetizes base band signals, and those packetized signals correspond to a plurality of carriers. For example, the radio resources correspond as part of a resource block mapping or as part of carrier aggregation.<br><br>Specifically in the uplink, upon information and belief, the Indoor Radio Unit (IRU) and/or Radio Dot (RD) packetizes base band signals, and those packetized signals correspond to a plurality of radio resources.  For example, the carriers correspond as part of a resource block mapping or as part of carrier aggregation.<br><br> |

| Claim 2 | Verizon / Ericsson's Infringement |
|---|---|
| |  |

DALIVZN-000609-632 at 10-11 (showing carriers / radio resources).

| Claim 3 - Element | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System meets the system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit.

Ericsson Radio Dot sends digital transmissions to the remote radio units via CPRI as illustrated below. CPRI involves the use of packetized data including Control & Management Channel maps and encodes ethernet packets for transmission with destination information identifying the remote units. Further, both ethernet and IP protocols have destination information. For example, ethernet has Destination Mac Address (*see e.g.,* Ethernet 802.3 frame protocol standard) while IPv4 and IPv6 have |

| Claim 3 - Element | Verizon / Corning's Infringement |
|---|---|
| identifying the first remote unit. | destination IP address (*see e.g.*, Internet Protocol version 4 and Internet Protocol version 6 protocol standards).<br><br><br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5. |

| Claim 4 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1 wherein the first set of | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System meets the system of claim 1 wherein the first set of radio resources is a subset of the plurality |

| Claim 4 | Verizon / Ericsson's Infringement |
|---|---|
| radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 8 - Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A baseband controller for use in the transport of wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 8 by providing a baseband controller for use in the transport of wireless communications.<br><br>*See* **Claim 1**. |
| **[ELEMENT 8-A]**<br>a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>*See* **Claim Element 1-D**. |
| **[ELEMENT 8-B]**<br>at least one interface to communicatively couple | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes at least one interface to communicatively couple the baseband unit to a plurality of remote units, including at least a first remote unit. |

| Claim 8 - Element | Verizon / Ericsson's Infringement |
|---|---|
| the baseband unit to a plurality of remote units, including at least a first remote unit; | *See* Claim Elements **1-C**, **1-F**, **1-G**, and **1-I**. |
| **[ELEMENT 8-C]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>*See* **Claim Element 1-E**. |
| **[ELEMENT 8-D]** wherein the baseband unit is configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |
| **[ELEMENT 8-E]** wherein the baseband unit is configured to send digital representations of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit configured to send digital representations of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |

| Claim 8 - Element | Verizon / Ericsson's Infringement |
|---|---|
| antenna of the first remote unit; and | |
| **[ELEMENT 8-F]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System includes a baseband unit that is configured to send digital representations of a first and second set of radio resources, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. <br><br> *See* **Claim Element 1-H**. |

| Claim 9 | Verizon / Ericsson's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System meets the baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource. <br><br> *See* **Claim 2**. |

| Claim 10 - Element | Verizon / Corning's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the digital representation of the first set of radio | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the baseband controller of claim 8 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital |

| Claim 10 - Element | Verizon / Corning's Infringement |
|---|---|
| resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. | representation of the second set of radio resources includes destination information identifying the first remote unit.<br><br>*See* **Claim 3**. |

| Claim 11 | Verizon / Ericsson's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System meets the baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E, 1-F**, and **1-G**. |

| Claim 13 | Verizon / Ericsson's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the plurality of radio resources include a first | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System meets the baseband controller of claim 8 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of |

| Claim 13 | Verizon / Ericsson's Infringement |
|---|---|
| composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 14 - Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for providing digital signals in a Distributed Antenna System (DAS), comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 14 by performing a method for providing digital signals in a Distributed Antenna System (DAS).<br><br>*See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Radio Dot systems are tested and/or used by Verizon / Ericsson. |
| **[ELEMENT 14-A]**<br>receiving at a baseband unit, from a plurality of signal sources including at least a first signal source | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System receives at a baseband unit, from a plurality of signal sources including at least a first signal source and a second signal source, a plurality of radio resources.<br><br>*See* **Claim Element 1-E**. |

| Claim 14 - Element | Verizon / Ericsson's Infringement |
|---|---|
| and a second signal source, a plurality of radio resources; | |
| **[ELEMENT 14-B]** transmitting from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System transmits from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |
| **[ELEMENT 14-C]** transmitting from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System transmits from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |
| **[ELEMENT 14-D]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System performs the method of claim 14, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>*See* **Claim Element 1-H**. |

| Claim 15 - Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the second remote unit. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System performs the method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the second remote unit.<br><br>*See* **Claim 3**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 16 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System performs the method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 18 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System performs the method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 19 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 14 further comprising packetizing, at the baseband unit, at least a subset of the plurality of radio resources. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot System performs the method of claim 14 further comprising packetizing, at the baseband unit, at least a subset of the plurality of radio resources.<br><br>*See* **Claim 2**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Radio Dot systems are tested and/or used by Verizon / Ericsson. |

**Exhibit E**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Ericsson Inc, and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") (altogether, "Verizon / Ericsson") infringe the below-identified claims of Dali's U.S. Patent No. 11,026,232 (the '232 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Ericsson's Radio Dot System (including, but not limited to, the Digital Unit (DU), Indoor Radio Units (IRU) and Radio Dots (RD), CBRS Micro Radios, and mRRUs), cabling and switches, and any software running thereon) (collectively, the "Verizon / Ericsson Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Ericsson produces documents and source code and/or the Court construes any terms from the claims of the '232 Patent. Claims 1-3, 6-8, 12-14, 16-18, and 20 are infringed under 35 U.S.C. § 271(a) when Verizon / Ericsson uses the Verizon / Ericsson Accused Instrumentalities.

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A wireless system comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 1 by providing a wireless system.<br><br>For example, Ericsson's Radio Dot System "combines centralized baseband and radio units with visually low-impact antennas.  Ericsson innovations enable RF signal, power and control over standard shielded LAN cables for cost-effective deployment with minimal business disruption. *See, e.g.*, DALIVZN-0002085-292. Moreover, Ericsson's Radio Dot System includes "centralized radios [which] provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." *Id.*<br><br>Ericsson's multiband Radio Dot System for CBRS "combine carriers to over improved network speeds, including support for 4G and 5G on a single cable. Service providers can leverage pre-existing fiber to make stable networks." DALIVZN-000295. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-A]**<br>one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that provides the plurality of radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol; and | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. The Ericsson Radio Dot System includes one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that provides the plurality of radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol.<br><br>For example, in the Verizon / Ericsson Radio Dot System, the system includes one or more central nodes, such as Digital Units (DUs) as shown below. Ericsson describes its Radio Dot System as a "complete end-to-end solution including the RF signal source. RDS consists of the Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU). The DU and IRU can be connected by fiber or co-located and connected through Digital CPRI cable" and that "[t]he Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area."<br><br><br>*See, e.g.*, DALIVZN-000288. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>*See, e.g.*, DALIVZN-000290. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a central node configured to communicate with the IRU and Radio Dots.<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000609-632.<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a central node configured to communicates with the IRU, Radio Dots, or CBRS Micro Radios: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000295. |
| **[ELEMENT 1-B]** a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. The Ericsson Radio Dot System includes a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at least a first access point and a second access point.<br><br>For example, in the Verizon / Ericsson's Radio Dot System, the system includes one or more wireless access points, such as Radio Dots with Indoor Radio Units (IRUs) as shown below: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| least a first access point and a second access point, | <br><br>*See* DALIVZN-000001-10 at Fig. 4 and Fig. 5.<br><br>Wireless access points also include Radio Dots that do not require an IRU, such as the CBRS Micro Radio as shown below or the Micro Radio (mRRU).<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a baseband unit configured to communicates with the IRU, Radio Dots, or CBRS Micro Radios: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000295. |
| **[ELEMENT 1-C]** wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the second access point, the | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. The Ericsson Radio Dot System includes the one or more central nodes recited in claim element 1-A, wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the second access point, the first subset including more radio resources than the second subset.<br><br>Ericsson's central node (DU, RF Access Unit, etc.) assigns a first subset of radio resources to a first access points and a second subset to a second access point. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| first subset including more radio resources than the second subset, and | For example, in the Verizon / Ericsson's Radio Dot System, the DU is the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-0002085-292.<br><br>As another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a baseband unit configured to communicate with the IRU and Radio Dots.<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  |

DALIVZN-000609-632.

As a further example, Verizon / Ericsson's wireless solution "has addressed the 5G mid-band and high-band coverage limitations by developing a flexible 5G Carrier Aggregation solution which supports control and data traffic on the uplink using lower frequency band which increases coverage, and on the downlink with a mid or high-frequency band which increases capacity and data throughput." *See* DALIVZW-000472-488. As a result, the Verizon / Ericsson Radio Dot System can be configured to send or receive a plurality of radio resources.

As shown below, the Verizon / Ericsson system is designed and used for "flexible capacity" which enables configuring and reconfiguring remote radio units to "provide capacity in a more flexible way – by shifting available capacity from one place to another on demand."

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  |



*See* DALIVZN-000001-10 at Fig. 7.

As explained in the Ericsson Review, the baseband unit "provides pooled baseband processing for the system. To *manage* the connected radios, the DU uses the CPRI standard for the DU-IRU interface to transfer synchronization, radio signals, and O&M signals." *See* DALIVZN-000001-10.

As another example, as shown below, the Ericsson Radio Dot System includes a "Baseband" which is a central node that assigns radio resources to the IRU, Radio Dots, or CBRS Micro Radios:

11

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | DALIVZN-000295. |
| **ELEMENT 1-D]** wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, the one or more central nodes assign additional radio | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. The Ericsson Radio Dot System includes the one or more central nodes recited in claim element 1-A, wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, the one or more central nodes assign additional radio resources of the plurality of radio resources to the second access point.<br><br>Ericsson's central node (DU, RF Access Unit, etc.) assigns additional radio resources to a second wireless access point depending on a change in need of users connected to the second access point. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| resources of the plurality of radio resources to the second access point. | For example, Verizon / Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-0002085-292.<br><br>Moreover, Verizon / Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293-DALIVZN-000294.<br><br>Verizon / Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells.  Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-0002085-292.<br><br>As another example, Ericsson's US959150 describing the Accused Radio Dot System describes load balancing between cells.  US 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | *Evolution to flexible capacity* <br><br> Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity. <br><br> As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy.<br><br><br><br>FIGURE 7 Illustration of flexible capacity<br><br>*See* DALIVZN-000001-10. |

| Claim 2 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point.<br><br>*See* **Claim Element 1-C** and **1-D**. |

| Claim 3 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The wireless system of claim 1, wherein the additional resources are included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes assign the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the wireless system of claim 1, wherein the additional resources are included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes assign the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point.<br><br>*See* **Claim Element 1-C** and **1-D**. |

| Claim 6 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector. <br><br> For example, one Ericsson Radio Dot access point can belong to one sector, and another access point can belong to another sector. <br><br>  <br><br> Figure 7-22: Radio dot system <br><br> The IRU shall be based on an mRRU and initially support WCDMA and LTE FDD. The carriers generated by the DU are converted to an I/F-modulated frequency by the IRU and distributed to the Radio Dots (Radio Dot) on CAT cables. One IRU supports one sector which carriers are broadcast to all its connected Dots. <br><br> DALIVZN-000235. |

| Claim 6 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000229. |

| Claim 7 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building.<br><br>For example, the Ericsson Radio Dot system can include one access point situated in one building and another access point situated in another building. |

| Claim 7 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000241. |

| Claim 8 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system meets the wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes.<br><br>*See* **Claim Element 1-B**. |

| Claim 12 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 12 by performing the method of claim 12 as detailed here.<br><br>*See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |
| **[ELEMENT 12-A]**<br>receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A**. |
| **[ELEMENT 12-B]**<br>assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

| Claim 12 – Element | Verizon / Ericsson's Infringement |
|---|---|
| resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset; and | |
| **[ELEMENT 12-C]** in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot systemin response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point. *See* **Claim Element 1-D**. |

| Claim 13 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system performs the method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. *See* **Claim Element 1-D**. |

| Claim 13 – Element | Verizon / Ericsson's Infringement |
|---|---|
| number of wireless subscribers coupled to the second access point. | Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |

| Claim 14 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system performs the method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point. *See* **Claim Element 1-C**. Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |

| Claim 16 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector. *See* **Claim 6**. Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |

| Claim 17 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim 7**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |

| Claim 18 – Element | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system performs the method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes.<br><br>*See* **Claim Element 1-B**.<br><br>Further, this method is infringed by Verizon / Ericsson when the Verizon / Ericsson Accused Instrumentalities are tested and/or used by Verizon / Ericsson. |

| Claim 20 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>One or more non-transitory computer readable storage media storing instructions that, when executed by one | To the extent the preamble is interpreted to be limiting, the Verizon / Ericsson Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Ericsson Accused Instrumentalities satisfy each and every limitation of claim 20 by including one or more non- |

| Claim 20 – Element | Verizon / Ericsson's Infringement |
|---|---|
| or more processors, cause the one or more processors to perform the steps of: | transitory computer readable storage media storing instructions that, when executed by one or more processors, cause the one or more processors to perform the steps of claim 20.<br><br>*See* **Claim 1**. |
| **[ELEMENT 20-A]** receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A**. |
| **[ELEMENT 20-B]** assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset; and | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

| Claim 20 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 20-C]** in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / Ericsson Accused Instrumentalities satisfy this claim element. Ericsson's Radio Dot system in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point.<br><br>*See* **Claim Element 1-D**. |

**Exhibit F**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Ericsson Inc, and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") (altogether, "Verizon / Ericsson") infringe the below-identified claims of Dali's U.S. Patent No. 11,006,343 (the '343 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Ericsson's Radio Dot System (including, but not limited to, the Digital Unit (DU), Indoor Radio Units (IRU) and Radio Dots (RD)), cabling and switches, and any software running thereon) (collectively, "Verizon / Ericsson Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Ericsson produces documents and source code and/or the Court construes any terms from the claims of the '343 Patent. Claims 1, 4, 8-10, 12, 15, and 19-21 are infringed under 35 U.S.C. § 271(a) when Verizon / Ericsson uses the Verizon / Ericsson wireless solutions.

