**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| DALI WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:22-cv-00104-ADA |
| v. | ) | |
| | ) | |
| CELLCO PARTNERSHIP D/B/A VERIZON | ) | |
| WIRELESS, VERIZON CORPORATE | ) | |
| SERVICES GROUP INC., VERIZON | ) | |
| ONLINE LLC, COMMSCOPE HOLDING | ) | |
| COMPANY, INC., COMMSCOPE, INC., | ) | |
| COMMSCOPE TECHNOLOGIES LLC, | ) | |
| ERICSSON INC., | ) | |
| TELEFONAKTIEBOLAGET LM | ) | |
| ERICSSON, CORNING INC., and CORNING | ) | |
| OPTICAL COMMUNICATIONS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF DALI WIRELESS, INC'S OPPOSITION IN PART TO DEFENDANTS' MOTION TO SEVER AND STAY

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARD......................................................................................... 3

III.  ARGUMENT ...................................................................................................... 4

    A.    The Customer-Suit Exception Does Not Apply...................................................4

        1.    The Customer-Suit Exception Does Not Apply Because the
            Component Manufacturers and Alleged Customer Are Party to the
            Same Case Against Verizon..........................................................4

        2.    Verizon Is Not a "Mere Reseller" ...............................................6

        3.    The Scope of Dali's Infringement Allegations Against Verizon
            Differ from Those Against Ericsson and CommScope.............................8

        4.    Verizon's Agreement to Be Bound by the Court's Finding in This
            Case Is Only Partial, and Does Not Overcome the Weight of the
            Other Factors................................................................9

    B.    The Traditional Factors Weigh Against a Stay...................................................10

        1.    Staying the Present Case Against Verizon Will Unduly Prejudice
            Dali..........................................................................10

        2.    Staying the Present Cases Against Verizon Will Not Simplify the
            Issues........................................................................12

        3.    Staying the Present Cases Against Verizon Is Not Helpful in View
            of the Stage of these Consolidated Cases ..................................13

IV.   CONCLUSION.................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Arigna Technology Ltd. v. Nissan Motor Co*.,
No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 138469 (E.D. Tex. Aug. 3, 2022) .... 11

*Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*,
No. 6:14-CV-759, 2015 U.S. Dist. LEXIS 179517 (E.D. Tex. Dec. 16, 2015) ...................... 3

*Dali Wireless Inc. v. AT&T,*
No. 2:22-CV-12-RWS-RSP, Dkt. No. 81 (E.D. Tex. Oct. 24, 2022) ................................... 11

*De La Vega v. Microsoft Corp.*,
No. 6:19-CA-612-ADA, Dkt. No. 26 (W.D. Tex. Feb. 8, 2020) ............................................ 8

*Georgia-Pacific v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................ 12

*GeoTag, Inc. v. Giorgio Armani SpA*,
No. 2:10-cv-569, 2012 U.S. Dist. LEXIS 191706 (E.D. Tex. Aug. 27, 2012) ....................... 9

*In re Dell Inc.*, 600 F.
App'x 728 (Fed. Cir. 2015) .............................................................................................. 5

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014) ........................................................................................ 5

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*,
2020 U.S. Dist. LEXIS 208572 (E.D. Tex Sept. 30, 2020) ................................................ 13

*Johnson v. Manhattan Ry. Co.*,
289 U.S. 479 (1933) ...................................................................................................... 13

*Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ................................................................................... 8, 10

*NFC Tech., LLC v. HTC Am.*,
No. 2:13-CV-01058-JRG, 2014 U.S. Dist. LEXIS 107040 (E.D. Tex. Aug. 5, 2014) ..... 3, 7, 8

*P&G Co. v. Team Techs., Inc.*,
No. 1:12-cv-552, 2012 U.S. Dist. LEXIS 167208 (S.D. Ohio Nov. 26, 2012) ....................... 5

*RPost Holdings, Inc. v. DocuSign, Inc.*,
No. 2:12-CV-00683-JRG, 2019 U.S. Dist. LEXIS 75457 (E.D. Tex. May 3, 2019) .............. 5

*Secure Axcess, LLC v. Nintendo of Am., Inc.*,
No. 2:13-cv-32-JRG, 2014 U.S. Dist. LEXIS 30115 (E.D. Tex. Mar. 7, 2014) ...................... 5