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]** <br> A system to transport wireless communications, comprising | To the extent that the Court deems the preamble of Claim 1 to be limiting, the Verizon / Ericsson wireless solutions meets this claim element. Ericsson's Radio Dot System provides a system to transport wireless communications. <br><br> For example, Ericsson's Radio Dot System "combines centralized baseband and radio units with visually low-impact antennas. Ericsson innovations enable RF signal, power and control over standard shielded LAN cables for cost-effective deployment with minimal business disruption." DALIVZN-000286. Moreover, Ericsson's Radio Dot System includes "centralized radios [which] provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." *Id.* |
| **[ELEMENT 1-A]** <br> a digital access unit; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System comprises a digital access unit. <br><br> For example, in Ericsson's Radio Dot System, the DU is the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-000290. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | Further, the DU is configured to communicate via CPRI with remote radio units, including Radio Dots and IRUs as shown below:<br><br><br><br>**FIGURE 4** Main-remote RBS block diagram<br><br><br><br>**FIGURE 5** Radio Dot System block diagram<br><br>DALIVZN-000006 – 000007.<br><br>As another example, as shown below, Ericsson's Radio Dot System includes a "Baseband" which is a digital access unit configured to communicate with the IRU, Radio Dots, and/or CBRS Micro Radios: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000295.<br><br>As yet another example, as shown below, the Ericsson Radio Dot System includes a "RF Access Unit" which is a digital access unit configured to communicate with the IRU and Radio Dots. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000621. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-B]**<br>a plurality of signal sources, including at least a first signal source and a second signal source; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System comprises a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>For example, Ericsson's Radio Dot System "consists of the Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Ericsson describes the DU as the "signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-000290. The "DU and IRU can be connected by fiber or co-located and connected through Digital CPRI cable." DALIVZN-000288. In certain circumstances, the "the digital unit is centrally located and the IRUs are distributed." DALIVZN-000291. |
| **[ELEMENT 1-C]**<br>a plurality of remote units, including at least a first remote unit and a second remote unit; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System comprises a plurality of remote units, including at least a first remote unit and a second remote unit.<br><br>For example, Ericsson's Radio Dot System includes "Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Further, the IRU "is frequency independent and supports remote software upgrades. It supports and provides power for up to eight Radio Dots, corresponding to an equivalent of 70,000 square feet of floor space coverage in a typical office building. Individual Dots can be connected with up to 650 feet of LAN cable." DALIVZN-000289.<br><br>As another example, Ericsson's Radio Dot System includes one or more remote radio units, such as Radio Dots with Indoor Radio Units (IRUs) as shown below: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>DALIVZN-000006 – 000007.<br><br>Remote radio units also include Radio Dots that do not require an IRU, such as the CBRS Micro Radio as shown below or the Micro Radio (mRRU): |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000295. |
| **[ELEMENT 1-D]** wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources; | Verizon / Ericsson's wireless solutions meet this claim element. The digital access unit in Ericsson's Radio Doty System comprises a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources. For example, Ericsson's Radio Dot System includes "Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Further, Ericsson's literature explains that the DU includes a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | **Digital Unit (DU):** The Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area. The DU delivers feature parity and roadmap evolution with the macro network and supports key coordination features such as Carrier Aggregation and Combined Cell, vital for multi-antenna indoor deployments. As new features are added to the Ericsson RAN software, they are automatically available in every radio dot system deployment. The Baseband also provides synchronization and transport security functionality, and aggregates the RDS traffic onto a common backhaul connection.<br><br>DALIVZN-000290.<br><br>As another example, Ericsson has announced that the Radio Dot System supports multi-operator service in three ways: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | First – parallel deployments with **each operator using its own dedicated baseband, IRU and Dots.** These Dots can be housed in the same enclosures (the new enclosures known as the multi-dot bracket) to tidy things up a bit.  Secondly – a multi-operator deployment using a **shared baseband and IRU**, over the same network of distributed radio heads, using MORAN (Multi Operator Radio Access Network) or MOCN (Multi Operator Core Network) network sharing capabilities. Thirdly, a multi-operator Dot solution where **operators provide multiple RF sources to the same Dot system.** They do this by feeding baseband capacity to **a new access unit from Ericsson, the RF Access Unit (RAU).** This new RAU can support three 2×2 MIMO RF inputs, and can be connected on the other side to four IRUs, which then feed the shared Dot remote radioheads. <br><br>DALIVZN-000560; *see also* DALIVZN-000617. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 1-E]**<br>wherein the digital access unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | Verizon / Ericsson's wireless solutions meet this claim element. The digital access unit in Ericsson's Radio Dot System is configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>For example, Ericsson's Radio Dot System includes "Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Further, Ericsson's literature explains that the DU includes a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources:<br><br>**Digital Unit (DU):** The Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area. The DU delivers feature parity and roadmap evolution with the macro network and supports key coordination features such as Carrier Aggregation and Combined Cell, vital for multi-antenna indoor deployments. As new features are added to the Ericsson RAN software, they are automatically available in every radio dot system deployment. The Baseband also provides synchronization and transport security functionality, and aggregates the RDS traffic onto a common backhaul connection.<br><br>DALIVZN-000290.<br><br>As another example, Ericsson has announced that the Radio Dot System supports multi-operator service in three ways: |

First – parallel deployments with each operator using its own dedicated baseband, IRU and Dots. These Dots can be housed in the same enclosures (the new enclosures known as the multi-dot bracket) to tidy things up a bit.



Parallel or shared RAN options

Secondly – a multi-operator deployment using a shared baseband and IRU, over the same network of distributed radio heads, using MORAN (Multi Operator Radio Access Network) or MOCN (Multi Operator Core Network) network sharing capabilities.

Thirdly, a multi-operator Dot solution where operators provide multiple RF sources to the same Dot system. They do this by feeding baseband capacity to a new access unit from Ericsson, the RF Access Unit (RAU). This new RAU can support three 2×2 MIMO RF inputs, and can be connected on the other side to four IRUs, which then feed the shared Dot remote radioheads.

DALIVZN-000560; *see also* DALIVZN-000617.

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | Further, Ericsson's marketing materials explain that the DU of the Ericsson Radio Dot system "is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-000290. These materials further explain that "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-000286. |
| **[ELEMENT 1-F]** wherein the digital access unit is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | Verizon / Ericsson's wireless solutions meet this claim element. On information and belief, the digital access unit in Ericsson's Radio Dot System is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>For example, Ericsson's Radio Dot System includes "Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Ericsson's literature explains that the DU includes a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources:<br><br>**Digital Unit (DU):** The Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area. The DU delivers feature parity and roadmap evolution with the macro network and supports key coordination features such as Carrier Aggregation and Combined Cell, vital for multi-antenna indoor deployments. As new features are added to the Ericsson RAN software, they are automatically available in every radio dot system deployment. The Baseband also provides synchronization and transport security functionality, and aggregates the RDS traffic onto a common backhaul connection.<br><br>DALIVZN-000290. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | As another example, Ericsson has announced that the Radio Dot System supports multi-operator service in three ways: First – parallel deployments with each operator using its own dedicated baseband, IRU and Dots. These Dots can be housed in the same enclosures (the new enclosures known as the multi-dot bracket) to tidy things up a bit.  Secondly – a multi-operator deployment using a shared baseband and IRU, over the same network of distributed radio heads, using MORAN (Multi Operator Radio Access Network) or MOCN (Multi Operator Core Network) network sharing capabilities. Thirdly, a multi-operator Dot solution where operators provide multiple RF sources to the same Dot system. They do this by feeding baseband capacity to a new access unit from Ericsson, the RF Access Unit (RAU). This new RAU can support three 2×2 MIMO RF inputs, and can be connected on the other side to four IRUs, which then feed the shared Dot remote radioheads. DALIVZN-000560; *see also* DALIVZN-000617. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | Further, Ericsson's marketing materials explain that the DU of the Ericsson Radio Dot system "is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-290. These materials further explain that "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-000288.<br><br>On information and belief, the DU is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit. For example, the DU is configured to communicate via CPRI with remote radio units, including Radio Dots and IRUs as shown below:<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br>DALIVZN-000006 – 000007.<br><br>DALIVZN-000287. |
| **[ELEMENT 1-G]**<br>wherein the digital access unit is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit; | Verizon / Ericsson's wireless solutions meet this claim element. On information and belief, the digital access unit in Ericsson's Radio Dot System is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>For example, Ericsson's Radio Dot System includes a DU which is Ericsson's Radio Dot System includes "Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU)." DALIVZN-000288. Ericsson's literature explains that the DU includes a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | **Digital Unit (DU):** The Baseband is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area. The DU delivers feature parity and roadmap evolution with the macro network and supports key coordination features such as Carrier Aggregation and Combined Cell, vital for multi-antenna indoor deployments. As new features are added to the Ericsson RAN software, they are automatically available in every radio dot system deployment. The Baseband also provides synchronization and transport security functionality, and aggregates the RDS traffic onto a common backhaul connection.<br><br>DALIVZN-000290.<br><br>As another example, Ericsson has announced that the Radio Dot System supports multi-operator service in three ways: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
|  | First – parallel deployments with each operator using its own dedicated baseband, IRU and Dots. These Dots can be housed in the same enclosures (the new enclosures known as the multi-dot bracket) to tidy things up a bit.  Secondly – a multi-operator deployment using a shared baseband and IRU, over the same network of distributed radio heads, using MORAN (Multi Operator Radio Access Network) or MOCN (Multi Operator Core Network) network sharing capabilities. Thirdly, a multi-operator Dot solution where operators provide multiple RF sources to the same Dot system. They do this by feeding baseband capacity to a new access unit from Ericsson, the RF Access Unit (RAU). This new RAU can support three 2×2 MIMO RF inputs, and can be connected on the other side to four IRUs, which then feed the shared Dot remote radioheads. |
|  | DALIVZN-000560; *see also* DALIVZN-000617. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | Further, Ericsson's marketing materials explain that the DU of the Ericsson Radio Dot system "is the signal source of the Radio Dot System and provides the pooled baseband resources for the building(s) or area." DALIVZN-000290. These materials further explain that "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-000288.<br><br>On information and belief, the DU is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at an antenna of the first remote unit. For example, the DU is configured to communicate via CPRI with remote radio units, including Radio Dots and IRUs as shown below:<br><br> |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | 

DALIVZN-000006 – 000007.