*Soverain Software LLC v. Amazon.com, Inc.*,
   356 F. Supp. 2d 660 (E.D. Tex. 2005) ........................................................................... 3

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ................................................................................... 4

*St. Lawrence Communications LLC v. Apple Inc.*,
   No. 2:16-cv-82-JRG, 2017 U.S. Dist. LEXIS 188593 (E.D. Tex. July 12, 2017) ................. 11

*Tegi Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006) .................................................................................. 13

*TracBeam L.L.C. v. AT&T Inc.*,
   No. 6:11-CV-96, 2013 U.S. Dist. LEXIS 166940 (E.D. Tex. Nov. 25, 2013) ...................... 12

*Vantage Point Technology, Inc. v. Amazon.com, Inc.,*
   No. 2:13-cv-909-JRG, 2015 U.S. Dist. LEXIS 675 (E.D. Tex. Jan. 6, 2015) ................... 5, 13

**Statutes**

35 U.S.C. § 284 ........................................................................................................ 12

## I.    INTRODUCTION

Plaintiff Dali Wireless, Inc. opposes in part the Motion to Sever and Stay Pending Final Resolution of Supplier Lawsuits (Dkt. No. 75, hereafter "Motion to Stay") filed by Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., Verizon Online LLC (collectively "Verizon"), CommScope Holding Company, Inc., CommScope, Inc., CommScope Technologies LLC (collectively "CommScope"), Ericsson Inc., Telefonaktiebolaget LM Ericsson (collectively "Ericsson"), Corning, Inc., and Corning Optical Communications LLC (collectively "Corning"). Although Dali does not concede that CommScope, Ericsson, and Corning are misjoined, Dali does not oppose severing the case into three separate actions pursuant to the agreements represented in the Joint Stipulation: (1) Verizon and CommScope; (2) Verizon and Ericsson; and (3) Verizon and Corning. *See* Joint Stipulation, Dkt. No. 77.[1] However, Dali does oppose Defendants' request to sever and stay the claims against Verizon under the customer-suit exception.

Defendants' request to stay further proceedings as to Verizon dramatically oversimplifies the relevant legal tests. Notwithstanding that Ericsson, CommScope, and Corning each supply components of Verizon's infringing systems, Defendants' Motion to Stay should be denied because Verizon does not meet the strict requirements of the customer-suit exception. In addition, each of the traditional stay factors—prejudice, simplification of the issues, and stage of the

---

[1] Defendants' motion as filed includes a request to sever the single action filed against Verizon, CommScope, Ericsson, and Corning "into three cases: (1) CommScope and Verizon, (2) Ericsson and Verizon, and (3) Corning and Verizon." Motion to Stay at 1. The parties have stipulated to Defendants' request to sever, in light of Defendants' agreement to consolidate the severed cases for all pretrial purposes, and to forgo motions to transfer (other than CommScope's already-pending motion (*see* Dkt. No. 64)). These steps in aggregate preserve all efficiencies that would be otherwise be achieved by proceeding under a single case caption. *See* Dkt. No. 77. Consequently, Dali's opposition addresses only Defendants' request to stay as against Verizon.

lawsuit—weighs against a stay in this case.

Defendants' argument based on the customer-suit exception fails for several reasons. First, Defendants' request to stay the cases against Verizon does not fall under the classic "consumer-suit exception" because there is no "second-filed" case against Verizon pending in a forum different than the venue hosting the cases against the component manufacturers (CommScope, Ericsson, and Corning). Instead, Dali has elected to file its claims against Verizon alongside its claims against each component manufacturer. Thus, the three cases—one against Verizon and CommScope, one against Verizon and Ericsson, and another against Verizon and Corning—are pending in the same forum, and proceedings as to Verizon and each component manufacturer will proceed in lockstep, consolidated fashion with respect to all pretrial matters. Second, Verizon is not a "mere reseller." There are two groups of "accused products" in this case. First, there are claims against the component manufacturers for their sale and testing of small cell systems. *See e.g.,* Dkt. No. 1 ¶¶ 86, 111, 134. Second, there are claims against Verizon for its deployment, operation, maintenance, testing, and use of Verizon's own "LTE and 5G networks" which include small cell systems provided by the component manufacturers. *See, e.g.*, Dkt. No. 1 ¶¶ 69, 91, 116. Far from being a "mere reseller," Verizon is the entity that unlawfully deploys, operates, maintains, and uses its own networks across the United States in violation of Dali's patent rights. Finally, Dali's claims against the component manufacturers and Verizon are not identical. At minimum, Dali has asserted claims that include "configured to" language, and Verizon's involvement in enabling or inhibiting certain features, separate and apart from the component manufacturers, may bear on infringement. Because there is a lack of identity of infringement allegations the customer-suit exception is inapplicable. On balance, the factors that courts routinely consider when analyzing the customer-suit exception weigh against staying the actions against Verizon.