DALIVZN-000287. |
| **[ELEMENT 1-H]**<br>wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management; and | Verizon / Ericsson's wireless solutions meet this claim element. For example, as explained above in **ELEMENTS [1-F] and [1G]**, Ericsson's Radio Dot system is configured to a first a first set of radio resources and a second set of radio resources to a first remote unit. On information and belief, Ericsson's Radio Dot System is further configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management.<br><br>For example, Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-000287. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | Moreover, Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293.<br><br>Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells. Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-000291.<br><br>As another example, Ericsson's U.S. Pat. No. 9,591,590, which describes the Accused Radio Dot System, describes load balancing between cells.  *See* U.S. Pat. No. 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson's publicly available materials describe "flexible capacity" of "dynamically cell reconfiguration" based on load on the system and, upon information and belief, this is done based on load: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | *Evolution to flexible capacity*<br><br>Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy. |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000008. |
| **[ELEMENT 1-I]** wherein the digital access unit is configured to receive digital signals from each of the plurality of remote units. | Verizon / Ericsson's wireless solutions meet this claim element. For example, as explained above in **ELEMENTS [1-F] and [1G]**, the digital access unit in Ericsson's Radio Dot system is configured to send digital representations of radio resources to a remote unit. The digital access unit in Ericsson's Radio Dot System is also configured to receive digital signals from each of the plurality of remote units. For example, the DU is configured to communicate by sending and receiving signals via CPRI with remote radio units, including Radio Dots and IRUs as shown below: |

| Claim 1 – Element | Verizon / Ericsson's Infringement |
|---|---|
| | <br><br>DALIVZN-000006 – 000007.<br><br>DALIVZN-000287. |

| Claim 4 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1, wherein the dynamic load balancing and resource management dynamically adjusts a capacity of at least the first remote unit. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. On information and belief, the digital access unit in Ericsson's Radio Dot System is configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, wherein the dynamic load balancing and resource management dynamically adjusts the capacity of at least the first remote unit. |
| | For example, Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system." DALIVZN-000286. |
| | Moreover, Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293. |
| | Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells. Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-000291. |
| | As another example, Ericsson's U.S. Pat .No. 9,591,590, which describes the Accused Radio Dot System, describes load balancing between cells.  U.S. Pat. No. 9,591,590 at 7:1-3, 16:58-63. |
| | As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system, and upon information and belief, this is done based on load: |

| Claim 4 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|  | *Evolution to flexible capacity*<br>Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity. |

| Claim 4 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|  | As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 4 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|         | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy. |

| Claim 4 | Verizon / Ericsson's Infringement |
|---|---|
| |   Illustration of flexible capacity<br><br>DALIVZN-000008. |

| Claim 8 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic in the system. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. On information and belief, the digital access unit in Ericsson's Radio Dot System is configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic in the system.<br><br>For example, Ericsson's Radio Dot System can dynamically adjust to maintain efficiency: "centralized radios provide pooled capacity and design flexibility, dynamically meeting demand wherever it occurs in real time while increasing spectral and hardware efficiency of the system."  DALIVZN-000286. |

| Claim 8 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|         | Moreover, Ericsson explains that "[t]he capability to configure, scale, and reconfigure logical nodes through software commands enables the RAN to dynamically adjust to changing traffic conditions, hardware faults, as well as new service requirements." DALIVZN-000293.<br><br>Ericsson also states that "[w]ithout RDS, high traffic demand generated indoors consumes a substantial amount of the radio resources of the surrounding outdoor macro cells. Deploying RDS in large high-traffic enterprises offloads the macro layer and serves the indoors more efficiently." DALIVZN-000291.<br><br>As another example, Ericsson's U.S. Pat. No. 9,591,590, which describes the Accused Radio Dot System, describes load balancing between cells.  U.S. Pat. No. 9,591,590 at 7:1-3, 16:58-63.<br><br>As another example, Ericsson Review describes "flexible capacity" of "dynamically cell reconfiguration" based on load on the system, and upon information and belief, this is done based on load: |

| Claim 8 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|         | *Evolution to flexible capacity* <br> Indoor traffic demand tends to vary over time and space, particularly in enterprise and public environments. For example, traffic demand regularly increases over the course of a day in areas where many people gather, such as in conference rooms, cafeterias, and lobbies. This high traffic demand disappears once people leave. Evenly distributing high capacity in a building for its peak use is not the best approach, as this tends to result in overprovisioning capacity. |

| Claim 8 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|  | As the RDS uses centralized baseband architecture, it can provide capacity in a more flexible way – by shifting available capacity from one place to another on demand. This can be implemented through dynamic cell reconfiguration (such as, traditional cell splitting and combining) or by using combined cell SDMA technology. For LTE Rel-10/11 UEs, combined cell SDMA is the desired approach for dynamic SDMA operations in one cell involving all the radios. This approach enables efficient use of the available baseband capacity, optimizing both network capacity and mobility, resulting in an improved user experience. Overlapping radios can be turned off (dynamically) to save energy. **Figure 7** shows three typical scenarios assuming three-cell baseband capability. Here, for illustration purposes only, a dynamic cell reconfiguration approach is used. |

| Claim 8 | Verizon / Ericsson's Infringement |
|---|---|
| | In the first scenario, three cells are distributed evenly to cover the indoor area, and each cell contains five radios. The second scenario covers the same space but includes two traffic hotspots. Here, the top cell is split into two smaller cells to provide higher capacity to the hotspots, while the rest of the area is covered by a single larger cell using the remaining baseband resources. In the third scenario, traffic demand is very low – a common situation late at night and early in the morning. To provide capacity for this low traffic scenario, the orignal three cells are combined into one large cell with only the selected radios active. All other radios (including the baseband resources involved) are inactive to save energy. |

| Claim 8 | Verizon / Ericsson's Infringement |
|---|---|
| |  DALIVZN-000008. |

| Claim 9 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1, wherein the first remote unit is a low power radio capable of using multiple frequency bands. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. Ericsson's Radio Dot System comprises remote units, wherein the first remote unit is a low power radio capable of using multiple frequency bands.<br><br>For example, Ericsson's Radio Dot System includes at least Dual Band Dots, which are low power and capable of using multiple frequency bands: |

| Claim 9 | Verizon / Ericsson's Infringement |
|---------|-----------------------------------|
|  | <table><tr><td>**Radio Dot System (RDS)**</td><td>**Single Band Dot**</td><td>**Dual Band Dot**</td></tr><tr><td>Size and weight</td><td>3.9" diameter, 10 ounces</td><td>5.5" diameter, 16.8 ounces</td></tr><tr><td>RF power</td><td>17 + 17 dBm<br>2x2 MIMO, Tx/Rx diversity<br>2x1 MISO, WCDMA common precoding</td><td>2 x 17 dBm (per band)<br>2x2 MIMO, Tx/Rx diversity (per band)<br>2x1 MISO (per band)</td></tr><tr><td>Instantaneous Bandwidth (IBW)</td><td>40 MHz</td><td>80 MHz (40 MHz per band)</td></tr><tr><td>Omni-directional antenna</td><td colspan="2" align="center">Built-in</td></tr><tr><td>Technology</td><td colspan="2" align="center">WCDMA, LTE FDD, LTE TDD, LTE on CBRS</td></tr><tr><td>Bands supported</td><td colspan="2">Full range of North American WCDMA and LTE bands including CBRS band 48. For additional details contact your Ericsson representative</td></tr><tr><td>Data speeds</td><td>LTE: 400/100 Mbps with 2x20 MHz<br>WCDMA: 42/11 Mbps with 4x5 MHz</td><td>LTE: 400/100 Mbps per band with 2x20 MHz, 256QAM<br>WCDMA: 42/11 Mbps with 4x5 MHz WCDMA carrier</td></tr><tr><td>Radio Dot Interface</td><td colspan="2">Connection between IRU and RD over standard shielded LAN cables for radio signals, control channel and power</td></tr><tr><td>Cable length to IRU</td><td colspan="2">Up to 650 feet</td></tr></table><br>DALIVZN-000287.<br><br>.<br><br>— Equipment — small footprint and low power consumption in equipment room with less stringent HVAC requirements. Low visual impact for Radio Dots<br><br>DALIVZN-000286. |

| Claim 9 | Verizon / Ericsson's Infringement |
|---|---|
| | **Radio DOT**<br>— Indoor optimized ultra compact radio<br>— Discreet and easy to install<br>— Single and dual band versions<br>— Radio and power over LAN cable<br><br>DALIVZN-000287. |

| Claim 10 | Verizon / Ericsson's Infringement |
|---|---|
| The system of claim 1, wherein the digital signals communicated between the digital access unit and the remote units are sent via optical cables. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. On information and belief, Ericsson's Radio Dot System includes a digital access unit, wherein the digital signals communicated between the digital access unit and the remote units are sent via optical cables.<br><br>For example, Ericsson's Radio Dot System can use optical cables to communicate digital signals between the digital access unit and the remote units:<br><br>**RDS Solution Components**<br>RDS is a complete end-to-end solution including the RF signal source. RDS consists of the Radio Dots, Baseband Units (DU) and Indoor Radio Unit(s) (IRU). The DU and IRU can be connected by fiber or co-located and connected through Digital CPRI cable. The Dot requires a standard CAT6/CAT6A shielded LAN cable for both connectivity and power. This design yields up to 60% reduced cabling cost and up to 70% faster install time compared to DAS, making it more cost-effective for the operator and less disruptive to end customers.<br><br>DALIVZN-000288. |

| Claim 10 | Verizon / Ericsson's Infringement |
|---|---|
| | **Distributed architecture**<br><br>For extremely large buildings, multi building campuses and large arenas, a more distributed solution is recommended. In these cases the digital unit is centrally located and the IRUs are distributed. Fiber is used to connect the DU to the IRUs. Buildings can be segmented, with IRU hubs located to serve large sections while minimizing the amount of fiber required.<br><br>DALIVZN-000291. |

| Claim 12 - Element | Verizon / Ericsson's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for wireless communications comprising: | To the extent that the Court deems the preamble of Claim 12 to be limiting, Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System provides a method for wireless communications. *See* **Claim 1 – [PREAMBLE]**, *supra*.<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |
| **[ELEMENT 12-A]**<br>receiving, at a digital access unit, a plurality of radio resources from a first signal source and a second signal source, wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to a plurality of signal sources; | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System includes a digital access unit that receives a plurality of radio resources from a first signal source and a second signal source, wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to a plurality of signal sources. *See* **Claim 1 – [ELEMENT 1-A]** through **[ELEMENT 1-E]**, *supra*.<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 12 - Element | Verizon / Ericsson's Infringement |
|---|---|
| **[ELEMENT 12-B]** sending, by the digital access unit, a digital representation of a first set of radio resources to a first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; and | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System includes a digital access unit which sends a digital representation of a first set of radio resources to a first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit. *See* **Claim 1 – [ELEMENT 1-F]**, *supra*.<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |
| **[ELEMENT 12-C]** sending, by the digital access unit, a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit, | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System includes a digital access unit which sends a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit. *See* **Claim 1 – [ELEMENT 1-G]**, *supra*.<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |
| **[ELEMENT 12-D]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management. | Verizon / Ericsson's wireless solutions meet this claim element. Ericsson's Radio Dot System includes a digital access unit which sends a digital representations of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management. *See* **Claim 1 – [ELEMENT 1-H]**, *supra*.<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 15 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the dynamic load balancing and resource | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 12**, *supra*. Ericsson's Radio Dot System includes a digital access unit which sends a digital |

| Claim 15 | Verizon / Ericsson's Infringement |
|---|---|
| management dynamically adjusts a capacity of at least the first remote unit. | representations of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, and wherein the dynamic load balancing and resource management dynamically adjusts a capacity of at least the first remote unit. *See* **Claim 4**, *supra.* <br><br> Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 19 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* Ericsson's Radio Dot System includes a digital access unit which sends a digital representations of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, and wherein the dynamic load balancing and resource management uses network capacity to route signal traffic. *See* **Claim 8**, *supra.* <br><br> Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 20 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the first remote unit is a low power radio capable of using multiple frequency bands. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* Ericsson's Radio Dot System includes a first remote unit which is a low power radio capable of using multiple frequency bands. *See* **Claim 9**, *supra.* <br><br> Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

| Claim 21 | Verizon / Ericsson's Infringement |
|---|---|
| The method of claim 12, wherein the signals communicated between the digital access unit and remote units are sent via optical cables. | Verizon / Ericsson's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* Ericsson's Radio Dot System can use optical cables to communicate digital signals between the digital access unit and the remote units. *See* **Claim 10**, *supra.*<br><br>Further, this method is infringed by Verizon / Ericsson when Ericsson Radio Dot systems are tested and/or used by Verizon / Ericsson. |

**Exhibit G**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership D/B/A Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Corning Inc., and Corning Optical Communications LLC (collectively, "Corning") (altogether, "Verizon / Corning") infringe the below-identified claims of Dali's U.S. Patent No. 11,026,232 (the '232 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Corning's Everon 6000 DAS Solutions (including, but not limited to, the Head End Unit (HEU), Integrated Head End Unit (IHU), Digital Routing Units (DRU) Low Power Remote Units (LRU), Medium Power Remote Units (MRU), and High Power Remote Units (HRU)), cabling and switches, and any software running thereon) (collectively, "Verizon / Corning Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Corning produces documents and source code and/or the Court construes any terms from the claims of the '232 Patent. Claims 1-3, 6, 8, 12-14, 16, 18, and 20 are infringed under 35 U.S.C. § 271(a) when Verizon / Corning uses the Verizon / Corning Accused Instrumentalities.