The traditional stay factors also weigh decidedly against a litigation stay for Verizon. First, staying the cases against Verizon will unduly prejudice Dali. Second, staying the cases against Verizon will not simplify the issues. Rather, Verizon's involvement in configuring and using the component manufacturers' products in its networks will need to be resolved, regardless of any findings against the component manufacturers themselves. Finally, the stage of the litigation does not favor a stay. Consolidating the three cases—one against Verizon and CommScope, one against Verizon and Ericsson, and another against Verizon and Corning—for pretrial matters furthers convenience and economy in administration of these cases and advances judicial efficiency. As a result, Defendants' Motion to Sever and Stay should be denied.

## II.    LEGAL STANDARD

The Court has the inherent power to control its own docket, including the power to stay proceedings. *See NFC Tech., LLC v. HTC Am.*, No. 2:13-CV-01058-JRG, 2014 U.S. Dist. LEXIS 107040, at \*4 (E.D. Tex. Aug. 5, 2014) (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)). As the party seeking the stay, it is Defendants' burden to show that a stay is appropriate. *Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*, No. 6:14-CV-759, 2015 U.S. Dist. LEXIS 179517, at \*8 (E.D. Tex. Dec. 16, 2015).

In evaluating whether the customer-suit exception applies, courts consider three factors: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 U.S. Dist. LEXIS 205698, at \*4 (E.D. Tex. Nov. 27, 2019) (citation omitted). "[T]he 'guiding principles in the customer suit

exception cases are efficiency and judicial economy.'" *Id.* (quoting *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011)).

In determining whether to stay litigation, courts typically consider three factors: (1) "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party"; (2) "whether a stay will simplify the issues in question and the trial of the case"; and (3) "whether discovery is complete and whether a trial date has been set." *Rembrandt*, 2019 U.S. Dist. LEXIS 205698 at *4.

## III. ARGUMENT

### A. The Customer-Suit Exception Does Not Apply

Defendants first argue that the case(s) against Verizon should be stayed pursuant to the customer-suit doctrine.[2] This argument fails for the reasons below.

> 1. The Customer-Suit Exception Does Not Apply Because the Component Manufacturers and Alleged Customer Are Party to the Same Case Against Verizon

As an initial matter, the customer-suit exception does not apply because there is no first-filed action against the alleged customer (Verizon) pending in a separate forum from the actions against the component manufacturers. Instead, Verizon is a co-defendant in each of the actions against the component manufacturers (CommScope, Ericsson, and Corning) pending in this Court.[3] "The [customer-suit] exception does not apply to a *single* suit that encompasses both manufacturers and their customers." *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-CV-00683-

---

[2] The parties' stipulation obviates Defendants' argument for a stay based on Rule 21. *See* Dkt. No. 77 ¶ 5 ("No Defendant will rely on the fact of severance . . . as it relates to Defendants' request to stay the Verizon Defendants.").

[3] The Court has not yet acted on the parties' Joint Stipulation to sever the pending case into three separate cases. However, Dali anticipates that the Court will do so based on the Joint Stipulation. *See* Dkt. No. 77. Accordingly, Dali treats this case in that posture.

JRG, 2019 U.S. Dist. LEXIS 75457, at *5 (E.D. Tex. May 3, 2019) (emphasis in original); *see also P&G Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2012 U.S. Dist. LEXIS 167208, at *7 (S.D. Ohio Nov. 26, 2012) (When "an action includes both the customer and the manufacturer as parties to the suit, the customer suit exception does not apply.").