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A wireless system comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 1 by providing a wireless system.<br><br>For example, Corning describes the Everon 6000 as "an advanced inbuilding cellular service solution for small, medium and large size venues, supporting a broad range of cellular generations: 3G, 4G and 5G." *See, e.g.*, DALIVZN-00364. |
| **[ELEMENT 1-A]**<br>one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes one or more central nodes that receive a number of a plurality of radio resources from an operator hub that enables wireless communications and that provides the plurality of radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol.<br><br>For example, the Everon 6000 DAS Solutions include "Radio Interface frames" that "are modular chassis used for interface between the base stations and the Everon 6000." *See, e.g.*, DALIVZN-00365. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| provides the plurality of radio resources to a radio access network using the Common Public Radio Interface (CPRI) protocol; and | **System architecture -Everon 6000 \|**<br><br><br><br>**Radio Interface Frames (Point of Interface)**<br><br>Radio Interface frames are modular chassis used for interface between the base stations and the Everon 6000. A system may be comprised of two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports). The following modules are used with the radio interface frames:<br><br>DALIVZN-00365.<br><br>Corning's Everon 6000's central nodes receive radio resources.<br><br>For example, Corning's Everon 6000 DAS Solution provide "[a]dvanced network configuration and management capabilities [that] enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance and support operators NOC connectivity" *See, e.g.*, DALIVZN-00364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | "Corning Everon 6000 high bandwidth distribution architecture provides preparedness for future radio technologies, broader spectrum, and new frequency bands." *Id.*<br><br>**RF Parameters**<br><br>|

<table>
<tr><th>Frequency Range Name</th><th>Uplink</th><th>Downlink</th></tr>
<tr><td>600-band 71</td><td>663-698 MHz</td><td>617-652 MHz</td></tr>
<tr><td>700L (Lower Band)- band 12</td><td>698-716 MHz</td><td>728-746 MHz</td></tr>
<tr><td>700U (Upper Band)-band 13</td><td>776-787 MHz</td><td>746-757 MHz</td></tr>
<tr><td>FirstNet (700)-band 14</td><td>788-798 MHz</td><td>758-768 MHz</td></tr>
<tr><td>800/850 -band 26</td><td>817-849 MHz</td><td>862-894 MHz</td></tr>
<tr><td>1900 (PCS)-band 25</td><td>1850-1915 MHz</td><td>1930-1995 MHz</td></tr>
<tr><td>EAWS-band 66</td><td>1710-1780 MHz</td><td>2110-2200 MHz</td></tr>
<tr><td>WCS -band 30</td><td>2305-2315 MHz</td><td>2350-2360 MHz</td></tr>
<tr><td>2500 -band 41</td><td colspan="2">2496-2690 MHz (TDD)</td></tr>
</table>

DALIVZN-00367.

Corning's Everon 6000's central nodes send radio resources.

For example, Corning's Everon 6000 DAS Solution includes "Radio Interface frames," which are "modular chassis used for interface between the base stations and the Everon 6000." The "DCM (Digital Conversion Module)" is a module that is used with Radio Interface frames. The DCM "[p]rovides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals." *See, e.g.,* DALIVZN-00365.

Corning also states that "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *See, e.g.,* DALIVZN-00364.

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | As a further example, Corning's Everon 6000 DAS solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364.<br><br>System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-00365.<br>**Digital CPRI based Transport** Provides robust signal distribution. Ready for future direct interfaces interoperability with digital based capacity sources (e.g. BBUs/DUs)<br><br>DALIVZN-00364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 1-B]** a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at least a first access point and a second access point, | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a plurality of wireless access points that is coupled to the one or more central nodes and distributes one or more wireless signals to one or more wireless subscribers, the plurality of wireless access points including at least a first access point and a second access point. For example, Corning states that "due to its modular design and configuration flexibility, Corning Everon 6000 DAS is highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can be easily configured to support a large variety of deployment scenarios including single and multi-building ('Campus') network topologies." *See, e.g.*, DALIVZN-00364. Further, Corning's Everon 6000 DAS solutions "offer[] multiple types of digital remote units, supporting a variety of frequency band combinations, SISO/MIMO configurations, with different power levels ranging from 20 dBm per band to 43 dBm per band." *Id*. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 |<br><br>DALIVZN-00365. |
| **[ELEMENT 1-C]** wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes the one or more central nodes recited in claim element 1-A, wherein one or more central nodes assigns a first subset of the number of the plurality of radio resources to the first access point and a second subset of the number of the plurality of radio resources to the second access point, the first subset including more radio resources than the second subset. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| second access point, the first subset including more radio resources than the second subset, and | Corning states that "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *See, e.g.*, DALIVZN-00364.<br><br>As a further example, Corning's Everon 6000 DAS solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364.<br><br>System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-00365. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
|  | **Key Features and Capabilities**<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |
| **[ELEMENT 1-D]** wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, the one or more central nodes assign additional radio resources of the plurality of radio resources to the second access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes the one or more central nodes recited in claim element 1-A, wherein, in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, the one or more central nodes assign additional radio resources of the plurality of radio resources to the second access point.<br><br>Corning states that "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *See, e.g.*, DALIVZN-00364.<br><br>As a further example, Corning's Everon 6000 DAS solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364. |

8

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **Key Features and Capabilities**<br><br>➤ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |

| Claim 2 | Verizon / Corning's Infringement |
|---|---|
| The wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution meets the wireless system of claim 1, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point.<br><br>*See* **Claim Element 1-C** and **1-D**. |

| Claim 3 | Verizon / Corning's Infringement |
|---|---|
| The wireless system of claim 1, wherein the additional resources are | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution meets the wireless system of claim 1, wherein the additional resources are included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes |

| Claim 3 | Verizon / Corning's Infringement |
|---|---|
| included in the first subset prior to being assigned to the second access point, and wherein the one or more central nodes assign the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point. | assign the additional radio resources of the plurality of radio resources to the second access point comprises removing the additional resources from the first subset assigned to the first access point.<br><br>*See* **Claim Element 1-C** and **1-D**. |

| Claim 6 | Verizon / Corning's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution meets the wireless system of claim 1, wherein the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim Element 1-C**; *see also, e.g.*, DALIVZN-000364 ("[c]an be easily expanded to support additional capacity: sectors, frequency bands, channels, and coverages areas"). |

| Claim 7 | Verizon / Corning's Infringement |
|---|---|
| The wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution meets the wireless system of claim 1, wherein the first access point belongs to a first building and the second access point belongs to a second building.<br><br>*See* **Claim Element 1-C**; *see also, e.g.*, DALIVZN-000364 ("[c]an be easily expanded to support additional capacity: sectors, frequency bands, channels, and coverages areas"). |

| Claim 8 | Verizon / Corning's Infringement |
|---|---|
| The wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution meets the wireless system of claim 1, wherein at least one of the plurality of wireless access points enables communication between an IP device and the one or more central nodes.<br><br>*See* **Claim Element 1-B**. |

| Claim 12 – Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 12 by performing the method of claim 12 as detailed here. |

| Claim 12 – Element | Verizon / Corning's Infringement |
|---|---|
| | *See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |
| **[ELEMENT 12-A]** receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A**. |
| **[ELEMENT 12-B]** assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset; and | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

12

| Claim 12 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 12-C]** in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution in response to a change in need of a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point. *See* **Claim Element 1-D**. |

| Claim 13 – Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution performs the method of claim 12, wherein the change in need is determined based on a change in capacity needed by the number of wireless subscribers coupled to the second access point or a change in throughput needed by the number of wireless subscribers coupled to the second access point. *See* **Claim Element 1-D**. Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 14 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution performs the method of claim 12, wherein the one or more additional resources are included in the first subset prior to being assigned to the second access point, and wherein assigning the one or more additional radio resources comprises removing the one or more additional resources from the first subset assigned to the first access point.<br><br>*See* **Claim Element 1-C**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 16 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim 6**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

14

| Claim 17 – Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, where the first access point belongs to a first building and the second access point belongs to a second building. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution performs the method of claim 12, where the first access point belongs to a first sector and the second access point belongs to a second sector.<br><br>*See* **Claim 7**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 18 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution performs the method of claim 12, wherein at least one of the plurality of wireless access points enables communication between an IP device and one or more central nodes.<br><br>*See* **Claim Element 1-B**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 20 – Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>One or more non-transitory computer readable storage media storing instructions that, when executed by one or more processors, cause | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 20 by including one or more non-transitory |

| Claim 20 – Element | Verizon / Corning's Infringement |
|---|---|
| the one or more processors to perform the steps of: | computer readable storage media storing instructions that, when executed by one or more processors, cause the one or more processors to perform the steps of claim 20.<br><br>*See* **Claim 1**. |
| **[ELEMENT 20-A]** receiving a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution receives a plurality of radio resources from an operator hub that operates using a Common Public Radio Interface (CPRI) protocol.<br><br>*See* **Claim Element 1-A** |
| **[ELEMENT 20-B]** assigning a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset; and | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution assigns a first subset of the plurality of radio resources to a first access point included in a plurality of wireless access points and a second subset of the plurality of radio resources to a second access point included in the plurality of wireless access points, the first subset including more radio resources than the second subset.<br><br>*See* **Claim Element 1-C**. |

| Claim 20 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 20-C]** in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigning one or more additional radio resources of the plurality of radio resources to the second access point. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution in response to a change in need by a number of wireless subscribers coupled to the second access point and which of the second subset is loaded beyond a threshold, assigns one or more additional radio resources of the plurality of radio resources to the second access point. *See* **Claim Element 1-D**. |

**Exhibit H**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership D/B/A Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Corning Inc., and Corning Optical Communications LLC (collectively, "Corning") (altogether, "Verizon / Corning") infringe the below-identified claims of Dali's U.S. Patent No. 10,334,499 (the '499 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to cellular service solutions, such as Corning's Everon 6000 DAS Solutions (including, but not limited to, the Head End Unit (HEU), Integrated Head End Unit (IHU), Digital Routing Units (DRU) Low Power Remote Units (LRU), Medium Power Remote Units (MRU), and High Power Remote Units (HRU)), cabling and switches, and any software running thereon) (collectively, "Verizon / Corning Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Corning produces documents and source code and/or the Court construes any terms from the claims of the '499 Patent. Claims 1-4, 8-11, 13, 14-16, and 18-19 are infringed under 35 U.S.C. § 271(a) when Verizon / Corning uses the Verizon / Corning Accused Instrumentalities.