Similarly, in *Vantage Point Technology, Inc. v. Amazon.com, Inc.*, the court rejected a stay sought under the customer-suit exception where "both the consumer and manufacturer [had] pending cases in the same forum, and those cases ha[d] been consolidated for all pretrial matters." No. 2:13-cv-909-JRG, 2015 U.S. Dist. LEXIS 675, at *8 (E.D. Tex. Jan. 6, 2015). The court held a stay inappropriate because "the act of consolidation advances the very same goals that the consumer-suit exception seeks to advance: judicial efficiency." *Id* at *9.[4] The same logic applies here with even greater force. Dali's case against Defendants CommScope, Ericsson, and Corning—whether joined in one action or severed into three separate actions—also includes the alleged customer Verizon, and there is no risk of separate proceedings with respect to any pretrial matters. *See* Dkt. No. 77.

The Federal Circuit agrees. Nothing "sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier." *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015).

---

[4] To be fair, "the customer suit exception has [also] been applied in multi-defendant actions where both the manufacturer and retailer are defendants in the same case . . . . as a tool to facilitate transfer of the manufacturer defendant to a venue where suit against the retailer defendants could not have been originally brought." *Secure Axcess, LLC v. Nintendo of Am., Inc.*, No. 2:13-cv-32-JRG, 2014 U.S. Dist. LEXIS 30115, at *11 (E.D. Tex. Mar. 7, 2014), *vacated sub nom. In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014). That circumstance does not apply here— even though alleged "manufacturer defendant" CommScope is seeking transfer to the Eastern District of Texas (*see* Dkt. No. 64), there is no question that alleged "retailer defendant" Verizon could be sued in that venue as easily as in this one. In any case, arguments concerning CommScope's venue motion will be resolved in the context of briefing that motion.

Indeed, *Dell* distinguished Defendants' cited authorities *Nintendo* and *Katz* on this exact basis and reasoned that a single suit against both a customer and a component manufacturer promotes judicial economy. *Id*. So too here. The alleged customer, Verizon, is in the very same litigations with its component manufacturers CommScope, Ericsson, and Corning and the customer-suit exception does not apply as a matter of law. No stay is warranted for this threshold reason alone, but Dali further addresses the customer-suit exception factors below.

### 2.    Verizon Is Not a "Mere Reseller"

Defendants' customer-suit argument also fails because Verizon is not a "mere reseller," as required under the first of the three factors that courts use to evaluate application of the customer-suit exception. Defendants appear to concede this point as they do not argue that Verizon is a "mere reseller," but rather that Verizon is a "mere end-user" of the CommScope, Ericsson, and Corning products. Motion to Stay at 9-10. In fact, Verizon does not *sell* CommScope's, Ericsson's, or Corning's systems at all, but rather incorporates those systems into its own network to provide infringing services to its customers like "in-building wireless solution[s] for business enterprises." Dkt. No. 1 ¶ 8 n.7.

Moreover, the claims of some of the Asserted Patents recite devices "configured to" perform certain functions. *See, e.g.*, '499 Patent, Claim 1. Thus, Verizon's potential involvement in the configuration of such functionalities may bear on infringement. *See Rembrandt*, 2019 U.S. Dist. LEXIS 205698 at *10. Though Verizon's declarant states that "Verizon does not have the ability to modify the circuits or the source code" (Dkt. No. 75-6, ¶ 7) of CommScope's, Ericsson's, and Corning's products, the declaration is silent as to whether Verizon configures or requests configuration when those products are deployed in Verizon's networks. Such information may bear on infringement. Thus, Verizon is not a mere reseller of CommScope and Ericsson's products. Instead, Verizon incorporates components made by CommScope, Ericsson, and Corning into

Verizon's own systems that it deploys and operates across the country, and the actions against Ericsson, CommScope, and Corning may not fully resolve issues of infringement or damages against Verizon. *See NFC Tech.*, 2014 U.S. Dist. LEXIS 107040 at *6 (customer-suit exception did not apply because defendants were not "mere resellers" where manufacturer's chip was incorporated into larger environment of mobile device components).