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A system for transporting wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 1 by providing system for transporting wireless communications.<br><br>For example, Corning describes the Everon 6000 as "an advanced inbuilding cellular service solution for small, medium and large size venues, supporting a broad range of cellular generations: 3G, 4G and 5G." *See, e.g.*, DALIVZN-00364. |
| **[ELEMENT 1-A]**<br>a baseband unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | For example, the Everon 6000 DAS Solutions include "Radio Interface frames" that "are modular chassis used for interface between the base stations and the Everon 6000." *See, e.g.*, DALIVZN-00365.<br><br>System architecture -Everon 6000 \|<br><br><br><br>**Radio Interface Frames (Point of Interface)**<br><br>Radio Interface frames are modular chassis used for interface between the base stations and the Everon 6000. A system may be comprised of two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports). The following modules are used with the radio interface frames:<br><br>DALIVZN-00365. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **DRU – Digital Routing Unit**<br><br>The DRU - Digital Routing Unit is the Everon 6000 central Hub and Distribution element. The DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units. The DRU supports all Corning digital remote antenna units' flavours, for all services, power levels and antenna configurations (SISO or MIMO). Each DRU includes 4 SFP+ ports connected to the DCMs and 32 SFP+ ports for connection to the remote units. When more remote antenna units are needed, the system scales up easily by adding additional system modules.<br><br>DALIVZN-00366. |
| **[ELEMENT 1-B]**<br>a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>For example, the Everon 6000 DAS Solutions include "[s]upport[] multi-operator, multi-band, multi-technology services over a single infrastructure. Supports single and multi-building ('campus') network architectures." *See, e.g.*, DALIVZN-00364.<br><br>Further, Corning states that "[t]he DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." *See, e.g.*, DALIVZN-00366. |
| **[ELEMENT 1-C]**<br>a plurality of remote units, including at least a first remote unit and a second remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a plurality of remote units, including at least a first remote unit and a second remote unit.<br><br>For example, Corning states that "due to its modular design and configuration flexibility, Corning Everon 6000 DAS is highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can be easily configured to support a large variety of deployment scenarios including single and multi-building ('Campus') network topologies." *See, e.g.*, DALIVZN-00364.<br><br>Further, Corning's Everon 6000 DAS solutions "offer[] multiple types of digital remote units, supporting a variety of frequency band combinations, SISO/MIMO configurations, with different power levels ranging from 20 dBm per band to 43 dBm per band." *Id.* |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-00365. |
| **[ELEMENT 1-D]** wherein the baseband unit comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS includes a baseband unit that comprises a plurality of interfaces to communicatively couple the baseband unit to the plurality of signal sources.<br><br>For example, Corning's Everon 6000 DAS solutions provide a "Multi-X system" which "[s]upports multi-operator, multi-band, multi-technology services over a single infrastructure." *See, e.g.*, DALIVZN-00364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **DRU – Digital Routing Unit**<br><br>The DRU - Digital Routing Unit is the Everon 6000 central Hub and Distribution element. The DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units. The DRU supports all Corning digital remote antenna units' flavours, for all services, power levels and antenna configurations (SISO or MIMO). Each DRU includes 4 SFP+ ports connected to the DCMs and 32 SFP+ ports for connection to the remote units. When more remote antenna units are needed, the system scales up easily by adding additional system modules.<br><br>DALIVZN-00366. |
| **[ELEMENT 1-E]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit that is configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>For example, Corning's Everon 6000 DAS Solution includes a baseband unit as described in Claim Element 1-A above. Corning's baseband unit is also configured to receive a plurality of radio resources from the signal sources described in Claim Elements 1-B and 1-D above.<br><br>Further, Corning's Everon 6000 DAS Solution provide "[a]dvanced network configuration and management capabilities [that] enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance and support operators NOC connectivity" *See, e.g.*, DALIVZN-00364.<br><br>"Corning Everon 6000 high bandwidth distribution architecture provides preparedness for future radio technologies, broader spectrum, and new frequency bands." *Id*. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
|  | **RF Parameters**<br><br>| Frequency Range Name | Uplink | Downlink |<br>|---|---|---|<br>| 600-band 71 | 663-698 MHz | 617-652 MHz |<br>| 700L (Lower Band)- band 12 | 698-716 MHz | 728-746 MHz |<br>| 700U (Upper Band)-band 13 | 776-787 MHz | 746-757 MHz |<br>| FirstNet (700)-band 14 | 788-798 MHz | 758-768 MHz |<br>| 800/850 -band 26 | 817-849 MHz | 862-894 MHz |<br>| 1900 (PCS)-band 25 | 1850-1915 MHz | 1930-1995 MHz |<br>| EAWS-band 66 | 1710-1780 MHz | 2110-2200 MHz |<br>| WCS -band 30 | 2305-2315 MHz | 2350-2360 MHz |<br>| 2500 -band 41 | 2496-2690 MHz (TDD) | |<br><br>DALIVZN-00367. |
| **[ELEMENT 1-F]** wherein the baseband unit is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit that is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>For example, Corning's Everon 6000 DAS Solution includes a baseband unit as described in Claim Element 1-A above. Corning's baseband unit is also configured to receive a plurality of radio resources from the signal sources described in Claim Elements 1-B and 1-D above.<br><br>Further, Corning's Everon 6000 DAS Solution includes "Radio Interface frames," which are "modular chassis used for interface between the base stations and the Everon 6000." The "DCM (Digital Conversion Module)" is a module that is used with Radio Interface frames. The DCM "[p]rovides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals." *See, e.g.*, DALIVZN-00365.<br><br>Corning also states that "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *See, e.g.*, DALIVZN-00364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | As a further example, Corning's Everon 6000 DAS solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364. <br><br> **System architecture -Everon 6000 \|** <br><br>  <br><br> DALIVZN-00365. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **Key Features and Capabilities**<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |
| **[ELEMENT 1-G]** wherein the baseband unit is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit that is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>For example, Corning states that "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *See, e.g.*, DALIVZN-00364.<br><br>As a further example, Corning's Everon 6000 DAS solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-00365.<br><br>**Key Features and Capabilities**<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 1-H]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources; and | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit that is configured to send digital representations of a first and second set of radio resources as recited in claim element 1-G, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>Corning's Everon 6000 DAS Solutions provide a "Digital Service and capacity routing" which "[e]nables advanced capacity and coverage management through flexible routing configuration management." *See, e.g.*, DALIVZN-00364.<br><br>**Key Features and Capabilities**<br><br>➤ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |
| **[ELEMENT 1-I]** wherein the baseband unit is configured to receive digital signals from each of the plurality of remote units. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. The Everon 6000 DAS Solution includes a baseband unit that is configured to receive digital signals from each of the plurality of remote units.<br><br>For example, Corning states that "The DRU - Digital Routing Unit is the Everon 6000 central Hub and Distribution element. The DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." *See, e.g.*, DALIVZN-00365.<br><br>Similarly, the DRU also receives digital signals from the remote antenna units. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 | <br><br><br><br>DALIVZN-00365.<br><br>**Key Features and Capabilities**<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br>DALIVZN-000402. |

| Claim 2 - Element | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1 wherein the baseband unit is configured to packetize each digital representation of a radio resource. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution's baseband unit is configured to packetize each digital representation of a radio resource.<br><br>For example, Corning states that "The DRU - Digital Routing Unit is the Everon 6000 central Hub and Distribution element. The DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." *See, e.g.*, DALIVZN-00365.<br><br>Further, Corning's Everon 6000 DAS Solution includes "Radio Interface frames," which are "modular chassis used for interface between the base stations and the Everon 6000." The "DCM (Digital Conversion Module)" is a module that is used with Radio Interface frames. The DCM "[p]rovides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals." *See, e.g.*, DALIVZN-00365. |

| Claim 3 - Element | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the system of claim 1 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit.<br><br>Corning's Everon 6000 DAS Solution's DRUs send digital transmissions via CPRI as illustrated below. CPRI involves the use of packetized data including Control & Management Channel maps and encodes ethernet packets for transmission with destination information identifying the remote units. Further, both ethernet and IP protocols have destination information. For example, ethernet has Destination Mac Address (*see e.g.,* Ethernet 802.3 frame protocol standard) while IPv4 and IPv6 have destination IP address (*see e.g.,* Internet Protocol version 4 and Internet Protocol version 6 protocol standards). |

| Claim 3 - Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-00365. |

| Claim 4 - Element | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the system of claim 1 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 4 - Element | Verizon / Corning's Infringement |
|---|---|
| radio resources from the second signal source. | |

| Claim 8 - Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]** A baseband controller for use in the transport of wireless communications, comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 8 by providing a baseband controller for use in the transport of wireless communications.<br><br>*See* **Claim 1**. |
| **[ELEMENT 8-A]** a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes a plurality of interfaces to communicatively couple a baseband unit to a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>*See* **Claim Element 1-D**. |
| **[ELEMENT 8-B]** at least one interface to communicatively couple the baseband unit to a plurality of remote units, including at least a first remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes at least one interface to communicatively couple the baseband unit to a plurality of remote units, including at least a first remote unit.<br><br>*See* **Claim Elements 1-C**, **1-F**, **1-G**, and **1-I**. |

| Claim 8 - Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 8-C]** wherein the baseband unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes a baseband unit configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>*See* **Claim Element 1-E**. |
| **[ELEMENT 8-D]** wherein the baseband unit is configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes a baseband unit configured to send digital representations of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |
| **[ELEMENT 8-E]** wherein the baseband unit is configured to send digital representations of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit; and | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes a baseband unit configured to send digital representations of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |
| **[ELEMENT 8-F]** | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution includes a baseband unit that is configured to send digital representations of a first and |

| Claim 8 - Element | Verizon / Corning's Infringement |
|---|---|
| wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | second set of radio resources, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>*See* **Claim Element 1-H**. |

| Claim 9 - Element | Verizon / Corning's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the baseband controller of claim 8 wherein the baseband unit is configured to packetize each digital representation of a radio resource.<br><br>*See* **Claim 2**. |

| Claim 10 - Element | Verizon / Corning's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the baseband controller of claim 8 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the first remote unit.<br><br>*See* **Claim 3**. |

| Claim 11 - Element | Verizon / Corning's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the baseband controller of claim 8 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 13 - Element | Verizon / Corning's Infringement |
|---|---|
| The baseband controller of claim 8 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution meets the baseband controller of claim 8 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, and the baseband unit is configured to form the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**. |

| Claim 14 - Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for providing digital signals in a Distributed Antenna System (DAS), comprising: | To the extent the preamble is interpreted to be limiting, the Verizon / Corning Accused Instrumentalities satisfies this preamble.<br><br>On information and belief, and based on publicly available information, the Verizon / Corning Accused Instrumentalities satisfy each and every limitation of claim 14 by performing a method for providing digital signals in a Distributed Antenna System (DAS).<br><br>*See* **Claim 1**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |
| **[ELEMENT 14-A]**<br>receiving at a baseband unit, from a plurality of signal sources including at least a first signal source and a second signal source, a plurality of radio resources; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution receives at a baseband unit, from a plurality of signal sources including at least a first signal source and a second signal source, a plurality of radio resources.<br><br>*See* **Claim Element 1-E**. |
| **[ELEMENT 14-B]**<br>transmitting from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution transmits from the baseband unit, at a first point in time, a digital representation of a first set of radio resources to a first remote unit, the first set of radio resources for transmission at an antenna of the first remote unit.<br><br>*See* **Claim Element 1-F**. |

| Claim 14 - Element | Verizon / Corning's Infringement |
|---|---|
| transmission at an antenna of the first remote unit; | |
| **[ELEMENT 14-C]** transmitting from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit; | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution transmits from the baseband unit, at a second point in time, a digital representation of a second set of radio resources to the first remote unit, the second set of radio resources for transmission at the antenna of the first remote unit.<br><br>*See* **Claim Element 1-G**. |
| **[ELEMENT 14-D]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution performs the method of claim 14, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources.<br><br>*See* **Claim Element 1-H**. |

| Claim 15 - Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution performs the method of claim 14 wherein the digital representation of the first set of radio resources includes destination information identifying the first remote unit and the digital representation of the second set of radio resources includes destination information identifying the second remote unit.<br><br>*See* **Claim 3**. |

| Claim 15 - Element | Verizon / Corning's Infringement |
|---|---|
| of the second set of radio resources includes destination information identifying the second remote unit. | Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 16 - Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution performs the method of claim 14 wherein the first set of radio resources is a subset of the plurality of radio resources and includes at least some radio resources from the first signal source and at least some radio resources from the second signal source.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 18 - Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution performs the method of claim 14 wherein the plurality of radio resources include a first composite signal from the first signal source and a second composite signal from the second signal source, the method further comprising forming, at the baseband unit, the digital representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal.<br><br>*See* **Claim Elements 1-E**, **1-F**, and **1-G**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

| Claim 18 - Element | Verizon / Corning's Infringement |
|---|---|
| representation of the first set of radio resources from a first subset of the first composite signal and a second subset of the second composite signal. | |

| Claim 19 - Element | Verizon / Corning's Infringement |
|---|---|
| The method of claim 14 further comprising packetizing, at the baseband unit, at least a subset of the plurality of radio resources. | The Verizon / Corning Accused Instrumentalities satisfy this claim element. Corning's Everon 6000 DAS Solution performs the method of claim 14 further comprising packetizing, at the baseband unit, at least a subset of the plurality of radio resources.<br><br>*See* **Claim 2**.<br><br>Further, this method is infringed by Verizon / Corning when the Verizon / Corning Accused Instrumentalities are tested and/or used by Verizon / Corning. |

**Exhibit I**

Plaintiff Dali Wireless Inc. ("Dali") contends that Defendants Cellco Partnership D/B/A Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively, "Verizon"), Corning Inc., and Corning Optical Communications LLC (collectively, "Corning") (altogether, "Verizon / Corning") infringe the below-identified claims of Dali's U.S. Patent No. 11,006,343 (the '343 Patent) by deploying, operating, maintaining, testing, and using Verizon's LTE and 5G networks which include equipment relating to small cell wireless solutions, such as Corning's Everon 6000 solutions (including, but not limited to, the Integrated Head-end Unit (IHU), Head End Unit (HEU), Digital Routing Unit (DRU), Low Power Remote Unit (LRU), Medium Power Remote Unit (MRU), High Power Remote Unit (HRU), cabling and switches, and any software running thereon) (collectively, "Verizon / Corning Accused Instrumentalities"). The specific components, systems, and constructs identified in this chart are for exemplary purposes only and Dali reserves all rights to supplement as additional components, systems, and constructs become known through discovery, as well as after Verizon / Corning produces documents and source code and/or the Court construes any terms from the claims of the '343 Patent. Claims 1, 4, 8-10, 12, 15, and 19-21 are infringed under 35 U.S.C. § 271(a) when Verizon / Corning uses the Verizon / Corning wireless solutions.