CommScope, Ericsson, and Corning extend an unspecified offer to "intermediate any discovery Plaintiff seeks to serve on Verizon to avoid burdening Verizon with information the Supplier Defendants can provide instead," based on a suspiciously non-detailed offer by Verizon to "cooperate in providing ***limited*** discovery . . . should such discovery be relevant and non-cumulative." Motion to Stay at 11 (emphasis added). But Defendants' offer does not rescue this factor. Rather, Defendants' vague proposal would, instead of promoting efficiency, undermine it and create an extra layer of complexity. This "offer" highlights the problems and inefficiencies inherent in severing and staying Dali's infringement claims against Verizon. Dali should not be required to go through CommScope, Ericsson, and Corning to obtain relevant information from Verizon. Nor should Verizon be allowed to narrow its own discovery obligations in this case by only agreeing to produce "limited discovery." Verizon is accused of direct infringement of Dali's patents, and Dali is entitled to obtain all relevant discovery from Verizon regarding Verizon's infringement and damages resulting from that infringement.

Defendants do not explain what "limited discovery" they would allow Dali to pursue without objection, or what procedure they would use to "intermediate" Dali's discovery requests. Defendants' vague proposal is thus poised to create unnecessary discovery disputes that would not

be present if Verizon simply remains an active defendant in the current cases.[5]

        3.     The Scope of Dali's Infringement Allegations Against Verizon Differ
                from Those Against Ericsson and CommScope

Skipping ahead to the third customer-suit factor—i.e., "whether the manufacturers . . . are the only source of the allegedly infringing activity"—"customer suit exceptions are limited to those situations . . . such that the disposition of the manufacturer suit *would be determinative of the issues in the customer suit.*" *NFC Tech.*, 2014 U.S. Dist. LEXIS 107040 at *5-6 (emphasis added) (citing *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989)). Dali's claims against the component manufacturers differ from its claims against Verizon with respect to at least the method claims asserted by Dali. Dali's method claims assertions against the component manufacturers relate to the deployment, maintenance, testing, and use of small cell wireless systems "in connection with [the component manufacturer's] course-of-business operations." *See e.g.,* Dkt. 1 ¶ 86. In other words, Dali's method claims assertions against the component manufacturers relate to activities like testing their own products, while Dali's method claims assertions against Verizon relate to Verizon's operation of its LTE and 5G networks to provide consumer services.[6] As explained above, how Verizon configures the small cell wireless systems in its networks may differ from how the component manufacturers configure those same systems during course-of-business operations. Finally, consistent with this Court's preferences, Dali reserves the right to amend its

---

[5] If CommScope, Ericsson, and Corning currently have possession of relevant materials that are duplicative of those in Verizon's possession, Dali will not require duplicative production by Verizon, so long as Defendants stipulate that knowledge of those materials produced by only CommScope, Ericsson, and Corning may be imputed to Verizon.

[6] The Court has recognized that damages available based on testing alone differ from those based on extensive performance of an infringing method. *See, e.g., De La Vega v. Microsoft Corp.*, No. 6:19-CA-612-ADA, Dkt. No. 26 (W.D. Tex. Feb. 8, 2020) (Jan. 31, 2020 Hrg. Tr.) at 37:4-7 ("What would you be asking for if you came in and proved that [defendants] had actually once or twice tested this and that was the entire universe of their infringement?").

complaint to add allegations of indirect infringement against the component manufacturers, following commencement of fact discovery. *See* Dkt. No. 32 (Order Governing Proceedings v4.1) § VII. Thus, the cases against the component manufacturers do not necessarily resolve the major issues with respect to Dali's claims against Verizon.

> 4. Verizon's Agreement to Be Bound by the Court's Finding in This Case Is Only Partial, and Does Not Overcome the Weight of the Other Factors

And circling back as to the second customer-suit factor, Verizon's agreement to be bound by "infringement applicable to products the at issue" and "any invalidity determination actually adjudicated" (Motion to Stay at 12) is but one factor in the customer-suit suit exception and is not dispositive here. *See Rembrandt*, 2019 U.S. Dist. LEXIS 205698 at *10-11 (notwithstanding customer defendant's "agree[ment] to be bound by any decision in the California Suits . . . . balancing these factors the Court finds that they weigh against a stay").