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A system to transport wireless communications, comprising | To the extent that the Court deems the preamble of Claim 1 to be limiting, Verizon / Corning's wireless solutions meets this claim element. Corning Everon 6000 DAS Solutions provide a system to transport wireless communications.<br><br>For example, according to Corning's publicly available documents, "Corning Everon 6000 DAS is an advanced inbuilding cellular service solution for small, medium and large size venues, supporting a broad range of cellular generations: 3G, 4G and 5G." DALIVZN-000364. Corning Everon 6000 DAS solutions are "based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." *Id.*<br><br>Moreover, Corning Everon 6000 DAS solutions are "highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can be easily configured to support a large variety of deployment scenarios including single and multi-building ('Campus') network topologies." *Id.* |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 1-A]**<br>a digital access unit; | Verizon / Corning's wireless solutions meet this claim element. Corning Everon 6000 DAS solutions comprise a digital access unit.<br><br>For example, Corning Everon 6000 DAS solutions include "Radio Interface frames" that "are modular chassis used for interface between the base stations and the Everon 6000":<br><br><br><br>DALIVZN-000365.<br><br>Further, Corning Everon 6000 DAS solutions may be comprised of "two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports)." *Id.* Corning Everon 6000 DAS solutions also include a "DRU - Digital Routing Unit" that is the "Everon 6000 central Hub and Distribution element." DALIVZN-000366. "The DRU interfaces between the DCM modules and the IHU Radio |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." *Id.* |
| **[ELEMENT 1-B]** a plurality of signal sources, including at least a first signal source and a second signal source; | Verizon / Corning's wireless solutions meet this claim element. Corning Everon 6000 DAS solutions comprise a plurality of signal sources, including at least a first signal source and a second signal source.<br><br>For example, Corning Everon 6000 DAS solutions "[s]upport[] multi-operator, multi-band, multi-technology services over a single infrastructure. Supports single and multi-building ('campus') network architectures." DALIVZN-000364. Further, "The DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." DALIVZN-000366. |
| **[ELEMENT 1-C]** a plurality of remote units, including at least a first remote unit and a second remote unit; | Verizon / Corning's wireless solutions meet this claim element. Corning Everon 6000 DAS solutions comprise a plurality of remote units, including at least a first remote unit and a second remote unit.<br><br>For example, Corning Everon 6000 DAS solutions are "highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can be easily configured to support a large variety of deployment scenarios including single and multi-building ('Campus') network topologies." DALIVZN-000364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | System architecture -Everon 6000 \|<br><br><br><br>DALIVZN-000365.<br><br>Further, Corning Everon 6000 DAS solutions "offer[] multiple types of digital remote units, supporting a variety of frequency band combinations, SISO/MIMO configurations, with different power levels ranging from 20 dBm per band to 43 dBm per band." DALIVZN-000364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **LRU - Low power Remote Unit**<br><br>The LRU is a low power remote antenna unit with 20 dBm per MIMO stream per band output RF power and native support of 2x2 MIMO antenna scheme. Two types of LRU are available:<br>Low band LRU - supports 600 MHz (band 71), 700 MHz Low (band 12), 700 MHz High (bnad13), FirstNet (band 14), 800/850 MHz (band 26) bands via one SFP+ connection.<br>Medium Band LRU - supports EAWS (band 66), PCS (band 25), WCS (band 30) and 2.5GHz TDD (band 41) services via 3 SFP+ connections.<br>The LRU cooling is natural convection with no fans. Due to its IP66 enclosure design the LRU can also be installed outdoors.<br><br>**MRU – Medium-power Remote Unit**<br><br>The MRU is a medium power modular remote antenna unit with a single antenna port.  The output power for the lower bands: 600/700 MHz Low/700 MHz High/FirstNet, 800/850 MHz is 33 dBm and the output power for the medium bands EAWS, PCS, WCS and 2.5GHz TDD is 37dBm.<br>Two SFP+ connections are used to support all the bands. The MRU modular structure and integrated high-performance cavity based multiplexing functionalities, enable setups of up to 6 RF modules, for a variety of licensed frequency bands within a single cabinet.<br>The MRU also provides CBRS/C-Band ready RF interface for future field upgrades.<br><br>**HRU – High-power Remote Unit**<br><br>The HRU is a high power modular remote antenna unit which provides 43 dBm output RF power per service module, and native support of 2x2 MIMO antenna scheme. The HRU modular structure enables set ups of up to 8 service modules in 600/700 MHz Low/700 MHz High/FirstNet, 800/850 MHz, EAWS, PCS, WCS and 2.5GHz TDD.<br>The HRU cooling is based on natural convection, with no fans. Due to its IP65 enclosure design the HRU can also be installed outdoors.<br><br>DALIVZN-000366. |
| **[ELEMENT 1-D]**<br>wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources; | Verizon / Corning's wireless solutions meet this claim element. The digital access unit in Corning Everon 6000 DAS solutions comprises a plurality of interfaces to communicatively couple the digital access unit to the plurality of signal sources.<br><br>For example, Corning Everon 6000 DAS solutions provide a "Multi-X system" which "[s]upports multi-operator, multi-band, multi-technology services over a single infrastructure." DALIVZN-000364. Moreover, "[t]he DRU interfaces between the DCM modules and the IHU Radio Interface Frames, allowing to receive the operators service signals in CPRI format, and to route these signals to the remote antenna units." DALIVZN-000366. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| |  DALIVZN-000365. |
| **[ELEMENT 1-E]**<br>wherein the digital access unit is configured to receive a plurality of radio resources from the first signal source and the second signal source; | Verizon / Corning's wireless solutions meet this claim element. The digital access unit in Corning Everon 6000 DAS solutions is configured to receive a plurality of radio resources from the first signal source and the second signal source.<br><br>For example, Corning Everon 6000 DAS solutions provide "[a]dvanced network configuration and management capabilities [that] enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance and support operators NOC connectivity." DALIVZN-000364.<br><br>Further, Corning Everon 6000 DAS solutions are "highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can easily be configured to support a large variety of deployment scenarios including single and multi-building ("Campus") network topologies." DALIVZN-000364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **Features and benefits \|** <br><br> <table><tr><td>Comprehensive service Support</td><td>600 MHz, 700 MHz, FirstNet, 800/850 MHz, 1900 (PCS), EAWS, 2.3 GHz (WCS), 2.5 GHz (TDD). Support of SISO and MIMO services, FDD and TDD formats. Supports 3G, 4G, 5G technologies</td></tr><tr><td>Multi-X system</td><td>Supports multi-operator, multi-band, multi-technology services over a single infrastructure. Supports single and multi-building ("campus") network architectures</td></tr><tr><td>Highly modular/ Highly scalable</td><td>Can be easily expanded to support additional capacity: sectors, frequency bands, channels and coverage areas via extending the number of remotes</td></tr><tr><td>Advanced Digital Signal Processing</td><td>Provides higher dynamic range, enables per channel granularity, delivers enhanced overall power efficiency and improves overall system performance</td></tr><tr><td>Digital CPRI based Transport</td><td>Provides robust signal distribution. Ready for future direct interfaces interoperability with digital based capacity sources (e.g. BBUs/DUs)</td></tr><tr><td>Digital Service and capacity routing</td><td>Enables advanced capacity and coverage management through flexible routing configuration management</td></tr><tr><td>Carrier-grade network management</td><td>Network configuration and management capabilities enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance, support management and control by operators NOC</td></tr></table> <br> DALIVZN-000364. <br><br> Further, as a part of Corning's Everon 6000 DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management: |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
|  | ➢ **Flexible and economic traffic management; Optimized network utilization:** |
|  | A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more. |
|  | DALIVZN-000402. |
| **[ELEMENT 1-F]** wherein the digital access unit is configured to send a digital representation of a first set of radio resources to the first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit; | Verizon / Corning's wireless solutions meet this claim element. On information and belief, the digital access unit in Corning Everon 6000 DAS solutions sends digital representations of radio resources to remote units, including a first set of radio resources at a first point in time.

For example, Corning's Everon 6000 DAS solutions provide "[a]dvanced network configuration and management capabilities [that] enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance and support operators NOC connectivity." DALIVZN-000364. Corning's Everon 6000 DAS solutions are "highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can easily be configured to support a large variety of deployment scenarios including single and multi-building ("Campus") network topologies." *Id.* |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **Features and benefits \|** <br><br> | Comprehensive service Support | 600 MHz, 700 MHz, FirstNet, 800/850 MHz, 1900 (PCS), EAWS, 2.3 GHz (WCS), 2.5 GHz (TDD). Support of SISO and MIMO services, FDD and TDD formats. Supports 3G, 4G, 5G technologies |<br> | Multi-X system | Supports multi-operator, multi-band, multi-technology services over a single infrastructure. Supports single and multi-building ("campus") network architectures |<br> | Highly modular/ Highly scalable | Can be easily expanded to support additional capacity: sectors, frequency bands, channels and coverage areas via extending the number of remotes |<br> | Advanced Digital Signal Processing | Provides higher dynamic range, enables per channel granularity, delivers enhanced overall power efficiency and improves overall system performance |<br> | Digital CPRI based Transport | Provides robust signal distribution. Ready for future direct interfaces interoperability with digital based capacity sources (e.g. BBUs/DUs) |<br> | Digital Service and capacity routing | Enables advanced capacity and coverage management through flexible routing configuration management |<br> | Carrier-grade network management | Network configuration and management capabilities enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance, support management and control by operators NOC |<br><br> *Id.* <br><br> Additionally, "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links. The solution is designed to support multiband, multi-technology and multi-operator networks over a single fibre-based infrastructure." *Id.* |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | **Radio Interface Frames (Point of Interface)**<br><br>Radio Interface frames are modular chassis used for interface between the base stations and the Everon 6000. A system may be comprised of two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports). The following modules are used with the radio interface frames:<br><br>• RIMe (Radio Interface Module Enhanced ) - provides an interface and signal conditioning to signals coupled between the signal source RF antenna ports and the Everon 6000 (uplink and downlink)<br>• DCM (Digital Conversion Module) - Provides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals. Each DCM may convert signals capturing up to 190 MHz aggregated bandwidth.<br>• RIX (Radio Interface Expander) – combines downlink signals of the HEU and IHU RIMe's and provides the combined signals to the OIX, splits uplink signals arriving from the OIX to the HEU and IHU RIMe's.<br>• OIX (Optical Interface Expander) – combines downlink signals arriving from the HEU RIX and the IHU RIX and splits the uplink signal for the HEU RIX and the IHU RIX uplink ports.<br>• PSM (Power Supply Module) – provides power to the radio interface frame<br>• dHCM (Digital Head-End Control Module) is a "master" frame controller<br>• ACM (Auxiliary Control Module) is a "slave" frame controller controlled by the dHCM<br><br>DALIVZN-000365.<br><br>Further, as a part of Corning's Everon 6000 DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management:<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br><br>DALIVZN-000402. |
| **[ELEMENT 1-G]**<br>wherein the digital access unit is configured to send a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for | Verizon / Corning's wireless solutions meet this claim element. On information and belief, the digital access unit in Corning Everon 6000 DAS solutions sends digital representations of radio resources to remote units, including a second set of radio resources at a second point in time.<br><br>For example, Corning Everon 6000 DAS solutions provide "[a]dvanced network configuration and management capabilities [that] enable on-site as well as remote end-to- |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| transmission at the antenna of the first remote unit; | end configuration, system diagnostics, maintenance and support operators NOC connectivity." DALIVZN-000364. Corning Everon 6000 DAS solutions are "highly scalable in terms of supported capacity (number of sectors, frequency bands, channels) and remote units (coverage), and can easily be configured to support a large variety of deployment scenarios including single and multi-building ("Campus") network topologies." *Id.* |

### Features and benefits |

| | |
|---|---|
| Comprehensive service Support | 600 MHz, 700 MHz, FirstNet, 800/850 MHz, 1900 (PCS), EAWS, 2.3 GHz (WCS), 2.5 GHz (TDD). Support of SISO and MIMO services, FDD and TDD formats. Supports 3G, 4G, 5G technologies |
| Multi-X system | Supports multi-operator, multi-band, multi-technology services over a single infrastructure. Supports single and multi-building ("campus") network architectures |
| Highly modular/ Highly scalable | Can be easily expanded to support additional capacity: sectors, frequency bands, channels and coverage areas via extending the number of remotes |
| Advanced Digital Signal Processing | Provides higher dynamic range, enables per channel granularity, delivers enhanced overall power efficiency and improves overall system performance |
| Digital CPRI based Transport | Provides robust signal distribution. Ready for future direct interfaces interoperability with digital based capacity sources (e.g. BBUs/DUs) |
| Digital Service and capacity routing | Enables advanced capacity and coverage management through flexible routing configuration management |
| Carrier-grade network management | Network configuration and management capabilities enable on-site as well as remote end-to-end configuration, system diagnostics, maintenance, support management and control by operators NOC |

*Id.*

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | Additionally, "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links. The solution is designed to support multiband, multi-technology and multi-operator networks over a single fibre-based infrastructure." *Id.*<br><br>**Radio Interface Frames (Point of Interface)**<br><br>Radio Interface frames are modular chassis used for interface between the base stations and the Everon 6000. A system may be comprised of two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports). The following modules are used with the radio interface frames:<br><br>• RIMe (Radio Interface Module Enhanced ) - provides an interface and signal conditioning to signals coupled between the signal source RF antenna ports and the Everon 6000 (uplink and downlink)<br>• DCM (Digital Conversion Module) - Provides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals. Each DCM may convert signals capturing up to 190 MHz aggregated bandwidth.<br>• RIX (Radio Interface Expander) – combines downlink signals of the HEU and IHU RIMe's and provides the combined signals to the OIX, splits uplink signals arriving from the OIX to the HEU and IHU RIMe's.<br>• OIX (Optical Interface Expander) – combines downlink signals arriving from the HEU RIX and the IHU RIX and splits the uplink signal for the HEU RIX and the IHU RIX uplink ports.<br>• PSM (Power Supply Module) – provides power to the radio interface frame<br>• dHCM (Digital Head-End Control Module) is a "master" frame controller<br>• ACM (Auxiliary Control Module) is a "slave" frame controller controlled by the dHCM<br><br>DALIVZN-000365.<br><br>Further, as a part of Corning's Everon 6000 DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management:<br><br>➤ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br><br>DALIVZN-000402. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| **[ELEMENT 1-H]**<br>wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management; and | Verizon / Corning's wireless solutions meet this claim element. For example, as explained above in **ELEMENTS [1-F] and [1G]**, the digital access unit in Corning Everon 6000 DAS solutions is configured to send digital representations of radio resources to a remote unit. On information and belief, the digital access unit in Corning Everon 6000 DAS solutions is configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management.<br><br>For example, as a part of Corning's Everon DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management:<br><br>➢ **Flexible and economic traffic management; Optimized network utilization:**<br><br>A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br><br>DALIVZN-000402. |
| **[ELEMENT 1-I]**<br>wherein the digital access unit is configured to receive digital signals from each of the plurality of remote units. | Verizon / Corning's wireless solutions meet this claim element. For example, as explained above in **ELEMENTS [1-F] and [1G]**, Corning Everon 6000 DAS solutions are configured to send digital representations of radio resources to a remote unit. On information and belief the digital access unit in Corning Everon 6000 DAS solutions is also configured to receive digital signals from each of the plurality of remote units.<br><br>For example, "Corning Everon 6000 DAS is based on digital distribution architecture, advanced digital processing, and channelized implementation, enabling efficient utilization of digital links." DALIVZN-000364. |