Moreover, Verizon's proposed agreement to be bound as to the specific topics referenced above does not encompass every determination that this Court might make on "all essential issues" as this case progresses—another consideration weighing against entry of a stay. *See GeoTag, Inc. v. Giorgio Armani SpA*, No. 2:10-cv-569, 2012 U.S. Dist. LEXIS 191706, at *318-20 (E.D. Tex. Aug. 27, 2012) ("Defendants . . . are willing to be bound by a final determination of invalidity in the declaratory judgment action. However, Defendants have not agreed to be bound by other rulings from the Delaware court. . . . Without a firm commitment binding Defendants to the Delaware court's rulings on all essential issues, the request for a stay merely appears to be a litigation tactic to delay the judicial process.").

Finally, Defendants make no mention of any agreement to be bound as to PTAB proceedings, which leaves open the possibility that Dali would be forced to defend additional requests for *inter partes* review initiated by Verizon in the future.

Consequently, Verizon's proposed agreement to be bound by decisions of this Court does not, alone, support a stay.

> **B.    The Traditional Factors Weigh Against a Stay**

In addition to their customer-suit-exception argument, Defendants allege that "the traditional factors . . . also weigh in favor of a stay." Motion to Stay at 14. This argument also fails.

> 1.    Staying the Present Case Against Verizon Will Unduly Prejudice Dali

Defendants argue without basis that staying further proceedings as to Verizon will not prejudice Dali because "Dali's claims against Verizon will be resolved by resolution of the same claims against Supplier Defendants." Motion to Stay at 14. As addressed above, Dali's infringement claims against Verizon have a different scope than its claims against the component manufacturers. Staying further proceedings as to Verizon would cabin Dali's avenues of recovery for Verizon's direct infringement—and in so doing would self-evidently prejudice Dali's ability to recover. *See e.g., Kahn*, 889 F.2d at 1081-82 (noting that calculating damages against customer and component manufacturer necessarily involve different parameters).

To start from the basic consideration of Verizon's role in Dali's ability to prove up its infringement allegations, Verizon will have to play a key role in fact discovery regardless of whether the case against it is stayed. For its own part, Verizon will not face any prejudice beyond the ordinary burdens faced by any litigant. For example, Verizon's declarant, Mr. Wolff, states only that "Verizon does not have the ability to modify the circuits or the source code of the accused products" (Dkt. No. 75-6 ¶ 7) but does not address whether Verizon dictates or is involved in the configuration of the infringing systems in its network. For example, whether Verizon requests certain functionality from CommScope, Ericsson, or Corning or whether Verizon enables or inhibits certain accused features in the CommScope, Ericsson, and Corning equipment may be relevant to Verizon's own infringement but may not be resolved by a standalone case against

CommScope, Ericsson, or Corning. Staying the case against Verizon prejudices Dali because even though CommScope, Ericsson, and Corning may be found to infringe, Verizon may attempt to avoid liability by claiming not to use the infringing features.

What is more, CommScope, Ericsson, and Corning's unspecified offer to "intermediate" discovery from Verizon further aggravates this prejudice to Dali. Defendants fail to explain what "limited discovery" they would allow without objection, or how the scope of that "limited discovery" differs from what Verizon would be obligated to provide under the Federal Rules.

Defendants otherwise skip the issue of infringement and go straight to damages in arguing that Dali will not be prejudiced because "Dali . . . cannot seek to recover twice" and "any recovery Dali may obtain from the Supplier Defendants will exhaust the claims as to the downstream customer such as Verizon." Motion to Stay at 14. But even on its own terms, this argument improperly presumes facts not in evidence. Specifically, Defendants' argument is premised on a classic straw-man argument that Dali will pursue an impermissible damages theory that violates principles of exhaustion by seeking duplicative recovery from Verizon and CommScope/Ericsson/Corning (as applicable).[7]