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| |  |

### System architecture -Everon 6000 |

#### Radio Interface Frames (Point of Interface)

Radio Interface frames are modular chassis used for interface between the base stations and the Everon 6000. A system may be comprised of two types of Chassis: IHU (Integrated Head-end Unit) and HEU (Head End Unit). The IHU can interface up to 8 RF duplexed ports (or 16 UL/DL simplex ports) and can be expanded by an HEU radio interface frame which provides interface capabilities for additional 12 RF duplexed ports (or 24 UL/DL simplex ports). The following modules are used with the radio interface frames:

- RIMe (Radio Interface Module Enhanced ) - provides an interface and signal conditioning to signals coupled between the signal source RF antenna ports and the Everon 6000 (uplink and downlink)
- DCM (Digital Conversion Module) - Provides RF to CPRI (Downlink) and CPRI to RF (Uplink) conversion, where the well-known CPRI (Common Public Radio Interface) standard is used for representing the RF signals. Each DCM may convert signals capturing up to 190 MHz aggregated bandwidth.
- RIX (Radio Interface Expander) – combines downlink signals of the HEU and IHU RIMe's and provides the combined signals to the OIX, splits uplink signals arriving from the OIX to the HEU and IHU RIMe's.
- OIX (Optical Interface Expander) – combines downlink signals arriving from the HEU RIX and the IHU RIX and splits the uplink signal for the HEU RIX and the IHU RIX uplink ports.
- PSM (Power Supply Module) – provides power to the radio interface frame
- dHCM (Digital Head-End Control Module) is a "master" frame controller
- ACM (Auxiliary Control Module) is a "slave" frame controller controlled by the dHCM

DALIVZN-000365.

| Claim 1 – Element | Verizon / Corning's Infringement |
|---|---|
| | Further, as a part of Corning's Everon 6000 DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management: <br><br> ➢ **Flexible and economic traffic management; Optimized network utilization:** <br><br> A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more. <br><br> DALIVZN-000402. |

| Claim 4 | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1, wherein the dynamic load balancing and resource management dynamically adjusts a capacity of at least the first remote unit. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. On information and belief, Corning's Everon™ 6000 DAS solutions are configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, wherein the dynamic load balancing and resource management dynamically adjusts the capacity of at least the first remote unit. <br><br> For example, as a part of Corning's Everon™ DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management: <br><br> ➢ **Flexible and economic traffic management; Optimized network utilization:** <br><br> A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more. <br><br> DALIVZN-000402. |

| Claim 8 | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic in the system. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. On information and belief, Corning's Everon 6000 solutions are configured to send a number of radio resources in the first set of radio resources that is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic in the system.<br><br>For example, as a part of Corning's Everon DAS solution, the Building Wireless System (BWS) features dynamic load balancing and resource management:<br><br>    ➤ **Flexible and economic traffic management; Optimized network utilization:**<br><br>    A unique combination of smart traffic management techniques, allowing load (and thus cost) reduction based. These optimizations are achieved via automated management considerations and path selection techniques. e.g.: **Dynamic routing** (from each vBBU port to each remote port and vice versa); **Advanced clusterization logic** (up to 24 clusters; allows downlink forking and then uplink summing, to reduce CPRI throughput); **capacity steering techniques**, and more.<br><br>DALIVZN-000402. |

| Claim 9 | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1, wherein the first remote unit is a low power radio capable of using multiple frequency bands. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. For example, Corning's Everon 6000 solutions include at least Low power Remote Units, which are low power and capable of using multiple frequency bands.<br><br>For example, "Corning Everon 6000 offers multiple types of digital remote units, supporting a variety of frequency band combinations, SISO/MIMI configurations, with different power levels ranging from 20 dBm per band to 43 dBm per band." DALIVZN-000364. |

| Claim 9 | Verizon / Corning's Infringement |
|---|---|
| | **LRU - Low power Remote Unit**<br><br>The LRU is a low power remote antenna unit with 20 dBm per MIMO stream per band output RF power and native support of 2x2 MIMO antenna scheme. Two types of LRU are available:<br>Low band LRU - supports 600 MHz (band 71), 700 MHz Low (band 12), 700 MHz High (bnad13), FirstNet (band 14), 800/850 MHz (band 26) bands via one SFP+ connection.<br>Medium Band LRU - supports EAWS (band 66), PCS (band 25), WCS (band 30) and 2.5GHz TDD (band 41) services via 3 SFP+ connections.<br>The LRU cooling is natural convection with no fans. Due to its IP66 enclosure design the LRU can also be installed outdoors.<br><br>DALIVZN-000366. |

| Claim 9 | Verizon / Corning's Infringement |
|---|---|
|  | Low Band LRU-Low power Remote Unit<br><br>P/N: dLRU-678<br><br>End to End System Performance<br><br>Headend to Digital Low power Remote Unit  |

**RF Specifications**

| Frequency Range Name | | | 600 | 700L & 700U & FirstNet | | 800/850 |
|---|---|---|---|---|---|---|
| Frequency Range | Uplink | MHz | 663-698 | 698-716 | 776-798 | 817-849 |
| | Downlink | | 617-652 | 728-746 | 746-768 | 862-894 |
| Max. Operating Bandwidth-Non-contiguous | | MHz | Full Band | | | |
| Instantaneous Bandwidth | | MHz | 35 | 18 | 21 | 32 |
| Downlink Output Power (LRU) | | dBm | 20 | 20 | | 20 |
| Attenuation Adjustable Range (1dB step) | | dB | 0-20 | | | |
| Pass Band Ripple (p-p) | | dB | ≤ 4 | ≤ 4 | ≤ 4 | ≤ 4 |
| Channel Bandwidth | | MHz | 5/10/15/20 | | | |
| Uplink Noise Figure (typical) | | dB | 12 | | | |
| Uplink IIP3 (typical) | | dBm | -14 | | | |
| VSWR | | | | ≤ 1.8 | | |
| EVM (256 QAM) (TM3.1A @ Rated power) | | % | | < 3.5 | | |
| Spurious Emission | | | | 3GPP TS 36.106/25.106; 3GPP TS 38.104 V15.5.0 (sections 6; 7) | | |

**Electrical Specifications**

| Power Consumption | Watt | 70 |
|---|---|---|
| DC voltage | DC | 36-57 |

**Interfaces and Mechanical**

| CPRI Port | | 1, SFP+ 10.1Gbps |
|---|---|---|
| Antenna Ports | | 2, 4.3-10 female |
| Dimension (W x H x D) | Inch (mm) | 9.84 x 10.63 x 2.75 (250 x 270 x70) |
| Weight | Lbs (Kg) | 13 (6) |
| Mounting and installation | | Wall, ceiling and pole mount options |
| Cooling | | Convection |

**Environmental**

| Operational Temperature | °F (°C) | -40° to 131° (-40° to 55° ) |
|---|---|---|
| Outdoor installation (Ingress Protection) | | IP 66 |

*Technical spec subject to change without notice

DALIVZN-000373.

| Claim 9 | Verizon / Corning's Infringement |
|---|---|

Medium Band LRU- Low power Remote Unit

P/N: dLRU-17192325

End to End System Performance

Headend to Digital Low power Remote Unit



| RF | | | | | | |
|---|---|---|---|---|---|---|
| Frequency Range Name | | | 1900 | EAWS | WCS | 2500 |
| Frequency Range | Uplink | MHz | 1850-1915 | 1710-1780 | 2305-2315 | 2496-2690 |
| | Downlink | | 1930-1995 | 2110-2180 | 2350-2360 | 2496-2690 |
| Max. Operating Bandwidth-Non-contiguous | | MHz | Full Band | | | |
| Instantaneous Bandwidth | | MHz | 65 | 70 | 10 | 60 + 60 |
| Downlink Output Power (LRU) | | dBm | 20 | 20 | 18 | 20 |
| ATT Adjustable Range (1dB step) | | dB | 0-20 | | | |
| Pass Band Ripple (p-p) | | dB | ≤ 4 | ≤ 4 | ≤ 4 | ≤ 4 |
| Channel Bandwidth | | MHz | 5/10/15/20 | | | 5/10/15/20 for 4G<br><br>40 or 60 for 5G |
| Uplink Noise Figure (typical) | | dB | 12 | | | |
| Uplink IIP3 (typical) | | dBm | -14 | | | |
| VSWR | | | ≤ 1.8 | | | |
| EVM (256 QAM) | | % | < 3.5 | | | |
| Spurious Emission | | | 3GPP TS 36.106/25.106; 3GPP TS 38.104 V15.5.0 (sections 6; 7); 3GPP TR 36.846 V12.0.0 | | | |
| **Electrical Specifications** | | | | | | |
| Power Consumption | | Watt | 80 | | | |
| DC voltage | | DC | 36-57 | | | |
| Interfaces and Mechanical | | | | | | |
| CPRI Port | | | 3, SFP+ 10.1Gbps | | | |
| Antenna Ports | | | 2 ,4.3-10 female | | | |
| Dimension (W x H x D) | | Inch (mm) | 9.84 x 10.63 x 2.75 (250 x 270 x 70) | | | |
| Weight | | Lbs (Kg) | 13 (6) | | | |
| Mounting and installation | | | Wall, ceiling and pole mount options | | | |
| Cooling | | | Convection | | | |
| **Environmental** | | | | | | |
| Operational Temperature | | °F (°C) | -40° to 131° (-40° to 55°) | | | |
| Outdoor installation (Ingress Protection) | | | IP 66 | | | |

*Technical spec subject to change without notice

DALIVZN-000374.

| Claim 10 | Verizon / Corning's Infringement |
|---|---|
| The system of claim 1, wherein the digital signals communicated between the digital access unit and the remote units are sent via optical cables. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 1**, *supra*. For example, Corning's Everon 6000 DAS solutions can use optical cables to communicate digital signals between the digital access unit and the remote units:<br><br>For example, "[t]he solution is designed to support multi-band, multi-technology and multi-operator networks over a single fibre-based infrastructure." DALIVZN-000364. |

| Claim 12 - Element | Verizon / Corning's Infringement |
|---|---|
| **[PREAMBLE]**<br>A method for wireless communications comprising: | To the extent that the Court deems the preamble of Claim 12 to be limiting, Verizon / Corning's wireless solutions meet this claim element. For example, Corning's Everon 6000 DAS solutions provide a method for wireless communications. *See* **Claim 1 – [PREAMBLE]**, *supra*.<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |
| **[ELEMENT 12-A]**<br>receiving, at a digital access unit, a plurality of radio resources from a first signal source and a second signal source, wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to a plurality of signal sources; | Verizon / Corning's wireless solutions meet this claim element. For example, Corning Everon 6000 DAS solutions include a digital access unit that receives a plurality of radio resources from a first signal source and a second signal source, wherein the digital access unit comprises a plurality of interfaces to communicatively couple the digital access unit to a plurality of signal sources. *See* **Claim 1 – [ELEMENT 1-A]** through **[ELEMENT 1-E]**, *supra*.<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |
| **[ELEMENT 12-B]**<br>sending, by the digital access unit, a digital representation of a first set of radio resources to a first remote unit at a first point in time, the first set of | Verizon / Corning's wireless solutions meet this claim element. For example, Corning Everon 6000 DAS solutions include a digital access unit which sends a digital representation of a first set of radio resources to a first remote unit at a first point in time, the first set of radio resources for transmission at an antenna of the first remote unit. *See* **Claim 1 – [ELEMENT 1-F]**, *supra*. |