---

[7] In Dali's parallel case involving carrier AT&T in the Eastern District of Texas, CommScope and Ericsson cite *Arigna Technology Ltd. v. Nissan Motor Co*., No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 138469 (E.D. Tex. Aug. 3, 2022) and *St. Lawrence Communications LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 U.S. Dist. LEXIS 188593 (E.D. Tex. July 12, 2017) in support of their parallel motion to stay proceedings as to AT&T, arguing these cases demonstrate Dali's position on damages has been rejected. *See Dali Wireless Inc. v. AT&T,* No. 2:22-CV-12-RWS-RSP, Dkt. No. 81 at 5 (E.D. Tex. Oct. 24, 2022). Dali distinguishes these cases here to preempt the same flawed argument. In *Arigna*, the defendants' motion to sever was largely unopposed. Specifically, the plaintiff affirmatively offered the defendants the option of "a single trial against [supplier] to address infringement and validity with the outcome binding on all the Defendants and with Arigna permitted to use all discovery it has obtained." *Arigna*, No. 2:22-cv-00126-JRG-RSP, Dkt. No. 89 at 1 (E.D. Tex. July 1, 2022). Here, Dali disputes that a separate trial against each component manufacturer, without Verizon, is appropriate as set forth above. *St. Lawrence* is likewise inapposite because it involved a bona fide supplier and reseller. There, the carrier defendants merely resold the accused handsets, "playing no role in the development, design,

The Patent Act expressly provides that Dali is entitled to recover "in no event less than a reasonable royalty for the use of [Dali's] invention[s]" in the asserted patents—including use made of those inventions *by Verizon*. 35 U.S.C. § 284. These considerations are similarly spotlighted in *Georgia-Pacific* Factors Nos. 10 and 11, which focus on, *inter alia*, "the benefits to those who have used the invention" as well as "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

To this end, Dali will necessarily need to take discovery from Verizon to determine the reasonable royalty based on Verizon's infringing use of Dali's patented technologies and any benefits Verizon realizes via that use (e.g., cost savings). *See, e.g.*, *TracBeam L.L.C. v. AT&T Inc.*, No. 6:11-CV-96, 2013 U.S. Dist. LEXIS 166940, at *13 (E.D. Tex. Nov. 25, 2013) ("The parties agree an appropriate royalty rate is based on AT&T's cost savings from using the patented technology . . ."). Fact discovery as to all Defendants will proceed much more efficiently with Verizon being an active defendant in the case rather than if its case were stayed. Dali, on the other hand, would suffer significant prejudice and tactical disadvantage in enforcing its patent rights if Dali were forced to engage in fact discovery of Verizon only indirectly through Ericsson, CommScope, and Corning, and were forced to unduly delay development of its damages case against Verizon.

### 2.    Staying the Present Cases Against Verizon Will Not Simplify the Issues

A stay of the Verizon cases would not simplify the issues in question and the trial of the case. Rather, severing Verizon will make discovery more costly, more time consuming, and less

---

or implementation of the relevant software code." *St. Lawrence*, 2017 U.S. Dist. LEXIS 188593 at *6. Here, Verizon does not simply resell products provided by the component manufacturers; rather, Verizon incorporates those products into its own LTE and 5G networks and likely has a hand in how the systems are configured.

efficient without simplifying the legal and factual issues that must be decided by the Court and the jury. This factor weighs against a stay in the present case for several reasons. As discussed above, the infringement allegations against Verizon are not identical to those against CommScope, Ericsson, and Corning. *See supra* at 9-11. Because Dali's infringement and damages claims against CommScope, Ericsson, and Corning do not completely coincide with those against Verizon, the resolution of the CommScope, Ericsson, and Corning cases will not resolve or moot all issues in question for Verizon. *See Intertrust,* 2020 U.S. Dist. LEXIS 208572 at *27.

3.    Staying the Present Cases Against Verizon Is Not Helpful in View of the
       Stage of these Consolidated Cases

The parties have already agreed to consolidate these cases for all pretrial purposes. *See* Dkt. No. 77 ¶ 2. This is thus a single set of cases which "furthers convenience and economy in administration." *Vantage Point Tech.*, 2015 U.S. Dist. LEXIS 675, at *8-9 (citing Fed. R. Civ. P. 42(a); *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933). "Therefore the act of consolidation advances the very same goals that the consumer-suit exception seeks to advance: judicial efficiency." *Vantage Point Tech.*, 2015 U.S. Dist. LEXIS 675, at *8-9 (citing *Tegi Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)).