| Claim 12 - Element | Verizon / Corning's Infringement |
|---|---|
| radio resources for transmission at an antenna of the first remote unit; and | Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |
| **[ELEMENT 12-C]** sending, by the digital access unit, a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit, | Verizon / Corning's wireless solutions meet this claim element. For example, Corning Everon 6000 DAS solutions include a digital access unit which sends a digital representation of a second set of radio resources to the first remote unit at a second point in time, the second set of radio resources for transmission at the antenna of the first remote unit. *See* Claim 1 – **[ELEMENT 1-G]**, *supra*.<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |
| **[ELEMENT 12-D]** wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management. | Verizon / Corning's wireless solutions meet this claim element. For example, Corning Everon 6000 DAS solutions include a digital access unit which sends a digital representation of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management. *See* **Claim 1 – [ELEMENT 1-H]**, *supra*.<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |

| Claim 15 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the dynamic load balancing and resource management dynamically adjusts a capacity of at least the first remote unit. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* For example, Corning Everon 6000 DAS solutions include a digital access unit which sends a digital representation of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, and wherein the dynamic load balancing and resource management dynamically adjusts a capacity of at least the first remote unit. *See* **Claim 4**, *supra.* |

| Claim 15 | Verizon / Corning's Infringement |
|---|---|
| | Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |

| Claim 19 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the dynamic load balancing and resource management uses network capacity to route signal traffic. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* For example, Corning Everon 6000 DAS solutions include a digital access unit which sends a digital representation of a first set of radio resources and a digital representation of a second set of radio resources to a first remote unit, wherein a number of radio resources in the first set of radio resources is different from a number of radio resources in the second set of radio resources at least based on dynamic load balancing and resource management, and wherein the dynamic load balancing and resource management uses network capacity to route signal traffic. *See* **Claim 8**, *supra.*<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |

| Claim 20 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the first remote unit is a low power radio capable of using multiple frequency bands. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* For example, Corning Everon 6000 DAS solutions include a first remote unit which is a low power radio capable of using multiple frequency bands. *See* **Claim 9**, *supra.*<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |

| Claim 21 | Verizon / Corning's Infringement |
|---|---|
| The method of claim 12, wherein the signals communicated between the digital access unit and remote units are sent via optical cables. | Verizon / Corning's wireless solutions meet this claim element. *See* **Claim 12**, *supra.* For example, Corning Everon 6000 DAS solutions can use optical cables to communicate digital signals between the digital access unit and the remote units. *See* **Claim 10**, *supra.*<br><br>Further, this method is infringed by Verizon / Corning when Corning Everon 6000 DAS solutions are tested and/or used by Verizon / Corning. |

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## DECLARATION OF JYOTIN BASRUR
## IN SUPPORT OF MOTION TO SEVER AND STAY

I, Jyotin Basrur, make the following declaration:

1.      My name is Jyotin Basrur, and I am an employee of Corning Optical Communications LLC ("Corning").  My title is Senior Director, Product Line Management, In-Building Network Solutions, and in this role I am responsible for Corning's in-building network product lines.  I am over 18 years of age and am competent to testify as to the matters set forth herein.  I make the following statement based on my own personal knowledge, unless expressly stated otherwise.

2.      I have been informed that the plaintiff in the above captioned case, Dali Wireless, Inc., accused Verizon of infringing a number of patents based on Verizon's deployment of

1

products supplied by CommScope, Corning, and Ericsson (the "Supplier Defendants"). I understand that the specific products accused of infringement are CommScope's Ion®-E/ERA Platform, Ericsson's Radio Dot System, and Corning's Everon™ 6000 DAS Solution. For ease of reference, I will refer to these products collectively as the "Accused Products."

3.      Corning is a direct competitor with Ericsson and CommScope in the wireless space.

4.      Corning does not permit its competitors, including CommScope and Ericsson, to access its proprietary technical information such as proprietary technical information relating to the Corning Everon™ 6000 DAS Solution.

5.      Corning designs, develops, manufactures, or otherwise procures its Everon™ 6000 DAS Solution.

6.      Corning does not design, develop, or manufacture (or otherwise procure) the accused CommScope and Ericsson products.

7.      Corning's Everon™ 6000 DAS Solution is proprietary to Corning, and to Corning's knowledge, is not sourced from a common manufacturer that suppliers the CommScope or Ericsson products.

8.      Corning's Everon™ 6000 DAS Solution is a different product from CommScope's Ion®-E/ERA Platform and Ericsson's Radio Dot System.

9.      Corning does not have any joint development agreements between it and CommScope or Ericsson relating to the Everon™ 6000 DAS Solution or CommScope or Ericsson's Accused Products.

10.      Corning's employees responsible for its Everon™ 6000 DAS Solution do not work with the CommScope employees responsible for its ION-E/ERA Platform or the Ericsson

employees responsible for its Radio Dot System with respect to those products in planning, developing, testing, operating, or maintaining Verizon's LTE or 5G networks.

11.     Corning did not plan, develop, test, operate, or maintain the Everon™ 6000 DAS Solution with or in coordination with CommScope or Ericsson.

12.     Corning does not permit Verizon to modify the circuits or the source code of the accused Everon™ 6000 DAS Solution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2022                    /s/ Jyotin Basrur

3

**Attorney Work Product and Privileged Communication**
## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

DALI WIRELESS, INC.,                                )
                                                    )
          Plaintiff,                                )
                                                    )   Case No. 6:22-CV-00104-ADA
    v.                                              )
                                                    )   **JURY TRIAL DEMANDED**
CELLCO PARTNERSHIP D/B/A VERIZON                    )
WIRELESS, VERIZON CORPORATE                         )
SERVICES GROUP INC., VERIZON                        )
ONLINE LLC, COMMSCOPE HOLDING                       )
COMPANY, INC., COMMSCOPE, INC.,                     )
COMMSCOPE TECHNOLOGIES LLC,                         )
ERICSSON INC.,                                      )
TELEFONAKTIEBOLAGET LM                              )
ERICSSON, CORNING INC., and CORNING )
OPTICAL COMMUNICATIONS LLC,                         )

          Defendants.

### Declaration of Luigi Tarlazzi in support of
### Motion to Sever and Stay

I, Luigi Tarlazzi, declare as follows:

1. I am over 18 years of age, and I am competent to testify as to the matters set forth herein. I make the following declaration based on my own personal knowledge.

2. I am an employee of CommScope. My job title is Vice President of Engineering for ICN (Intelligent Cellular Networks). As part of this job, I have engineering responsibilities for the CommScope's Era and OneCell product lines. I will call these products collectively the "accused products."

3. CommScope designs and develops the accused products, and the accused products are proprietary to CommScope. CommScope did not jointly develop these products with Corning or Ericsson. Rather, CommScope is a competitor with Corning and Ericsson in the wireless product space. As such, CommScope also does not jointly operate, develop, or sell the accused products with Corning and Ericsson. CommScope also does not cooperate with Corning or Ericsson in planning, developing, testing, operating, or maintaining the CommScope accused products deployed in AT&T or Verizon's LTE or 5G networks. To be clear, the accused products are separate and distinct products from any competing products sold by Corning and Ericsson.

4. CommScope has possession, custody, and control of the factual information in the form of witnesses and related documentation that shows the design and development of the accused products.

5. I understand that CommScope has contractual obligations to defend Verizon in this case against the allegations Dali has made that CommScope's Era products infringe Dali's patents asserted against those products in this case, and therefore, CommScope will be defending and indemnifying Verizon in accordance with those contractual obligations and the rights, obligations, and limitations contained therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 23, 2022

Luigi Tarlazzi

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## DECLARATION OF PAUL WALKER
## IN SUPPORT OF MOTION TO SEVER AND STAY

I, Paul Walker, make the following declaration:

1.  My name is Paul Walker, and I am an employee of Ericsson Canada ("Ericsson"). My title is Leader, RA Indoor, and in this role, I am responsible for managing the development and delivery of Ericsson's Indoor Product portfolio. I am over 18 years of age and am competent to testify as to the matters set forth herein. I make the following statement based on my own personal knowledge or based on my knowledge as an Ericsson employee.

2.  I have been informed that the plaintiff in the above captioned case, Dali Wireless, Inc., accuses Verizon of infringing a number of patents based on Verizon's deployment of products supplied by CommScope, Corning, and Ericsson (the "Supplier Defendants"). I understand that

1

the specific products accused of infringement are CommScope's Ion®-E/ERA Platform, Ericsson's Radio Dot System, and Corning's Everon™ 6000 DAS Solution. For ease of reference, I will refer to these products collectively as the "Accused Products."

3.    Ericsson is a direct competitor with Corning and CommScope in the wireless space.

4.    Ericsson does not permit its competitors or its customers, including CommScope, Corning, and Verizon, to access its proprietary technical information such as proprietary technical information relating to the Ericsson Radio Dot System or any other Ericsson product it sells.

5.    Ericsson designs, develops, and manufactures (or has manufactured on its behalf) its products, including its Radio Dot System.

6.    Ericsson does not design, develop, or manufacture (or otherwise procure) the accused CommScope and Corning products.

7.    Ericsson's Radio Dot System is proprietary to Ericsson and is manufactured separate and apart from all other vendors, including products for the other Supplier Defendants.

8.    Ericsson's Radio Dot System is a different product from CommScope's Ion®-E/ERA Platform and Corning's Everon™ 6000 DAS Solution.

9.    Ericsson does not have any joint development agreements between it and CommScope or Corning relating to the Radio Dot System.

10.    Ericsson does not cooperate with CommScope or Corning in planning, developing, testing, operating, or maintaining the Ericsson Radio Dot System deployed in Verizon's LTE or 5G networks.

11.    Ericsson did not plan, develop, test, operate, or maintain the Radio Dot System with or in coordination with CommScope or Corning.

2

12.    To the extent Ericsson's Radio Dot System is alleged to infringe Dali's patents, I understand that Ericsson has contractual obligations to defend Verizon against Dali's allegations of infringement and, as such, are and will be defending and indemnifying Verizon in accordance with those contractual obligations.

13.    Ericsson has possession, custody, and control of the factual information in the form of witnesses and related documentation that shows the design, manufacture and operation of its Radio Dot System.

14.    Verizon does not have the ability to modify the circuits or the source code of the accused Radio Dot System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 16, 2022.

Paul Walker

3

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## DECLARATION OF DAVID WOLFF
## IN SUPPORT OF MOTION TO SEVER AND STAY

I, David Wolff, make the following declaration:

1.       My name is David Wolff, and I am an employee of Cellco Partnership d/b/a Verizon Wireless ("Verizon").  My title is Director, Network Planning, and in this role I am responsible for planning and strategy for the Verizon Radio Access Network.  I am over 18 years of age and am competent to testify as to the matters set forth herein.  I make the following statement based on my own personal knowledge, unless expressly stated otherwise.

2.       I have been informed that the plaintiff in the above captioned case, Dali Wireless, Inc., accused Verizon of infringing a number of patents based on Verizon's deployment of products supplied by CommScope, Corning, and Ericsson (the "Supplier Defendants").  I

1

understand that the specific products accused of infringement are CommScope's Ion®-E/ERA Platform, Ericsson's Radio Dot System, and Corning's Everon™ 6000 Das Solution.  For ease of reference, I will refer to these products collectively as the "Accused Products."

3.    Verizon does not design, develop, or manufacture the Accused Products.

4.    When Verizon deploys the Accused Products supplied by one of the Supplier Defendants, the Accused Products from that Supplier Defendant are not connected to and do not directly interact with the Accused Products from another Supplier Defendant.

5.    Verizon does not have possession, custody, or control of the factual information that shows the detailed design, development, or manufacture of the Accused Products.  Instead, Verizon relies on its suppliers   in this case the Supplier Defendants   to maintain this information in the form of knowledgeable individuals and technical documentation.

6.    In my experience, any technical documentation in Verizon's possession, custody, or control relating to the design, development, manufacture, or operation of the Accused Products is information provided by the Supplier Defendants.

7.    Verizon does not have the ability to modify the circuits or the source code of the Accused Products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2022                    /s/ David Wolff_____

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00104-ADA |
| v. | JURY TRIAL DEMANDED |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON CORPORATE SERVICES GROUP INC., VERIZON ONLINE LLC, COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., COMMSCOPE TECHNOLOGIES LLC, ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, CORNING, INC., and CORNING OPTICAL COMMUNICATIONS LLC, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' OPPOSED MOTION TO
## SEVER AND STAY PENDING FINAL RESOLUTION OF SUPPLIER LAWSUITS

Before the Court is Defendant Verizon[1] and its suppliers CommScope[2], Ericsson[3], and

Corning[4] (collectively, "Defendants") Motion to Sever and Stay Pending Final Resolution of

---

[1] "Verizon" is defined herein as Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., and Verizon Online LLC, collectively.

[2] "Commscope" is defined herein as Defendants CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC, collectively.

[3] "Ericsson" is defined herein as Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson, collectively.

[4] "Corning" is defined herein as Defendants Corning, Inc. and Corning Optical Communications LLC, collectively.

1

Supplier Lawsuits. After consideration of same, the Court finds that motion is well-taken and should be **GRANTED**.

      **IT IS THEREFORE ORDERED** that Defendants' Motion to Sever and Stay Pending Final Resolution of Supplier Lawsuits is hereby **GRANTED**.