Moreover, this case has a presumptive trial date of December 8, 2023; discovery is set to begin on December 13, 2022; and the parties have already started the claim construction process, with each side having served initial briefs (*see* Dkt. Nos. 63, 76). Defendants indicated as early as July 7, 2022, that they might move to stay the case against Verizon, yet still waited until claim construction was well underway before formally moving. *See* Dkt. 55 at 10 n.5 ("Defendants contend the infringement allegations against Verizon should be severed and stayed because they are based solely on the use or implementation of systems supplied by CommScope, Corning, and Ericsson."). Had Defendants truly wanted to conserve resources, they would have moved promptly

for the relief they now seek. Dali should not be punished for Defendants' inactivity.

Granting Defendants' Motion to Stay will only serve to waste judicial resources by, for example, requiring Dali to jump through Defendants' proposed discovery intermediation for requests to Verizon. This factor thus also weighs against entering a stay for Verizon in this case.

## IV.    CONCLUSION

Verizon is an integral component of Dali's infringement and damages allegations. Dali does not maintain a separate case against CommScope, Ericsson, and Corning in another forum. Dali's case against Verizon is not identical to Dali's case against CommScope, Ericsson, and Corning. And Verizon's assurances of agreeing to be bound and providing intermediated discovery via CommScope, Ericsson, and Corning is a poor substitute for the much simpler status quo, in which Dali can freely pursue relief against Verizon in the pending action, without the risks of prejudice that Defendants' half-formed alternative proposals might entail. For these reasons and as detailed above, Defendants' Motion to Stay should be denied.

Date: October 26, 2022                         Respectfully submitted,

FOLIO LAW GROUP PLLC

*s/ Steven Skelley*
Cristofer I. Leffler, WA Bar No. 35020
Cliff Win, Jr., CA Bar No. 270517
Steven Skelley, WA Bar No. 53017
Stefan Szpajda, WA Bar No. 50106
Folio Law Group PLLC
1200 Westlake Ave. N., Suite 809
Seattle, WA 98109
Tel: (206) 880-1802
Email: cris.leffler@foliolaw.com
          cliff.win@foliolaw.com
          steve.skelley@foliolaw.com
          stefan@foliolaw.com

Joseph M. Abraham, TX Bar No. 24088879
FOLIO LAW GROUP PLLC
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
Tel: (737) 234-0201
Email: joseph.abraham@foliolaw.com

*Attorneys for Plaintiff Dali Wireless, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel hereby certifies that on October 26, 2022, a true and correct copy of the foregoing was served via email on all counsel of record who have appeared in this case.

*s/ Steven Skelley*
Steven Skelley

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| DALI WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:22-cv-00104-ADA |
| v. | ) | |
| | ) | |
| CELLCO PARTNERSHIP D/B/A VERIZON | ) | |
| WIRELESS, VERIZON CORPORATE | ) | |
| SERVICES GROUP INC., VERIZON | ) | |
| ONLINE LLC, COMMSCOPE HOLDING | ) | |
| COMPANY, INC., COMMSCOPE, INC., | ) | |
| COMMSCOPE TECHNOLOGIES LLC, | ) | |
| ERICSSON INC., | ) | |
| TELEFONAKTIEBOLAGET LM | ) | |
| ERICSSON, CORNING INC., and CORNING | ) | |
| OPTICAL COMMUNICATIONS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING**
**DEFENDANTS' MOTION TO SEVER AND STAY**
**PENDING FINAL RESOLUTION OF SUPPLIER LAWSUITS**

Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services

Group Inc., Verizon Online LLC, (collectively "Verizon"), CommScope Holding Company, Inc.,

CommScope, Inc., and CommScope Technologies LLC (collectively "CommScope"), Ericsson

Inc., Telefonaktiebolaget LM Ericsson (collectively "Ericsson"), and Corning Optical

Communications LLC ("Corning") filed an Opposed Motion to Sever and Stay Pending Final

Resolution of Supplier Lawsuits (Dkt. 75). Having considered Defendant's Motion, Plaintiff's

Opposition, and other supporting documents related to these filings, the Court **DENIES**

Defendants' Motion to Sever and Stay.

Signed this _____ day of _____, 2022

_____

The Honorable Alan D. Albright